IN THE
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
———————————————————

Charles Nichols,

*Plaintiff-Appellant*

v.

Edmund Brown, Jr., et al

*Defendants-Appellees.*
———————————————————

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
———————————————————

**APPELLANT'S OPENING BRIEF**

**ADDENDUM**

**CERTIFICATE OF SERVICE**
———————————————————

Charles Nichols
PO Box 1302
Redondo Beach, CA  90278
Tel. No. (424) 634-7381
e-mail: CharlesNichols@Pykrete.info
In Pro Per

# TABLE OF CONTENTS

INTRODUCTION ....................................................................1

JURISDICTIONAL STATEMENT ...............................14

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...........................15

STATEMENT REGARDING ADDENDUM ...........................................21

STATEMENT WITH RESPECT TO ORAL ARGUMENT ..........................21

STATEMENT OF THE CASE ........................................22

SUMMARY OF ARGUMENT ...............................36

STANDARDS OF REVIEW ..........................41

ARGUMENT ...........................................44

    1.   There Has Been A Change In The California Courts Interpretation Of Carrying Concealed Weapons And The Carrying Of Loaded Firearms Concealed Which Renders The *Peruta* Decision Moot. This Does Not Change The Uncontroverted Fact That Concealed Carry Substantially Burdens Plaintiff Nichols' Ability To Defend Himself. ..........................44

    2.   Open Carry Is The Right Guaranteed By The Us Constitution Under *Heller*. The Second Amendment Right Applies To One's Home And To Non-Sensitive Public Places.......................................48

    3.   The Second Amendment Right Is Fundamental Under *Mcdonald*........51

    4.   The Second Amendment Right Has Been Applied To All State And Local Governments Via *Mcdonald*.........................51

    5.   By Default, Open Carry Is Legal Everywhere In The State Of California Except Where It Is Prohibited Or Otherwise "Regulated." .51

    6.   Open Carry Has Always Been, And Still Is, The Right In California. ..52

i

7.  Unlicensed Open Carry Is The Right Under California Law. ...............53

8.  Open Carry Stands As A Safeguard Against Tyranny. ...........55

9.  Under Current California Law Plaintiff Nichols Is Relegated To The Open Carry Of: Unloaded Antique Firearms, Knives, Swords And A Bow And Arrows.  This Conflicts With *Heller*.........................59

10. Unloaded Firearms Cannot Be Instantaneously Loaded. ......................60

11. Concealed Carry Is A Privilege Except For Certain Longstanding Exceptions Not Relevant Here. .................................................60

12. There Is No General Right To Carry A Concealed Weapon In Public. 61

13. Concealed Carry Can Be Prohibited Under *Heller*, *Robertson* And California Law.................................................................61

14. Under California Law "Having" A Firearm On One's Residential Property Does Not Mean "Carrying" A Firearm.  This Conflicts With *Heller*.......................................................................62

15. Firearms (E.G., Rifles, Shotguns, Handguns And Stun Guns), Including Modern Firearms, Fall Within The Scope Of The Second Amendment Right. ............................................................................63

16. *Nunn* And *Chandler* Perfectly *Capture* The Second Amendment Right According To *Heller*.................................................64

17. Concealed Carry Endangers The Public By Failing To Provide Fair Notice That A Person Is Armed.................................................66

18. Justice Breyer's Dissent Read *Heller* To Mean That Open Carry Is The Second Amendment Right And That Concealed Carry Can Be Prohibited…...................................................................66

19. Sister Circuits Have Come To The Same Conclusion That Concealed Carry Falls Outside Of The Scope Of The Second Amendment. This Circuit Has Not Held That There Is A Right To Concealed Carry Nor

Has This Circuit Held That There Is Not An Open Carry Right Either Under *Heller* Or Under California Law. ..................................................67

20. **19th Century State Courts Have Likewise Failed To Find A General Right To Concealed Carry Outside Of One's Home.** ...........................71

21. **Concealed Carry Has Always Been A Privilege In California And Was Banned In California When The 14th Amendment Was Enacted.** .........73

22. **Under California Law The Act Of Firearm Possession, By Itself, Is Innocent Under *Jones*. Bans On Carrying Both Openly And Concealed Are Therefore Subject To Strict Scrutiny Under *Mitchell*.**....................73

23. **Under *Jones* A Person Cannot Be Punished By Multiple Laws For The Same Act Thereby Rendering The Laws At Issue In This Appeal Inapplicable To Persons, Firearms, Places And Acts Which Fall Outside The Scope Of The Second Amendment.**....................................................74

24. **Open Carry State Law Summary.**...........................................................76

25. **California Is The Only State Which Prohibits The Open Carry Of Modern, Loaded Firearms On Residential Property.** ...........................78

26. **Defendant Harris Has Never Conceded That There Is A Right To Possess, Let Alone Carry, A Firearm In The Home.** ...............................79

27. **The Second Amendment Applies To The Home Which Includes The Curtilage Of The Home. Plaintiff Nichols And The Federal Government Concur That *Jardines* Includes The Curtilage Of The Home For Second Amendment Purposes.** .................................................79

28. **The Second Amendment Applies To The Curtilage Of The Home Under *Chovan* As Well.** ........................................................................84

29. **The Second Amendment Applies Outside Of The Home Under *Chovan* As Well.** .....................................................................................84

30. **Strict Scrutiny Applies To This Second Amendment Case Under *Chovan*. The Bans Fail Intermediate Scrutiny And Rational Review As Well. The Government Made No Attempt To Meet Its Burden Under**

  Heightened Scrutiny.  Plaintiff Nichols Proved His Case That The
  Challenged Laws Fail Even Rational Basis Review. ...............................86

\31. The Black Panther Loaded Open Carry Ban (PC 25850) Fails The
  Rational Basis Test Under *Carolene Products Co* Even If It Were An
  Economic Regulation. .................................................................91

32. The Open Carry Bans (PC 25850, PC 26350, PC 26400) Fail The
  Rational Basis Test. ....................................................................93

33. Plaintiff Seeks To Openly Carry Firearms, Including Modern Firearms,
  *For The Purpose Of Self-Defense* In Public Places Where It Is Legal To
  Openly Carry Loaded And Unloaded Firearms Without A Permit For
  Purposes Other Than Self-Defense And Where It Is Legal For A
  Myriad Of Special Interest Groups. ............................................95

34. Plaintiff Nichols Has The Right To Openly Carry A Non-Lethal/Less-
  Lethal Firearm. ...........................................................................96

35. *Heller* Precludes Interest-Balancing.  *Heller's* Per Se Invalidation Of
  The Challenged Laws Is Required In This Case Just As It Was In *Heller*
  And *Mcdonald*. ...........................................................................98

36. Ninth Circuit Court Of Appeals Post-*Heller* Decisions Recognize The
  Second Amendment Right. ..........................................................99

37. The District Court's Interpretation Of Fourth Amendment Rights
  Conflicts With The Supreme Court's Interpretation, Conflicts With
  This Circuit's Interpretation And Conflicts With The California Courts
  Interpretation Of That Right. ....................................................100

  A. There Can Be No Effective Consent To A Search Or Seizure If That
   Consent Follows A Law Enforcement Officer's Assertion Of An
   Independent Right To Engage In Such Conduct. ..........................100

  B. It Has Long Since Been Settled That Compelling One To Produce
   Evidence Of One's Guilt Is A Violation Of Both The Fourth And
   Fifth Amendment. ...........................................................101

C.      Probable Cause Defined. ...................................................101

D.      "Probable Cause" Does Not Arise Under PC 25850(b) Until One Refuses To Consent To The Search And Seizure. ...........................102

E.      The United States Supreme Court Has Refused To Create A "Firearm's Exception" To The Fourth Amendment. ....................103

F.      Openly Carrying A Firearm In And Of Itself Does Not Constitute Reasonable Suspicion That A Crime Has Been Committed And Therefore Any Detention, Search And Seizure Pursuant To PC 25850(b) Which Is Not Consensual Is In Violation Of The Fourth Amendment. .................................................................................104

38. As A Threshold Issue, PC 25850(b) Applies To The Home Which Makes It Unconstitutional. ...................................................................108

39. The Fourth Amendment Applies To Firearms Carried Outside Of The Home, Even To Persons Who Fall Outside The Scope of The Second Amendment. ...........................................................................................110

40. Neither The Appellees, The District Court, Nor This Court Can Avoid Answering The Constitutional Questions By Doing An End-Run Around The Fourth Amendment. ......................................................112

  A.      Firearms Legally Possessed Are Not Contraband Falling Outside T he Scope Of The Fourth Amendment. ..............................................112

  B.      PC 25850(b) Is Designed To Produce Evidence Of A Crime. *Brady* Does Not Apply. ...............................................................................116

  C.      When Has The US Supreme Court Or This Circuit Ever Upheld A Non-Consensual Search Absent Any Of The Federally Recognized Fourth Amendment Exceptions For The Purpose Of Discovering Whether Or Not A Crime Has Been Committed? ..........................117

41. If This Court Affirms The District Court Judgment Then It Will Have Created a De Facto And De Jure General Warrant Despised By The Framers Of The Fourth Amendment. ..................................................118

**42. The District Court Erred In Holding That Minorities Are Prohibited From Bringing An Equal Protection Claim Against A Racially Discriminatory Law, Procedurally Or Otherwise, Unless They Have Been Criminally Charged And That Whites Cannot Bring Any Equal Protection Challenge Against A Racially Discriminatory Law.** ...........119

   **A.**    **The United States Supreme Court Precludes Prior Or Current Prosecution For A Case To Have Article III Standing.**..................119

   **B.**    **Whites Can Bring A Challenge To A Racially Discriminatory Law Under The Equal Protection Clause Of The 14th Amendment.** .....120

   **C.**    **Minorities Can Bring A Pre-Enforcement Challenge To A Racially Discriminatory Criminal Law.**...........................................120

   **D.**    **Whites And/Or Minorities Can Bring A 14th Amendment Challenge To A Racially Discriminatory Law Which Is Race-Neutral In Wording.** ..............................................................................121

   **E.**    **The Facts That Race Was The Sole Motivating Factor In Enacting PC 25850 And That It Is Disproportionately Enforced Are Uncontroverted.**....................................................................124

**43. The District Court Erred In Concluding That Peruta Ruled On The Constitutionality Of Any State Law And Erred In Concluding That Peruta Accepted The Lawfulness Of What The District Court Referred To As "California's Firearms Regime."** ................................125

**44. If The *Peruta* Dicta Is Binding On Plaintiff Nichols' Case Then PC 25850 Is Unconstitutional.**......................................................127

**45. The District Court Erred In Concluding That *Peruta* And *Furnace* Created Enhanced Pleading Standards And That These New Pleading Standards Preclude Plaintiff Nichols From Article III Standing.**........128

**46. The *Peruta* Court Did Not Say That There Is No Right To Openly Carry Firearms. It Could Not, Open Carry Is The Right Guaranteed By The Second Amendment.** ..............................................................132

**47. *Peruta* Is Factually Different From Plaintiff Nichols' Challenge.** ........134

   **A.**    **There Was No Constitutional Challenge In Peruta.** .......................134

**B.**     **The Very Limited Scope Of Plaintiff Nichols' Lawsuit Compared To Peruta.**..............................................................135

**C.**     **The Very Broad Scope Of The Peruta Decision.**..............................136

    **1.**     **Peruta Permits Carrying Firearms Openly And Concealed In Schools Which Are Sensitive Places Under Heller.**.......................136

    **2.**     **CCW Holders Can Carry Loaded And Unloaded Firearms, Openly And Concealed, In Most State And Local Government Buildings.**......................................................................137

**48.**  **The District Court Erred In Granting The F.R.C.P. 12(C) Motion**.....139

  **A.**     **Analysis Of Rule 12(c) Motions.**......................................................139

  **B.**     **Plaintiff Nichols Filed A Declaration That He Is A Minority Which The District Court Withheld From Being Entered Into The Docket.**......................................................................140

**49.**  **Defendant-Appellee Brown ("Defendant Brown") Was Improperly Dismissed By The District Court.**.........................................................141

**50.**  **The District Court Erred In Dismissing Plaintiff Nichols State Law Claims.**....................................................................................................142

**51.**  **There Is No Duty To Retreat Under California Law.**...........................146

**52.**  **Equal Protection Claims Under The Fourteenth Amendment Are Subject To Heightened Scrutiny, Not Rational Review. The Second Amendment Right Is Fundamental. Due To The Severity Of The Burden Imposed By These Bans They Are Subject To Strict Scrutiny.**......................................................................147

**53.**  **Plaintiff Nichols Has A Documented Death Threat Against Him. The District Court Erred In Withholding The Police Incident Report Documenting That Threat From The Record And Erred In Failing To Consider The Death Threat.**...................................................................160

**54. The Documented Death Threat Against Plaintiff Nichols Dictates That He Succeed In His As-Applied Challenge Even Under The Less Than Intermediate Scrutiny Used In The Second, Third And Fourth Circuits.** ..................................................................................161

**55. The Bans Are Unconstitutionally Vague Both Facially And As-Applied…** .............................................................…161

**56. The Statute Of Northampton Is The Antithesis Of The Second Amendment.** ...............................................................175

**57. A Few Final Words On A Permit Requirement To Exercise One's Individual, Fundamental Second Amendment Right.** ............................179

**58. A Few Additional Fatal Procedural Errors Made By The District Court..** ...................................................................181

**CONCLUSION** ..................................................................183

**STATEMENT OF RELATED CASES** ............................................................185

# TABLE OF AUTHORITIES

**Cases**

*Adickes v. S.H. Kress & Co.,*
398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)………………..……..42

*Albingia Versicherungs AG v. SCHENKER INTL.,*
344 F. 3d 931 - Court of Appeals, 9th Circuit (2003)……………………..…146

*Alvarez v. Hill,*
518 F. 3d 1152 - Court of Appeals, 9th Circuit (2008)..…………………..……131

*American Academy of Pediatrics v. Lungren,*
16 Cal. 4th 307 - Cal: Supreme Court (1997)..………………………………….…166

*Amos v. United States,*
255 U. S. 313 (1921) ..……………………………………………….……111

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242(1986) ..…………………………………………………42-43

*Armour v. City of Indianapolis, Ind.,*
132 S. Ct. 2073 - Supreme Court (2012) ……………………………………94

*Atwood v. State,*
53 Ala. 508 (1875) …………………………………………………..……72

*Aymette v. State,*
21 Tenn. (2 Hump.) 154 (1840) …………………………………………...…71

*Babbitt v. Farm Workers,*
442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) …………….………..…119

*Bahrampour v. Lampert,*
356 F. 3d 969 - Court of Appeals, 9th Circuit (2004) …………………..…146

*Baker v. State,*
49 Ala. 350 (1873) …………………………………………………..72

i

*Barnes-Wallace v. City of San Diego,*
704 F. 3d 1067 - Court of Appeals, 9th Circuit (2012) ……………....….40, 147-148

*Berg v. Popham,*
412 F. 3d 1122 - Court of Appeals, 9th Circuit (2005) …………………..……41, 139

*Boyd v. United States,*
116 US 616 - Supreme Court (1886) ……………………………………101, 118

*Brown v. Mississippi,*
297 US 278 - Supreme Court (1936) ……………………………………….…..56

*Bumper v. North Carolina,*
391 U.S. 543, 88 S. Ct. 1788, 20 L. Ed. 2d 797, (1968) ………....……100, 110, 111

*CBS, inc. v. Block,*
725 P. 2d 470 - Cal: Supreme Court (1986) …………………………....……61

*California ex rel. RoNo, LLC v. Altus Finance S.A.,*
344 F.3d 920, - Court of Appeals, 9th Circuit (2003) ……………………………44

*Cantwell v. Connecticut,*
310 U.S. 296 (1940) ……………………………………………………….…162

*Carroll v. State,*
28 Ark. 99, 18 Am. Rep. 538 (1872) ……………………………….…….…72

*Chavez v. US,*
683 F. 3d 1102 - Court of Appeals, 9th Circuit (2012) …………….…....……139

*Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.,*
109 F.Supp.2d 1236 (S.D.Cal.2000) …………………………………….…….44

*City of Chicago v. Morales*
527 U.S. 41 (1999) …………………………………………....…162, 166, 173, 174

*Coates v. Cincinnati,*
402 US 611 Supreme Court (1971) …………………………………….…162

*Colten v. Kentucky,*
407 U.S. 104 (1972) ……………………………………………….…162

*Commonwealth v. McNulty,*
28 Leg. Intel., 389, 8 Phila. 610 (Penn. 1871) …………………………………72

*Connally v. General Constr. Co.,*
269 US 385 - Supreme Court (1926) …………………………………………163-164

*Cutsinger v. Commonwealth,*
70 Ky. (7 Bush) 392 (1870) …………………………………………………72

*Day v. State,*
37 Tenn. (5 Sneed) 495 (1857) ………………………………………....72

*Del Puerto Water Dist. v. U.S. Bureau of Reclamation,*
 271 F.Supp.2d 1224 (E.D.Cal.2003) ………………………………………44

*District of Columbia v. Heller,*
554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008) ……………….……*passim*

*Dix v. Superior Court,*
807 P. 2d 1063 - Cal: Supreme Court (1991) …………………………………….57

*Drake v. Filko,*
724 F. 3d 426 - Court of Appeals, 3rd Circuit (2013) ………………………68, 161

*Erickson v. Pardus,*
127 S. Ct. 2197 - Supreme Court (2007) …………………………………...131, 139

*Eslava v. State,*
49 Ala. 355 (1873) ……………………………………………………...72

*Evins v. State,*
46 Ala. 88 (1871) ……………………………………………………72

*Executive Software v. US Dist. Court,*
24 F. 3d 1545 - Court of Appeals, 9th Circuit (1994) ………………...……144-146

*Fisher v. University of Texas at Austin,*
133 S. Ct. 2411 - Supreme Court (2013) …………………………………...…120-121

*Florida v. Jardines,*
133 S. Ct. 1409 - Supreme Court (2013) ……………………..…13, 79-81, 100, 109

*Fortyune v. American Multi-Cinema, Inc.,*
364 F.3d 1075, 1080 (9th Cir. 2004) …………………………………………..…42

*Freecycle Sunnyvale v. Freecycle Network,*
626 F.3d 509 - Court of Appeals, 9th Circuit (2010) ……………………..……43

*Furnace v. Sullivan,*
705 F.3d 1021 - Court of Appeals, 9th Circuit (2013) ……….…..9, 120, 128, 131

*Garber v. Superior Court of Los Angeles County ,*
184 Cal. App. 4th 724 (2010) …………………………………………………….48

*Gholson v. State,*
53 Ala. 519, 25 Am. Rep. 652 (1875) ……………………………………………72

*Gonzalez v. City of Anaheim,*
747 F. 3d 789 - Court of Appeals, 9th Circuit (2014) ……………………..……114

*Grayned v. City of Rockford,*
408 U.S. 104 (1972) …………………………………………………………….162

*Happy Inv. Group v. Lakeworld Properties, Inc.,*
396 F.Supp. 175 (N.D.Cal.1975)………………………………………………….44

*Harrott v. County of Kings,*
25 P. 3d 649 - Cal: Supreme Court (2001) …………………………………...……173

*Hertz v. Bennett,*
751 SE 2d 90 - Ga: Supreme Court (2013) ………………………………………66

*Hightower v. City of Boston,*
693 F. 3d 61 - Court of Appeals, 1st Circuit (2012) ……………………...……68

iv

*Hill v. State,*
53 Ga. 472 (1874) ………………………………………………....…72

*Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*
455 US 489 - Supreme Court (1982) …………………………………162, 165-166

*Holder v. Humanitarian Law Project,*
130 S. Ct. 2705 - Supreme Court (2010) …………………………………..…119

*Hopkins v. Commonwealth,*
66 Ky. (3 Bush) 480 (1868) …………………………………………………72

*Hunter v. Underwood,*
471 US 222 - Supreme Court (1985) ……………………….…8-9, 121, 124-125

*In Re Rameriz,*
193 Cal. 633; 226 P. 914 (1924); 1924 Cal. LEXIS 351; 34 A.L.R.
51……………………………………………………………………...23-24, 52-53, 93

*Jackson v. City and County of San Francisco,*
746 F. 3d 953 - Court of Appeals, 9th Circuit (2014) ……………………12, 70, 99

*James River Ins. Co. v. Herbert Schenk, P.C.,*
523 F.3d 915 - Court of Appeals, 9th Circuit (2008) …………………….……43

*Jewel v. National Sec. Agency,*
673 F. 3d 902 - Court of Appeals, 9th Circuit (2011) …………………….…119

*Johnson v. United States,*
333 U. S. 10 (1948) …………………………………………………....…111

*Jones v. State,*
51 Ala. 16 (1874) …………………………………………………………72

*Kachalsky v. County of Westchester,*
701 F. 3d 81 - Court of Appeals, 2nd Circuit (2012) ………………….……68, 161

*Kasler v. Lockyer,*
2 P. 3d 581 - Cal: Supreme Court (2000) …………………………………....…52

*Kent v. Daimlerchrysler Corp.,*
200 F.Supp.2d 1208 (N.D.Cal.2002) ……………………………………....44

*Kolender v. Lawson,*
461 U.S. 352 (1983) …………………………………………………….162, 166

*Korematsu v. United States,*
323 U.S. 214 (1944)……………………………………………………………25

*Lacey v. Maricopa County,*
693 F. 3d 896 - Court of Appeals, 9th Circuit (2012) ………………………15, 143

*Lanzetta v. New Jersey,*
306 US 451 - Supreme Court (1939) ……………………………………163-164

*Lavan v. City of Los Angeles,*
693 F. 3d 1022 - Court of Appeals, 9th Circuit (2012) …………………………115

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,*
507 U.S. 163, 168 (1993) …………………………………………....130-131

*Lee v. City of Los Angeles,*
250 F. 3d 668 - Court of Appeals, 9th Circuit (2001) ……………………………44

*Lockett v. State,*
47 Ala. 42 (1872) ……………………………………………………………72

*Los Angeles County Bar Ass'n v. Eu,*
979 F. 2d 697 - Court of Appeals, 9th Circuit (1992) …………………....…141

*Maryland v. Pringle,*
540 U.S. 366, 371, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003) ……………....…102

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574(1986) …………………………………………………………43

*Maxwell v. State,*
38 Tex. 170 (1873) ……………………………………………………………72

*McDonald v. City of Chicago,*
561 U.S. ____, 130 S.Ct. 3020, 3047, 177 L.Ed.2d 894 (2010) …….………*passim*

*MedImmune, Inc. v. Genentech, Inc.,*
549 U.S. 118, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007) …………………………119

*Messerschmidt v. Millender,*
132 S. Ct. 1235 (2012) ……………………………………………………..100

*Millender v. County of Los Angeles,*
564 F. 3d 1143 - Court of Appeals, 9th Circuit (2009) ……………….....…99-100

*Moore v. Madigan,*
702 F. 3d 933 - Court of Appeals, 7th Circuit (2012) …………50, 69, 87, 140, 178

*Morton v. State,*
46 Ga. 292 (1872) …………………………………………………......72

*Murdock v. Pennsylvania,*
319 US 105 - Supreme Court (1943)…………………………....…………..181

*Musser v. Utah,*
333 U.S. 95 (1948) …………………………………………………......162

*National Rifle Ass'n of America, Inc. v. McCraw,*
719 F. 3d 338 - Court of Appeals, 5th Circuit (2013) ……………………………69

*National Rifle Ass'n v. BATFE,*
700 F. 3d 185 - Court of Appeals, 5th Circuit (2012) ……………………………62

*Nichols v. County of Santa Clara,*
223 Cal. App. 3d 1236 (1990) ……………………………………………61

*Nissan Fire & Marine Ins. Co. v. Fritz Companies,*
210 F. 3d 1099 - Court of Appeals, 9th Circuit (2000) ……………………..…43

*Nordlinger v. Hahn,*
505 US 1 - Supreme Court (1992) ……………………………………………148

*Nordyke v. King,*
681 F. 3d 1041 - Court of Appeals, 9th Circuit (2012) …………………….....99

*Nunn v. State,*
1 Ga. 243 (1846) ………………………………...24, 49, 52, 64-67, 71-72

*Orhorhaghe v. INS,*
38 F.3d 488 (1994) ………………………………………………….....100

*Ornelas v.United States,*
517 U.S. 690, 696, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996) …………………102

*Owen v. State,*
31 Ala. 387 (1858) …………………………………………………....…72

*PACIFIC SHORES PROPERTIES v. City of Newport Beach,*
730 F. 3d 1142 - Court of Appeals, 9th Circuit (2013) ………………....5, 9, 12

*Palmer v. City of Euclid,*
402 U.S. 544 (1971) ……………………………………………….162

*Palmer v. District of Columbia,*
No. 09-01482 (HHK) (2014) ……………………………………………71, 77

*Papachristou v. City of Jacksonville,*
405 U.S. 156 (1972) ……………………………………………….162

*Parker v. District of Columbia,*
478 F. 3d 370 - Court of Appeals, Dist. of Columbia Circuit (2007) …………..….71

*Patel v. City of Los Angeles,*
738 F. 3d 1058 - Court of Appeals, 9th Circuit (2013) …………………………175

*Payne v. Peninsula School Dist.,*
653 F. 3d 863 - Court of Appeals, 9th Circuit (2011) …………………….....146

*Payton v. New York,*
445 US 573 - Supreme Court (1980) ………………………………………118

*Pennsylvania v. Labron,*
518 US 938 - Supreme Court (1996) ……………………………………………114

*People v. Brown,*
227 Cal. App. 4th 451 (2014) …………………………………………………….62

*People v. Clark,*
45 Cal. App. 4th 1147 (1996) ……………………………………………...…107, 168

*People v. DeLong,*
11 Cal. App. 3d 786 (1970) …………………………………………….…10, 112-114

*People v. Dunn,*
61 Cal. App. 3d 12 (1976) ……………………………………………….……45-46

*People v. Ellison,*
196 Cal. App. 4th 1342 (2011) ……………………………………….....…62, 113

*People v. Flores,*
169 Cal. App. 4th 568 (2008) ……………………………………….....…52, 62

*People v. Hatchett,*
56 Cal.App.2d 20 (1942) …………………………………………………….…147

*People v. Heffner,*
70 Cal. App. 3d 643 (1977) ……………………………………………….…64, 168

*People v. Kern,*
93 Cal App 3d 779 (1979) ……………………………………………105, 109, 113

*People v. King,*
582 P. 2d 1000 - Cal: Supreme Court (1978) …………………….....…52, 158-159

*People v. Krohn,*
58 Cal. Rptr. 3d 60 (2007) ………………………………………………..…78

*People v. Marotta,*
128 Cal. App. Supp. 3d 1 (1981) ……………………………………..…158, 170

*People v. Martin,*
101 Cal.App.3d 1000 (1980) ……………………………………………………………147

*People v. Mitchell,*
209 Cal. App. 4th 1364 (2012) …………………………….....56, 62, 66, 73-74, 91

*People v. Muniz,*
4 Cal.App.3d 562 (1970) …………………………………..…104, 109, 113

*People v. Overturf,*
64 Cal. App. 3d 1 (1976) …………………………………………………63, 78, 81

*People v. Pellecer,*
215 Cal. App. 4th 508 (2013) ……………………..…45-47, 53, 113, 155, 169

*People v. Pugach,*
15 NY 2d 65 (1964) …………………………………………………………45

*People v. Rappard,*
28 Cal. App. 3d 302 (1972) …………………………………………53, 183

*People v. Seale,*
274 Cal. App. 2d 107 (1969) …………………………………………...53, 123

*People v. Sidener,*
375 P. 2d 641 - Cal: Supreme Court (1962) ……………………………...……57

*People v. Strider,*
177 Cal. App. 4th 1393 (2009) ………………….....78, 81, 104, 105, 109, 111, 113

*People v. Torres,*
94 Cal.App.2d 146 (1949) …………………………………………………160-161

*People v. Yanna,*
824 NW 2d 241 - Mich: Court of Appeals (2012) ………………………….……63

*People v. Yarbrough,*
169 Cal. App. 4th 303 (2008) ……………………………………………...…52, 62

*People v. Zonver,*
132 Cal. App. Supp. 3d 1 (1982) …………………………………………..…118

*Peruta v. County of San Diego,*
742 F. 3d 1144 - Court of Appeals, 9th Circuit (2014) ………………...…*passim*

*Peterson v. Martinez,*
707 F. 3d 1197 - Court of Appeals, 10th Circuit (2013) ………………..…62, 71

*Porter v. State,*
66 Tenn. (7 Baxt.) 106 (1874) …………………………………………………72

*Ramirez-Altamirano v. Mukasey,*
554 F. 3d 786 - Court of Appeals, 9th Circuit (2009) ……………………………99

*Rex v. Knight,*
90 Eng. Rep. 330 (K.B. 1686) …………………………………………………..176

*Richards v. Wisconsin,*
520 U.S. 385, 393-394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997) …………......…103

*Riley v. California,*
134 S. Ct. 2473 - Supreme Court (2014) …………………………………...…101, 118

*Robertson v. Baldwin,*
165 US 275 - Supreme Court (1897) ……………………………………………..…62

*Rupf v. Yan,*
102 Cal. Rptr. 2d 157 (2000) ……………………………………………...…60, 168

*STATE, IN THE INTEREST OF JM,*
La: Supreme Court No. 2013-CK-1717, Consolidated with No. 2013-KA-1772.
(Filed January 28, 2014) …………………………………………………………..66

*Schneckloth v. Bustamonte,*
412 U.S. 218, 225, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) ………...………110-112

*Sears v. State,*
33 Ala. 347 (1859) ……………………………………………………..……72

*Shechter v. Comptroller of City of New York,*
79 F. 3d 265 - Court of Appeals, 2nd Circuit (1996) ……………………..42, 182

*Silveira v. Lockyer,*
312 F.3d 1052, - Court of Appeals, 9th Circuit (2002) ……,…40, 85, 147-148, 151

*Smith v. Goguen,*
415 U.S. 566 (1974) ……………………………………………162, 172

*Somers v. Apple, Inc.,*
729 F. 3d 953 - Court of Appeals, 9th Circuit (2013) …………………..……183

*Soremekun v. Thrifty Payless, Inc.,*
509 F. 3d 978 - Court of Appeals, 9th Circuit (2007) ……………………………43

*State v. Buzzard,*
4 Ark. (2 Pike) 18 (1842) ……………………………………………71

*State v. Chandler,*
5 La. Ann. 489, 52 Am. Dec. 599 (1850) ……………………..49, 64-67, 72

*State v. Duzan,*
6 Blackf. 31 (Ind. 1841) …………………………………………..71

*State v. Jumel,*
13 La. Ann. 399 (1858) …………………………………………..72

*State v. Mitchell,*
3 Blackf. 229 (Ind. 1833) …………………………………………71

*State v. Reid,*
1 Ala. 612, 35 Am. Dec. 44 (1840) …………………………………71

*State v. Smith,*
11 La. Ann. 633, 66 Am. Dec. 208 (1856) …………………………..72

*State v. Wilburn,*
66 Tenn. (7 Bax.) 57, 32 Am. Rep. 551 (1872) …………………..72

*Statuto sup' Arportam'to Armor,*
7 Edw 2 (1313) ……………………………………………………..…175

*Stockdale v. State,*
32 Ga. 225 (1860) ………………………………………………....72

*Stop H-3 Ass'n v. Dole,*
870 F.2d 1419, 1429 n.18 (9th Cir. 1989) ……………………………148

*Stroud v. State,*
55 Ala. 77 (1876) ………………………………………………72

*Sutton v. State,*
12 Fla. 135 (1867) …………………………………………..…72

*Terry v. Ohio,*
392 US 1 - Supreme Court (1968) …………………………………………103

*The Statute of Northampton,*
2 Edw. 3, c. 3 (1328) ……………………………………………..175-176

*Titus v. State,*
42 Tex. 578 (1875) ………………………………………………72

*Tobe v. City of Santa Ana,*
892 P. 2d 1145 - Cal: Supreme Court (1995) …………………………....166

*Trs. of the Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape Maint., Inc.,*
333 F.3d 923 - Court of Appeals, 9th Circuit (2003) …………………….....146

*US v. Black,*
707 F. 3d 531 - Court of Appeals, 4th Circuit (2013) ……………….…106, 108

*US v. Chovan,*
735 F. 3d 1127 - Court of Appeals, 9th Circuit (2013) ……………….…*passim*

*US v. Craighead,*
539 F. 3d 1073 - Court of Appeals, 9th Circuit (2008) …………………..……99

*US v. Cureton,*
739 F. 3d 1032 - Court of Appeals, 7th Circuit (2014) …………………………..…75

*US v. Fincher,*
538 F. 3d 868 - Court of Appeals, 8th Circuit (2008) ……………………………70

*US v. Henry,*
688 F. 3d 637 - Court of Appeals, 9th Circuit (2012) ………………………36, 115

*US v. IEV,*
705 F. 3d 430 - Court of Appeals, 9th Circuit (2012) …………………………..…114

*US v. Nora,*
Court of Appeals, 9th Circuit No. 12-50485 (Filed August 28, 2014)…..…173-174

*US v. Sanford,*
707 F. 3d 594 - Court of Appeals, 6th Circuit (2012) ……………………………69

*US v. Sparks,*
265 F. 3d 825 - Court of Appeals, 9th Circuit (2001) ……………………………56

*US v. Vongxay,*
594 F. 3d 1111 - Court of Appeals, 9th Circuit (2010) ……………....…12, 110-111

*United States v. Brady,*
819 F.2d 884 - Court of Appeals, 9th Circuit (1987) ………………………112-118

*United States v. Carolene Products Co.,*
304 US 144 - Supreme Court (1938) …………………………………….….…91

*United States v. DeCastro,*
682 F.3d 160, 164 (2d Cir. 2012) …………………………………………….…149

*United States v. Kapp,*
564 F.3d 1103 (9th Cir. 2009) …………………………………………………43

*United States v. Salerno,*
481 US 739 - Supreme Court (1987) ………………………………85, 88, 165-166

*Utah Coalition of La Raza v. Herbert,*
Dist. Court, D. Utah Case No. 2:11-cv-401 CW Related Case No. 2:11-cv-1072
(Filed June 18, 2014) ……………………………………………………142

*Walls v. State,*
7 Blackf. 572 (Ind. 1845) ………………………………………………71

*Watson v. Stone,*
4 So. 2d 700 (Fla. 1941)………………………………………………76

*Weizmann Institute of Science v. Neschis,*
229 F.Supp.2d 234 (S.D.N.Y.2002) ………………………………...44

*Winters v. New York,*
333 U.S. 507 (1948) …………………………………………………162

*Wong Sun v. United States,*
371 U.S. 471, 488, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963) ………………………102

*Woollard v. Gallagher,*
712 F. 3d 865 - Court of Appeals, 4th Circuit (2013) ………………………68, 161

*Wright v. Commonwealth,*
77 Pa. 470 (1875) ……………………………………………………72

*Ybarra v. Illinois,*
444 U.S. 85, 91, 100 S. Ct. 338, 62 L. Ed. 2d 238, (1979) ………………...102

*Yick Wo v. Hopkins,*
118 US 356 – United States Supreme Court (1886) …………………...1, 10

## Constitutional Provisions

U.S. Const. amend. II……………………………………………...…*passim*

U.S. Const. amend. VI……………………………………………...…*passim*

U.S. Const. amend. VIII……………………………………………...……*passim*

Cal. Const., art. I, § 1……………………………………………23, 52, 142

Cal. Const., art. I, § 13……………………………………………...……………142

## California Statutes

Cal. Business & Professions Code § 7574.1……………………………...…156-158
Cal. Business & Professions Code § 7582.2………………………...….…156, 158
Cal. Penal Code § 150…………………………………………………...…56, 57
Cal. Penal Code § 171b……………………………...………28, 47, 51, 127, 135, 137-138
Cal. Penal Code § 417…………………………………………………...……174
Cal. Penal Code § 626.9………………………………...…………54, 127, 135, 137-138
Cal. Penal Code § 654…………………………………………………...……74, 98
Cal. Penal Code § 4030…………………………………………...………………114
Cal. Penal Code § 16170……………………………………….…………………59
Cal. Penal Code § 16505…………………………………………………...……156
Cal. Penal Code § 16520……………………………………………….…………59
Cal. Penal Code § 16530………………………………………………….………47
Cal. Penal Code § 16590……………………………………………….…………96
Cal. Penal Code § 16650………………………………………………….………60
Cal. Penal Code § 16840…………………………………………………60, 167
Cal. Penal Code § 17030……………………………………………...……170
Cal. Penal Code § 21510…………………………………………………...……46
Cal. Penal Code § 25400………………………………………………2, 46-47, 52
Cal. Penal Code § 25450…………………………………………………...……158
Cal. Penal Code § 25455…………………………………………………...……158
Cal. Penal Code § 25460…………………………………………………...……157
Cal. Penal Code § 25605…………………………………………………...……156
Cal. Penal Code § 25850…………………………………………….…*passim*
Cal. Penal Code § 25900…………………………………………………...……153
Cal. Penal Code § 26005………153, 158
Cal. Penal Code § 26010…………………………………………………...……153

Cal. Penal Code § 26015.....................................................................153
Cal. Penal Code § 26020.....................................................................153
Cal. Penal Code § 26025.....................................................................153
Cal. Penal Code § 26030.....................................................................154
Cal. Penal Code § 26035.....................................................................154
Cal. Penal Code § 26040...............................................................153-154
Cal. Penal Code § 26045.....................................................................154
Cal. Penal Code § 26050.....................................................................154
Cal. Penal Code § 26055.....................................................................154
Cal. Penal Code § 26060...............................................................153-154
Cal. Penal Code § 26150.....................................................................158
Cal. Penal Code § 26155.....................................................................158
Cal. Penal Code § 26300..............................................................149, 153
Cal. Penal Code § 26350................................................................*passim*
Cal. Penal Code § 26361.....................................................................155
Cal. Penal Code § 26362.....................................................................155
Cal. Penal Code § 26363.....................................................................155
Cal. Penal Code § 26364.....................................................................155
Cal. Penal Code § 26365.....................................................................155
Cal. Penal Code § 26366..............................................................153, 155
Cal. Penal Code § 26366.5..................................................................155
Cal. Penal Code § 26367.....................................................................155
Cal. Penal Code § 26368.....................................................................155
Cal. Penal Code § 26369.....................................................................155
Cal. Penal Code § 26373.....................................................................155
Cal. Penal Code § 26374.....................................................................155
Cal. Penal Code § 26375.....................................................................155
Cal. Penal Code § 26377.....................................................................155
Cal. Penal Code § 26381.....................................................................155
Cal. Penal Code § 26382.....................................................................155
Cal. Penal Code § 26383.....................................................................155
Cal. Penal Code § 26384.....................................................................155
Cal. Penal Code § 26387.....................................................................155
Cal. Penal Code § 26388.....................................................................156
Cal. Penal Code § 26389.....................................................................156
Cal. Penal Code § 26391.....................................................................156
Cal. Penal Code § 26400................................................................*passim*
Cal. Penal Code § 26405.......................................................153, 156, 171
Cal. Penal Code § 29800.....................................................................174
Cal. Penal Code § 33850.....................................................................115

Cal. Welfare and Institutions Code Section § 5150……………………………...…115

**Other Statutes**

District of Columbia Code § 22-4504.01…………………………………………77
Florida Stat. Ann. § 790.053(1)..………………………………..………………77
Illinois 720 Ill. Comp. Stat. 5/24-1(a)(10) ……………………………..………77
New Jersey Revised Statute § 2C:39-5(c) …………………………………68, 77
Mass. Gen. Laws ch. 140, § 131 …………………………………………………77
Minn. Stat. § 624.7181, subd. 1(b)(3) ……………………………………………77
Nevada Revised Statute § 503.165……………….…….………………………..77
Oregon Revised Statute § 821.240(a) ……………………………………………77

**Other Authorities**

Fed. Rules Civ. Proc. 15(a)(2)…………………………………………………...141

A.L. Bancroft,
  *The General Laws of the State of California From 1850 to 1864, Inclusive:*
  *Volume 1* (1872) page 261.
  Criminal Practice Act – Concealed Weapons – An Act to prohibit the
  carrying of concealed weapons – Approved April 27, 1863, 748. 1585.
  Section 1………………………………………………………………………72

Adam Winkler,
  *The Secret History of Guns,*
  "The Atlantic" online magazine September 2011…………………....…3-6

Eugene Volokh,
  Implementing the Right to Keep and Bear Arms for Self-Defense: An
  Analytical Framework and a Research Agenda, 56 UCLA L.Rev.
  1443(2009)…………………………………………………………..127, 128

Los Angeles Police Department,
  "Inside the LAPD, History of the LAPD 1926-1950"
  http://www.lapdonline.org/history_of_the_lapd/content_basic_view/1109
  ……...............................................................................................................57

## INTRODUCTION

"Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution. This principle of interpretation has been sanctioned by this court in *Henderson v. Mayor of New York*, 92 U.S. 259; *Chy Lung v. Freeman*, 92 U.S. 275; *Ex parte Virginia*, 100 U.S. 339; *Neal v. Delaware*, 103 U.S. 370; and *Soon Hing v. Crowley*, 113 U.S. 703." *Yick Wo v. Hopkins*, 118 US 356 – United States Supreme Court (1886) at 373-374.

California Penal Code sections will often be abbreviated as "PC."

It is an uncontroverted fact (SUF 132) that concealed carry substantially burdens Plaintiff-Appellant Nichols' ("Plaintiff," Plaintiff Nichols") right to self-defense, even if he lived in a jurisdiction which issued permits and he had a permit, which he does not.

The racist intent of the California legislature in enacting the 1967 ban on openly carrying loaded firearms in public dooms the 1967 Black Panther Loaded Open Carry Ban.

The intent of the recent California legislature to "close the loophole" in the 1967 ban by banning modern firearms from being openly carried tars those bills with the same racist brush. This likewise makes them unsalvageable as well.

This appeal involves a Constitutional challenge to part of Assembly Bill 1591 "The Mulford Act of 1967" which made it a crime to carry a loaded firearm in public *for the purpose of self-defense* and a Constitutional challenge to two

recently enacted laws which ban the Open Carry of modern unloaded firearms which the California legislature said were necessary to "close the loophole" in the 1967 ban (formerly PC 12031 now PC 25850 in part).

There are many other Constitutional challenges made in the district court as well which will be argued later in this brief. Note: from 1969 to 2012 a person could be charged with carrying a loaded firearm of PC 25850(a) in addition to carrying a concealed firearm PC 25400 and punished for violating both of these laws as well as punished for violating any number of additional infractions, misdemeanors and felonies committed during the same act or same continuous act. That is no longer the case. A person can only be convicted and punished for committing one crime per act, the one which carries the greatest sentence. The rest of the convictions must be stayed pursuant to the California Supreme Court decision *People v. Jones*, 278 P. 3d 821 (2012).

As California does not have a law criminalizing specifically the Open Carry of a loaded firearm and a person cannot be punished for both carrying a concealed handgun and for carrying a loaded handgun concealed, the applicability of PC 25850(a) is now pretty much limited to openly carrying loaded firearms although technically a person could be punished for carrying a loaded firearm that was carried concealed so long as the conviction for carrying a concealed handgun was stayed.

The district court record is clear that not only was race a motivating factor in enacting the 1967 ban, it was the sole motivating factor.

Liberal UCLA Law Professor Adam Winkler, who personally opposes the carrying of firearms in public (openly or concealed), wrote an eloquent and objective article describing the events which led up to passage of the 1967 bill in the September 2011 online edition of "The Atlantic" magazine which can be found at http://www.theatlantic.com/magazine/archive/2011/09/the-secret-history-of-guns/308608/ (last visited October 29, 2014) wherein Professor Winkler succinctly summarizes part of Plaintiff-Appellant Nichols ("Plaintiff," "Plaintiff Nichols") evidence entered into the record::

> "The 24 men and six women climbed the capitol steps, and one man, Bobby Seale, began to read from a prepared statement. "The American people in general and the black people in particular," he announced, must take careful note of the racist California legislature aimed at keeping the black people disarmed and powerless Black people have begged, prayed, petitioned, demonstrated, and everything else to get the racist power structure of America to right the wrongs which have historically been perpetuated against black people The time has come for black people to arm themselves against this terror before it is too late. Seale then turned to the others. "All right, brothers, come on. We're going inside." He opened the door, and the radicals walked straight into the state's most important government building, loaded guns in hand. No metal detectors stood in their way."

> This occurred on May 2, 1967. They were there to protest AB 1591 which was being heard in committee that day and because, at the last minute, they learned that then Governor Ronald Reagan was going to be giving a press conference which assured that there protest would be covered by the press.

Why was the bill introduced in the first place?  After all, it had always

been legal to openly carry loaded firearms in California *for the purpose of*

*self-defense*.  Professor Winkler continues:

"In February of 1967, Oakland police officers stopped a car carrying
Newton, Seale, and several other Panthers with rifles and handguns. When
one officer asked to see one of the guns, Newton refused. "I don't have to
give you anything but my identification, name, and address," he insisted.
This, too, he had learned in law school.

"Who in the hell do you think you are?" an officer responded.

"Who in the hell do you think you are?," Newton replied indignantly. He
told the officer that he and his friends had a legal right to have their firearms.

Newton got out of the car, still holding his rifle.

"What are you going to do with that gun?" asked one of the stunned
policemen.

"What are you going to do with your gun?," Newton replied.

By this time, the scene had drawn a crowd of onlookers. An officer told the
bystanders to move on, but Newton shouted at them to stay. California law,
he yelled, gave civilians a right to observe a police officer making an arrest,
so long as they didn't interfere. Newton played it up for the crowd. In a loud
voice, he told the police officers, "If you try to shoot at me or if you try to
take this gun, I'm going to shoot back at you, swine." Although normally a
black man with Newton's attitude would quickly find himself handcuffed in
the back of a police car, enough people had gathered on the street to
discourage the officers from doing anything rash. Because they hadn't
committed any crime, the Panthers were allowed to go on their way.

The people who'd witnessed the scene were dumbstruck. Not even Bobby
Seale could believe it. Right then, he said, he knew that Newton was the
"baddest motherfucker in the world." Newton's message was clear: "The
gun is where it's at and about and in." After the February incident, the
Panthers began a regular practice of policing the police. Thanks to an army

of new recruits inspired to join up when they heard about Newton's bravado, groups of armed Panthers would drive around following police cars. When the police stopped a black person, the Panthers would stand off to the side and shout out legal advice.

Don Mulford, a conservative Republican state assemblyman from Alameda County, which includes Oakland, was determined to end the Panthers' police patrols. To disarm the Panthers, he proposed a law that would prohibit the carrying of a loaded weapon in any California city. When Newton found out about this, he told Seale, "You know what we're going to do? We're going to the Capitol." Seale was incredulous. "The Capitol?" Newton explained: "Mulford's there, and they're trying to pass a law against our guns, and we're going to the Capitol steps." Newton's plan was to take a select group of Panthers "loaded down to the gills," to send a message to California lawmakers about the group's opposition to any new gun control."

The record in this case is perfectly clear that one of the laws from the 1967 Act at issue in this appeal, California Penal Code section 25850 (part of former section 12031) is disproportionately enforced against minorities by a factor of three to one. The disproportionate enforcement is undeniable based on the evidence from Defendant Harris' own DOJ publications. In this Circuit all that is required is to show the racially discriminatory intent. *PACIFIC SHORES PROPERTIES v. City of Newport Beach*, 730 F. 3d 1142 - Court of Appeals, 9th Circuit (2013) at 1161 (cert denied).

The Appellees never attempted to prove that there were other motivating factors or that the law would have been enacted were it not for race. Instead, Defendant Harris argued that the Second Amendment condones racially discriminatory gun bans.

If there were any motivation other than race for enactment of the 1967 Black Panther Loaded Open Carry ban the Appellees never argued one. Instead, Defendant-Appellee Harris ("Defendant Harris) came up with this preposterous excuse for the racist law – "[T]hat the Founding Fathers championed the Second Amendment, which Nichols invokes as a weapon against allegedly racist laws, to try to legitimize Southern citizen "slave patrols" that terrorized enslaved African-Americans, and thereby to entice Southern states to support the U.S. Constitution."

This court needn't waste any time or ink pondering that "Ave Maria" pass by Defendant Harris to salvage this racist law. The Second Amendment was incorporated via the Fourteenth Amendment which Professor Winkler correctly observed in his article:

> "Whether or not the Founding Fathers thought the Second Amendment was primarily about state militias, the men behind the Fourteenth Amendment—America's most sacred and significant civil-rights law—clearly believed that the right of individuals to have guns for self-defense was an essential element of citizenship. As the Yale law professor Akhil Reed Amar has observed, "Between 1775 and 1866 the poster boy of arms morphed from the Concord minuteman to the Carolina freedman."" Id.

Plaintiff Nichols submits that there is no longer any question that the Second Amendment applies fully to Americans, regardless of his or her race Defendant Harris' Ave Maria is entirely without merit.

There are many fatal flaws in the logic of the district court. It erred in its decision which precludes any minority from bringing a pre-enforcement challenge

to any criminal law in which race was a sole or motivating factor and in this case, a law which is disproportionately enforced against minorities according to Defendant Harris' own Department of Justice publicans (entered into the record) which she says in her Answer to the Operative Complaint "speak for themselves."

Defendant Harris, reluctantly, admitted to enforcement of this law (PC 25850) and others, and so the district court must have concluded that one must first be arrested because of his race to bring a race based equal protection challenge in order to have standing.

Once a criminal law has been "enforced" against a minority by his being arrested and or prosecuted then that minority loses access to the Federal Courts pursuant to *Younger v. Harris*, 401 US 37 - Supreme Court (1971).

This puts the minority at the mercy of the criminal courts from the very same racist state or racist local jurisdiction that enacted the racist law or ordinance in the first place.

By extension, the district court's logic entails every White person is precluded from bringing a pre-enforcement challenge to a racist law even though he is caught up in the plainly *illegitimate* sweep of the law. Plaintiff Nichols submits that there is no legitimate sweep or even a light legitimate dusting to be found in the laws at issue in this appeal.

After all, how can a White person argue that a law which was enacted specifically in order to discriminate against minorities, a law in which the legislature included a provision to give the police the unbridled discretion to target minorities by allowing them to pick and choose whom they would stop and search, was enforced against him because he is White?

"Victor Underwood, **a white**…" *Hunter v. Underwood*, 471 US 222 - Supreme Court (1985) at 223 (emphasis and italics added) brought a Fourteenth Amendment equal protection challenge to a section of the Alabama Constitution (Art. VIII, § 182), the text of which was race-neutral, but was motivated in part by race and which was disproportionately enforced against minorities.  He won.

The district court never explained why *Hunter* did not apply to Plaintiff.  This court now has that burden.  If it helps this court in any way, while it is true that Plaintiff Nichols is White, he is also of mixed race. Plaintiff submits, as in *Hunter*, it does not matter what his race is.

Plaintiff Nichols submits that it is also irrelevant whether or not the California legislature would today enact the same law today without having any racial motivation.  As the Supreme Court said in *Hunter*:

> "Without deciding whether § 182 would be valid if enacted today without any impermissible motivation, we simply observe that its original enactment was motivated by a desire to discriminate against blacks on account of race and the section continues to this day to have that effect. As such, it violates equal protection under *Arlington Heights*." Id at 233.

If this circuit intended, as the district court erred in concluding, that *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) overruled *Hunter* and its progeny then it should explain why. The district court certainly did not explain why; it never even mentioned *Hunter*.

As this circuit said in a case decided *nine months after Furnace*:

"The 1903 Alabama legislature's willingness (or intent) to also disenfranchise white individuals convicted of crimes of moral turpitude was irrelevant; all that mattered was that the act "would not have been adopted ... in the absence of the racially discriminatory motivation."[24] Id. at 231, 105 S.Ct. 1916"" *PACIFIC SHORES PROPERTIES v. City of Newport Beach*, 730 F. 3d 1142 - Court of Appeals, 9th Circuit (2013) at 1161 (cert denied).

As the dissent noted in the en banc denial of *PACIFIC SHORES PROPERTIES* "[A]ll a plaintiff must allege to survive summary judgment is that a discriminatory legislative intent lay behind the challenged law. 730 F.3d at 1158." *PACIFIC SHORES PROPERTIES* v. City of Newport Beach, 746 F. 3d 936 - Court of Appeals, 9th Circuit (2014) at 939.

The district court, even though it did not hold a hearing as required by law, implicitly converted Defendant Harris's motion for judgment on the pleadings into a motion for summary judgment because matters outside of the pleadings were not excluded by the district court.

All that matters was that PC 25850 "would not have been adopted ... in the absence of the racially discriminatory motivation" but Plaintiff-Appellant Nichols went far beyond that which was required in *PACIFIC SHORES PROPERTIES*. He

proved not only the racially discriminatory motivation, but also that the law is disproportionately enforced, a fact Appellees cannot deny given that the proof is in Defendant Harris' own Department of Justice records and publications which was entered into the district court record.

The Appellees submitted not a shred of evidence that PC 25850 would have been adopted were it not for racial minorities openly carrying guns. The district court should have granted Plaintiff-Appellant Nichols motion for partial summary judgment, sua sponte, even if Plaintiff Nichols had never "properly" raised an equal protection challenge. The racist intent of the legislature, the evidence in the record of its disproportionate enforcement, the harm it has caused Plaintiff Nichols, and Plaintiff Nichols' motion was placed squarely before the district court.

To quote the 1970 California drug case the district court relied on to conclude that all firearms, even those legally carried in one's home, fall outside the scope of Fourth Amendment protections:

> "It is argued that the legislative purpose is discriminatory because the wish of the Legislature is to give the police power to inspect firearms of persons whom they regard as suspicious and those whom they disfavor. Of course, legislation which is passed "with an evil eye and an unequal hand" (*Yick Wo v. Hopkins*, 118 U.S. 356, 373 [30 L.Ed. 220, 227, 6 S.Ct. 1064]), ***the legislative purpose being discriminatory enforcement, must be struck down***." *People v. DeLong*, 11 Cal. App. 3d 786 - Cal: Court of Appeal, 1st Appellate Dist., 4th Div. (1970) at 792-793. (emphasis and italics added)

Plaintiff Nichols submitted incontrovertible proof that the statute (PC 25850) was passed "with an evil eye and an unequal hand" and he has proved that PC

25850 has "been enforced unequally." The proof in unequal enforcement lay in publications from Defendant Harris' own Department of Justice which, in her exact words from her Answer to Plaintiff Nichols' Second Amended Complaint (SAC), "speak for themselves."

That the Mulford Act of 1967 was passed "with an evil eye and an unequal hand" was proven time and again by the legislative record and the excerpts of the Mulford Act of 1967 Plaintiff Nichols entered into the district court record.

Plaintiff Nichols is a racial minority. No reasonable person can look at the evidence filed in this case and not discern the racial animus behind enacting the ban on carrying loaded firearms in public. From genesis, to enactment, to enforcement, racial animus permeates the ban.

From the evidence submitted, it is a fact that the law is disproportionately enforced against minorities. If Plaintiff Nichols is arrested for violating PC 25850 then that arrest and Plaintiff's race will be entered into Defendant Harris' DOJ database and one more minority will have fallen victim to a law which was unconstitutional the very moment it went into effect.

The racist intent of PC 25850 had been before the district court since Plaintiff's initial complaint ¶¶ 19-21, 30 (and Exhibits 2-3 attached to initial complaint) and has been argued time and again ever since. The district court erred in claiming it could find no such challenge.

"Where… there is direct or circumstantial evidence that the defendant has acted with a discriminatory purpose and has caused harm to members of a protected class, such evidence is sufficient to permit the protected individuals to proceed to trial under a disparate treatment theory. This is no less true where, as here, the defendant is willing to harm certain similarly-situated individuals who are not members of the disfavored group in order to accomplish a discriminatory objective, while preserving the appearance of neutrality." *PACIFIC SHORES PROPERTIES v. City of Newport Beach*, 730 F. 3d 1142 - Court of Appeals, 9th Circuit (2013) at 1148,

Of course race is not the sole basis for an equal protection claim. The district court erred in tossing out all of Plaintiff Nichols' equal protection claims which were not based on race because it held that rational basis review applies.

Rational review was taken off the table by: *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008); *McDonald v. City of Chicago*, 561 U.S. ____, 130 S.Ct. 3020, 3047, 177 L.Ed.2d 894 (2010) as well as this Circuit's decisions in: *Jackson v. City and County of San Francisco*, 746 F. 3d 953 - Court of Appeals, 9th Circuit (2014) at 960; *Peruta v. County of San Diego*, 742 F. 3d 1144 - Court of Appeals, 9th Circuit (2014) at 1149; *US v. Chovan*, 735 F. 3d 1127 - Court of Appeals, 9th Circuit (2013) cert denied and *US v. Vongxay*, 594 F. 3d 1111 - Court of Appeals, 9th Circuit (2010) at 1118 also preclude rational basis review.

Moreover, the laws at issue in this case ban the carrying of any loaded firearms, including antiques, in the curtilage of one's home *for the purpose of self-defense*. Two of the bans (California Penal Code sections 26350 and PC 26400)

ban the carrying of *modern* unloaded concealable firearms and modern unloaded firearms which are not concealable in the curtilage of one's home as well as in non-sensitive public places *for the purpose of self-defense*.

Plaintiff Nichols, because he lives in an incorporated city, cannot so much as sit on his porch with an antique loaded flintlock rifle, flintlock shotgun or flintlock pistol without violating PC 25850. Indeed, once he so much steps outside the door of his home with any loaded firearm, antique or modern, he is in violation of the ban. The same is true should he so much step outside the door of his home with any modern unloaded firearm.

The Obama administration agrees that the curtilage of one's home is one's home for Second Amendment purposes citing *Florida v. Jardines*, 133 S. Ct. 1409 - Supreme Court (2013) in a separate case which will be argued more fully in the Argument section of this brief.

Even if the Supreme Court in *Heller* and *McDonald* had explicitly said that it limited the scope of the decisions to one's home (which it did not), the laws at issue here are facially invalid just as were the laws at issue in *Heller* and *McDonald* and for the same reasons given in *Heller* and *McDonald* and for the reasons unconnected with the Second Amendment argued in the district court and argued again in this appeal.

"Some have made the argument, bordering on the frivolous, that only those arms in existence in the 18th century are protected by the Second Amendment. We do not interpret constitutional rights that way." *Heller* at 2791.

Plaintiff-Appellant Nichols submits that he has a right to openly carry modern firearms *for the purpose of self-defense* (which includes stun guns) and for other lawful purposes in the places his operative Complaint seeks to carry them and he further submits that the district court erred in denying his motion for partial summary judgment and erred in granting Defendant Harris' motion for judgment on the pleadings and erred in dismissing Plaintiff-Appellant Nichols claims against Defendant-Appellee Brown and erred in dismissing, with prejudice, Plaintiff-Nichols state law claims under the analogous sections of the California Constitution. These are but a few of the errors made by the district court.

If the judgment of the district court is affirmed, the deleterious ramifications of that decision will reach far beyond the Second Amendment if for no other reason that the district court concluded that laws in which it is the police who create the danger to public safety are constitutional under any level of scrutiny.

## JURISDICTIONAL STATEMENT

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, as this suit arises under the United States Constitution. The three statutes at issue on appeal violate the Second, Fourth and Fourteenth Amendments to the United States Constitution, the

California Constitution and are unconstitutionally vague. The district court had jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and the state law claims pursuant to 28 U.S.C. § 1367.

On May 1, 2014, the District Court granted Defendant-Appellee California Attorney General Harris' ("Defendant Harris") motion for judgment on the pleadings, denied Plaintiff's motion for partial summary judgment and dismissed Plaintiff's case with prejudice Plaintiff timely noticed his appeal on May 27, 2014 in accordance with Federal Rules of Appellate Procedure 3 and 4 and Ninth Circuit Rules 3-1, 3-2 and 3-4.

On May 7, 2012, the District Court dismissed California Governor Edmund G. Brown Jr., ("Defendant Brown") and Plaintiff's state law claims with prejudice which are timely appealed pursuant to *Lacey v. Maricopa County*, 693 F. 3d 896 - Court of Appeals, 9th Circuit (2012) in Plaintiff's notice of appeal of final judgment. This Court has jurisdiction per 28 U.S.C. § 1291 in this appeal from a final judgment that disposed of all claims.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Do California's bans on carrying loaded firearms and California's bans on openly carrying unloaded modern firearms *for the purpose of self-defense* violate the Second, Fourth and Fourteenth Amendments to the United States Constitution?

2. Do the Second, Fourth and Fourteenth Amendments secure the right to carry fully functional loaded firearms in public *for the purpose of self-defense*?

3. Do the Second, Fourth and Fourteenth Amendments historically guarantee the individual right of the individual to keep and bear loaded and modern unloaded firearms openly *for the purpose of self-defense*: in one's home and in non-sensitive public places, where hunters are exempt from the bans, and while in or on a motor vehicle; and in or on any attached camper or trailer? ("Step 1" of *Chovan*)

4. Do these three bans on carrying loaded firearms and modern unloaded firearms (PC 25850, PC 26350, and 26400) burden Second Amendment conduct? ("Step 2" of *Chovan*).

5. Are these three bans subject to per se invalidation pursuant to *Heller* and *McDonald*?

6. Are these three bans facially invalid under the Second, Fourth and Fourteenth Amendments?

7. Are these three bans invalid as-applied to Plaintiff Nichols and similarly situated individuals who fall within the scope of the Second Amendment but are denied their Second Amendment right to keep and bear firearms *for the purpose of self-defense* in the

aforementioned private and non-sensitive public places under the Second, Fourth and Fourteenth Amendments?

8.     Are these three bans invalid as-applied to Plaintiff Nichols in the aforementioned places under the Second, Fourth and Fourteenth Amendments?

9.     Does, as Defendant Harris claims, the Second Amendment condone racially motivated criminal firearm bans?

10.    Does the Fourteenth Amendment condone racially motivated criminal firearm bans?

11.    Are these bans facially and/or as-applied unconstitutionally vague?

12.    Must a person give up his Fourth Amendment rights in order to exercise his rights under the Second and Fourteenth Amendments?

13.    Can Plaintiff Nichols be denied Fourteenth Amendment equal protection under the law given that the Second Amendment was applied to the states via the Fourteenth Amendment?

14.    Can Plaintiff Nichols and similarly situated individuals who fall within the scope of the Second Amendment be denied Fourteenth Amendment equal protection under the law in conjunction with the Second Amendment given that similarly situated persons are exempt from the bans?

15.   Can Plaintiff Nichols be denied Fourteenth Amendment equal
      protection under the law given that similarly situated persons are
      exempt from the bans?

16.   Is it constitutional for California to restrict handgun Open Carry
      licenses to similarly situated persons who reside in counties with a
      population of fewer than 200,000 people but deny them to Plaintiff
      Nichols and/or other similarly situated persons who fall within the
      scope of the Second Amendment who reside in a county with a
      population of more than 200,000 people?

17.   If these three bans are not facially invalid, is it possible for this court
      to "liberally construe" Plaintiff Nichols operative Second Amended
      Complaint (SAC) to grant him as-applied relief given that he is pro se
      and is an unrepresented litigant in a civil rights case challenging
      criminal laws and to do so without a remand to the district court for
      further proceedings?

18.   If not, was it proper for the district court to deny Plaintiff Nichols'
      leave to amend his complaint and to dismiss his case entirely, with
      prejudice?

19.   Is it constitutional for the State of California to ban the carrying of
      non/less lethal stun guns *for the purpose of self-defense*?

20.	Did the district court incorrectly dismiss with prejudice Plaintiff Nichols' claims under the California Constitution?

21.	Did the district court incorrectly dismiss with prejudice Appellee-Defendant Brown in his official capacity as governor?

22.	Have the Appellees met their evidentiary burden required under heightened scrutiny?

23.	Did the district court err in concluding that whites and/or minorities cannot challenge racially discriminatory criminal laws until they have been arrested for violating the laws?

24.	Did the district court err in concluding that firearms fall outside the scope of Fourth Amendment protections?

25.	Did the district court err in concluding that there is no right to openly carry firearms for the purpose of self-defense in non-sensitive public places, in or on a motor vehicle and any attached camper or trailer and in the home?

26.	Did the district court err in concluding that there is no right to openly carry firearms for the purpose of self-defense in non-sensitive public places, in or on a motor vehicle and any attached camper or trailer and in the home where it is legal for similarly situated individuals to openly carry firearms for purposes other than self-defense?

27. Did the district court err in concluding that there is no right to openly carry firearms for the purpose of self-defense in non-sensitive public places, in or on a motor vehicle and any attached camper or trailer and in the home where it is legal for similarly situated individuals to openly carry firearms for the purpose of self-defense?

28. Does a firearm with an empty firing chamber in and of itself constitute an unloaded firearm?

29. If a County has an ordinance exempting the discharge of a firearm for the purpose of self-defense, are the places in the county where the discharge of a firearm is prohibited for purposes other than self-defense still "prohibited places" under California law? What about incorporated cities which do not allow hunting but exempt the discharge of a firearm for the purpose of self-defense?

30. If a person does not have a tall, sturdy fence or other barrier fully enclosing his property and a door to his house, where he resides, does not have a lock or is otherwise left open; does this make the inside of his house a "public place" under California law and if so, is the state prohibition on Plaintiff Nichols's right to keep and bear arms inside of his house constitutional?

31.    If members of the public are allowed inside of Plaintiff Nichols's house, where he resides, does that make his house a "public place" under California law and if so, is the state prohibition on Plaintiff Nichols's right to keep and bear arms inside of his house constitutional?

32.    Do the laws at issue in this appeal survive the rational basis test?

33.    Does the Second Amendment, as claimed by Appellee-Harris, condone racially motivated and discriminatory criminal gun laws?

34.    If so, does the incorporation of the Second Amendment via the Fourteenth Amendment prohibit racially motivated and discriminatory criminal gun laws?

## STATEMENT REGARDING ADDENDUM

An addendum setting out relevant statutory and regulatory provisions is bound together with this brief.

## STATEMENT WITH RESPECT TO ORAL ARGUMENT

Pursuant to Fed. R. App. P. 32(a)(7)(B)(iii) and 34(a)(1), pro se Appellant Charles Nichols requests the opportunity to present oral argument. Oral argument is required in this case in light of the fact that some aspects of this case are of first impression in this Circuit and involve numerous constitutional issues that once

clarified will determine the scope of the Second, Fourth and Fourteenth Amendments to the United States Constitution.

Pursuant to Fed. R. App. P. 34(a)(2) oral argument must be allowed in every case unless a panel of three judges who have examined the briefs and record unanimously agrees that oral argument is unnecessary for any of the following reasons: (A) the appeal is frivolous; (B) the dispositive issue or issues have been authoritatively decided; or (C) the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

## STATEMENT OF THE CASE

The history of "gun control" in this Nation is a racist one and the State of California is no exception. The 1923 Act of California providing for permits to carry concealed weapons was enacted specifically to exclude the then two predominant minority groups in California (Hispanics and Chinese) from carrying concealed weapons and even went so far as to prohibit anyone who was not born in this country from even possessing a concealable firearm. It would be decades before Chinese would be allowed to obtain American citizenship and the provision limiting handgun possession to naturally born American citizens would not be struck down for nearly fifty years after the 1923 Act.

Fast forward to 1967 and California has a new predominant minority group – Blacks. It is then still illegal for persons who were not natural born American citizens to even possess handguns, let alone to carry them in public for any purpose. Blacks were not an immigrant group and so the "solution" the 1923 California legislature found wouldn't work this time around.

Besides, these "Negroes" weren't just openly carrying handguns. Photographs and news video of the time showed that most of them were openly carrying long guns which even the Act of 1923 did not prevent Hispanics and Chinese from possessing or carrying in public.

The district court record shows that the California legislature believed that there was a Constitutional right to openly carry firearms. The record also proves that the sole motivation of the California legislature was to disarm minorities.

The relevant case law in 1967 was a 1924 California Supreme Court decision, (*In Re Rameriz*, 193 Cal. 633; 226 P. 914 (1924); 1924 Cal. LEXIS 351; 34 A.L.R. 51) which upheld the conviction of a Latino for carrying a concealed handgun in public. The court noted that under the law Rameriz was not even allowed to possess a handgun let alone carry one in public (openly or concealed).

Rejecting his claim that the Second Amendment guarantees the right to carry a firearm *for the purpose of self-defense*, concluding instead that the Second Amendment restricts only the Federal Government and applies only to militias, the court then said it could find no clause of the California Constitution which conformed to its militia based interpretation of the Second Amendment right.

The *Rameriz* Court conveniently failed to recognize that Article I, Section 1 of the California Declaration of Rights enumerates a right to defense of self and property and always has, even when this State was an independent republic.

However, the court opined that "It may be remarked that an absolute prohibition of such right might be held to infringe a fundamental right." And then cited *Nunn v. State*, 1 Ga. 243, 251 (1846) including the section of *Nunn* which held "a prohibition against bearing arms openly, is in conflict with the constitution, and void."

California has always been an Open Carry state. Indeed, at the time of ratification of the 14th Amendment, which is relevant to this case which challenges state laws given that the Second Amendment right was incorporated via the 14th Amendment, California had a statewide ban on carrying concealed weapons in public (excepting only travelers while on a journey and police). There was no mechanism to issue a permit and local governments were prohibited under the

California Constitution from issuing permits without authorization from the state legislature.

This posed a conundrum for the 1967 California legislature. It could not ban American citizens from openly carrying firearms in public, and it couldn't even ban persons not born in this country from carrying long guns (long guns are not concealable firearms under California law) without infringing on a fundamental right.

A law which overtly stated that minorities could not openly carry firearms would be "suspect" and therefore subject to strict scrutiny and had been since *Korematsu v. United States*, 323 U.S. 214 (1944).

And so what was the 1967 California legislature to do? It's solution was to ban the open carry of loaded firearms in incorporated cities and in unincorporated county territory where the discharge of a firearm was prohibited but provide an exception to hunters to appease the NRA and an exception for those who "reasonably" feared they were in danger (since raised to immediate, grave danger) and, significantly, grant police the unbridled discretion to pick and choose whom they would stop and search (now codified as PC 25850(b)) with the added kicker that if one refused to "voluntarily consent" to the search it constituted "probable cause" for an arrest thereby rendering the Fourth Amendment null and void as well as invalidating the Due Process Clause of the Fifth Amendment.

Plaintiff Nichols argued that the Fourth Amendment case law is voluminous in support of his claim that one cannot be compelled to "voluntarily" consent to a search and that the threat of an arrest under PC 25850(b) is coercion.

Rather than specifically address this challenge, the court held that firearms fall outside the scope of Fourth Amendment protection, even in places where it is legal for them to be openly carried by persons who can legally possess firearms.

The National Rifle Association did not have a problem with the racist intent of the legislature. The record shows that not only did the NRA support the ban, it helped write it and endorsed its passage once provisions were added to exclude hunters from the ban on openly carrying loaded firearms and a subsection (now PC 25850(b)) was added which gave police the unbridled authority to pick and choose whom they would stop to enforce the law upon.

It should come as no surprise, which the record in this case proves, that PC 25850 has been disproportionately enforced against minorities by a factor of three to one according to Defendant-Appellee Harris' own Department of Justice Publications.

The National Rifle Association would subsequently fund a lawsuit, *Peruta v. County of San Diego*, 742 F. 3d 1144 - Court of Appeals, 9th Circuit (2014) both in the district court and on appeal. It's official state organization, The California Rifle and Pistol Association is a plaintiff in that case.

The centerpiece of the NRA challenge in the opening brief to the *Peruta* appeal was "Constitutional Avoidance."  The NRA argued to uphold this racist law enacted by the 1967 California legislature (formerly PC 12031, now PC 25850 in part) while at the same time arguing to uphold the racist concealed carry act of the 1923 California legislature.  In 1923, the NRA had also supported the enactment of the overtly racist 1923 Act of California previously mentioned.

Some things never change.

In the non-sensitive public places Plaintiff Nichols seeks to openly carry a firearm *for the purpose of self-defense* it is legal for hunters to openly carry a firearm, loaded and unloaded, and a myriad of special interest groups are exempt from the bans on openly carrying unloaded firearms in these same public places.

The California Open Carry bans are not bans on openly carrying firearms, they are bans on openly carrying firearms *for the purpose of self-defense*.

There are many Constitutional challenges raised in this appeal under the Second, Fourth, and Fourteenth amendments as well as vagueness challenges. Should the laws at issue here survive these, Plaintiff Nichols raised in the district court, and again raises here on appeal, that the laws fail even a rational basis test.

It is difficult to rank the ways in which the laws at issue in this appeal offend the Constitution.  The most insidiously dangerous bans are the unloaded open carry bans.  The legislature did not claim that people who openly carry unloaded

firearms are a danger to the public, but rather the legislature claimed justification for enacting the twin bans because police *might* endanger the public.

If this rationale is upheld, it will provide a precedent for the government to ban anything and everything, anywhere and everywhere, anytime and every time simply because it wants to because police might pose a danger to the public.

Significant to this case as well is that Plaintiff Nichols did not limit his challenges to the Second Amendment.

California does not license the carrying of long guns and generally does not provide for licenses to openly carry handguns except in counties with a population of fewer than 200,000 people.

Although a person with a permit to carry a concealable weapon (CCW) is relieved of the general prohibition on the carrying of firearms (handguns, rifles and shotguns), loaded or unloaded, in most state and local government buildings (PC 171b) and is relieved of the general prohibition on the carrying of loaded long guns in schools and within 1,000 feet of a K-12 public or private school (PC 626.9) – Plaintiff-Appellant Nichols *does not* seek to carry any firearm in any of those public places or in any place other than where it is now legal for him to openly carry unloaded antique firearms.

Unloaded antique firearms are exempt from the two bans on openly carrying modern unloaded firearms PC 26350 & PC 26400.

Plaintiff-Appellant Nichols *does* seek to openly carry firearms in what he submits are not public places: the curtilage of his home and in and on his motor vehicle including any attached camper or trailer.

The public places in every city and county in this state in which he does seek to openly carry firearms are not sensitive places as the laws at issue in this appeal fully exempt hunters, both while they are hunting and while openly carrying their loaded and unloaded firearms to and from their hunting expedition.

In short, Plaintiff-Appellant Nichols does not seek to openly carry a loaded firearm in any public place where it is not now legal for a hunter to openly carry a loaded or unloaded firearm.

Indeed, given that The California Gun Free School Zone Act of 1995 (Penal Code section 626.9) "[D]oes not prohibit or limit the otherwise lawful transportation of any other firearm, other than a pistol, revolver, or other firearm capable of being concealed on the person, in accordance with state law" and there are many places a hunter can openly carry loaded and unloaded firearms for sporting purposes (including state parks) that Plaintiff-Appellant Nichols will not be able to openly carry a loaded firearm *for the purpose of self-defense* should he be granted all of the relief he requested – The public places where Plaintiff-Appellant Nichols seeks to openly carry a firearm *for the purpose of self-defense* are but a *small subset* of places where hunters can openly carry loaded firearms.

There are also numerous special interest group exemptions to the bans on unloaded firearms being openly carried in the same non-sensitive public places in which Plaintiff-Appellant Nichols seeks to openly carry a firearm *for the purpose of self-defense and for other lawful purposes*.

Regardless of whether or not this circuit ultimately decides that concealed carry is a right, Plaintiff-Appellant Nichols' Second Amendment right to self-defense would still be substantially burdened SUF 132. As the law now stands, Plaintiff Nichols' Second Amendment right is far more than substantially burdened; it is destroyed. The only firearms he is not now prohibited from carrying in the places his operative Complaint seeks to carry are *unloaded antiques*.

However, unlike all of the other concealed carry cases pending in this circuit or making their way up from the district courts to an appeal, Plaintiff-Appellant Nichols did not limit his Complaints to the Second Amendment, or even limit them to the carrying of a handgun as he seeks to carry loaded and unloaded handguns, rifles, shotguns and stun guns (e.g., Tasers) which this state classifies as firearms.

There are many Constitutional defects in the laws at issue in this appeal leaving them unsalvageable regardless of whether they are construed in conjunction with the Second Amendment in mind or without, if the latter is even possible.

For the first time after approximately two and a half years of litigation, the district court (sua sponte) concluded that Plaintiff Nichols does not have standing to challenge this racist law (PC 25850) essentially because he purportedly did not allege that the law was enforced against him because of his race.

The district court dismissed Plaintiff's first two complaints without even once pointing out where his complaints were defective or how to correct them in the amended complaint despite Plaintiff Nichols asking the court for guidance in pointing out what was defective so that he might correct the defects in his two amended Complaints. Plaintiff Nichols submits that the district court was required to identify the defects in his dismissed complaints so that he would be given an opportunity to correct them either via amendment or by subsequent pleadings.

The district court, however, found no difficulty in arguing Appellees' case for them and no difficulty in, sua sponte, granting extra time to Defendant Harris to file briefs without her requesting it and denying Plaintiff extra time to file a brief when he specifically requested the extra time.

In addition to withholding Plaintiff Nichols' Declaration of mixed race, the district court denied his motion to submit under seal the police incident report of the death threat against him that was publicly made and propagated via email to hundreds of people and prominently posted on an internet web site.

There are many (136) uncontroverted facts in this appeal. Perhaps the most relevant of these to this court to Plaintiff-Appellant Nichols ("Plaintiff," "Plaintiff Nichols") as-applied challenge is the uncontroverted fact (SUF 132) that "[C]oncealed carry substantially burdens Plaintiff Nichols' ability to defend himself even if he had a concealed carry license."

Plaintiff-Appellant Charles Nichols (Plaintiff) seeks declaratory and injunctive relief barring Defendants-Appellees ("Defendants") California Attorney General Harris and California Governor Edmund G. Brown Jr's enforcement, in their official capacity, of California Penal Code section 25850 (PC 25850) which bans Plaintiff from carrying loaded firearms (including non/less lethal Tasers) *for the purpose of self-defense* in the curtilage of Plaintiff's home, in or on his motor vehicle including any attached camper or trailer, and in non-sensitive public places where hunters and others are fully exempt from criminal liability under California law.

Plaintiff seeks declaratory and injunctive relief barring Defendants' enforcement of California Penal Code section 26350 (PC 26350) which bans modern, concealable, unloaded firearms (e.g., handguns) from being openly carried by Plaintiff *for the purpose of self-defense* in these aforementioned places and where hunters and many special interests are fully exempt from criminal liability under California law.

Plaintiff seeks declaratory and injunctive relief barring Defendants' enforcement of California Penal Code section 26400 (PC 26400) which bans the carrying of modern, unloaded firearms which are not concealable (e.g., rifles and shotguns) by Plaintiff *for the purpose of self-defense* in these aforementioned places and where hunters and many special interests are fully exempt from criminal liability under California law.

Pro se Plaintiff Charles Nichols filed his original Complaint on November 30, 2011 against California Attorney General Kamala Harris "Defendant Harris" (in her official capacity), California Governor Edmund G. Brown Jr., "Defendant Brown" (in his official capacity) and against various other defendants collectively referred to as the "Redondo Beach Defendants" and DOE defendants.

On January 17, 2012 Plaintiff filed an ex parte application to submit under seal a police incident report documenting a criminal death threat against Plaintiff Nichols referenced in his Complaint.

On January 19, 2012 the district court issued an order denying Plaintiff's ex parte application.

On February 2, 2012 Plaintiff filed his statement that he did not consent to proceeding before the magistrate judge. Nonetheless the magistrate judge, without referral by the district court, continued to preside over the district court proceedings over Plaintiff Nichols' declination.

On March 6, 2012 Defendants Harris and Brown moved to dismiss Plaintiff's case with prejudice. On May 7, 2012 the district court issued an order dismissing with prejudice Defendant Brown and dismissing with prejudice Plaintiff's state law claims but with leave to amend against Defendant Harris.

On May 30, 2012 Plaintiff filed his First Amended Complaint "FAC."

On June 29, 2012 Defendant Harris once again moved to dismiss Plaintiff's case with prejudice.

On March 3, 2013 Defendant Harris' motion to dismiss was denied but the district court nonetheless ordered Plaintiff to file a Second Amended Complaint "SAC."

On March 29, 2013 Plaintiff filed his Second Amended Complaint.

On April 1, 2013 the district court ordered Defendant Harris to file an Answer to the SAC.

On April 10, 2013 Plaintiff filed his motion for a preliminary injunction against Defendant Harris.

On April 16, 2013 Defendant Harris filed her Answer to Plaintiff's SAC.

On July 3, 2013 the district court entered an order denying Plaintiff's motion for a preliminary injunction.

On July 8, 2013 Plaintiff Nichols filed a timely notice of appeal.

On August 5, 2013 Plaintiff Nichols filed a notice of voluntary dismissal (without prejudice) against the remaining Redondo Beach and Doe defendants.

On November 12, 2013 Defendant Harris filed a motion for judgment on the pleadings pursuant to F.R.C.P 12(c).

On November 8, 2013 Plaintiff moved for partial summary judgment pursuant to F.R.C.P 56.

On May 1, 2014 the district court issued an order accepting the findings, conclusions and recommendations of the magistrate judge.

On May 1, 2014 the district court entered final judgment against Plaintiff dismissing his case with prejudice.

On May 27, 2014 Plaintiff timely filed his notice of appeal of final judgment.

On June 10, 2014 the appeal of Plaintiff's preliminary injunction (Case No. 13-56203) was dismissed as moot.

None of the Redondo Beach or Doe defendants are parties to this appeal. The remaining Redondo Beach and Doe defendants were voluntarily dismissed without prejudice by Plaintiff-Appellant Nichols on August 5, 2013 and the district court denied their motion to dismiss as being moot in its order of August 8, 2013.

## SUMMARY OF ARGUMENT

This is not a complex case and, unlike all of the California concealed carry challenges pending before this Court of Appeals and en route to an appeal, Plaintiff Nichols is the only case which brings an in-home challenge.

Decades ago when Plaintiff Nichols took a number of law classes in college his professor remarked that the only thing better than having one hundred years of precedent supporting your case is to have a recent precedent affirming those hundred years of precedents.

Plaintiff Nichols has those recent precedents and nearly 200 years of state and Federal court decisions which dictate that he prevail. If *Heller* and *McDonald* stand for anything, which Stare Decisis dictates that they must, then they demand that laws which prohibits Plaintiff Nichols from carrying a loaded firearm or prevents him from openly carrying a modern, unloaded firearm in his home are unconstitutional under the Second Amendment both facially and as-applied.

The constitutional challenges Plaintiff Nichols raised in the district court and again in this appeal are all textbook challenges which do not require this court to pursue a labyrinthian path to reach a decision in favor of Plaintiff Nichols.

All this court has to conclude is that Plaintiff Nichols has the Second Amendment right to sit in a rocking chair on his porch in the curtilage of his home either carrying a loaded flintlock rifle, shotgun or stun gun, or with a loaded

flintlock rifle, shotgun or stun gun adjacent to him, for Plaintiff Nichols to prevail in his challenge to PC 25850, the California ban on carrying loaded firearms *for the purpose of self-defense in his home*.

Likewise, if this court concludes that Plaintiff Nichols has the Second Amendment right to openly carry, modern unloaded firearms on his porch then Plaintiff Nichols prevails in his Second Amendment challenge to the two unloaded Open Carry bans (PC 26350 and PC 26400) which prevent him from carrying them *for the purpose of self-defense in his home*.

Having prevailed in his Second Amendment in-home challenge, it is up to this court to decide whether it wants to consider his additional challenges. This Court should decide them in the interest of justice and judicial economy because if this Court decides that the ban fails the threshold in-home challenge and stops there, the California legislature will simply reenact the bans with the clarification that the bans do not extend to one's residential property regardless of whether or not it is fully enclosed by some fence of indeterminate height or other substantial barrier to entry by the public and Plaintiff Nichols will be right back in court challenging the "new" bans which this Circuit will have to eventually decide one way or the other.

In its final judgment the district court erred in concluding that the recent *Peruta* decision precludes Plaintiff Nichols' Second Amendment challenge despite

the *Peruta* Court's admonition in response to the dissent that it was not ruling on the constitutionality of ANY state law.

The dicta in *Peruta* saying that the Peruta plaintiffs were allowed to bring their concealed carry challenge because they did not challenge the constitutionality of any state law and did not bring a broad based challenge to California's Open Carry bans is orbiter both to the Peruta Plaintiffs and to Plaintiff Nichols. It is well established that the courts cannot create pleading barriers not found in the Federal Rules of Civil Procedure. Significantly, the *Peruta* Court did not hold that there is NO right to openly carry a firearm and Plaintiff Nichols' challenge is the narrowest challenge that can be brought to California's laws as they exist today. Indeed, if the Peruta plaintiffs eventually prevail then they will be able to openly carry loaded firearms, antique and modern, and unloaded modern firearms, in far more places than Plaintiff Nichols seeks to carry a firearm in his Complaints because the Peruta Plaintiffs argued that they were seeking permits, permits which allow them to carry firearms loaded and unloaded, openly and concealed, antique and modern, in many state and local government buildings and to carry loaded firearms, including loaded long guns, in schools, on school grounds and within 1,000 feet of K-12 public and private schools. In short, Plaintiff Nichols case, both facially and as-applied, is disjoint from the Peruta as-applied case.

Also, because California classifies non-lethal/less-lethal stun guns as "firearms" this Court need only conclude that Plaintiff Nichols has the right to carry a stun gun in his home for PC 25850 to be invalidated.

Plaintiff Nichols did not limit his case to the Second Amendment. Like a circle of dominoes, if he prevails in any of his constitutional challenges to the state bans on carrying firearms *for the purpose of self-defense*, then each of the bans fall in turn.

Nowhere in Appellees pleadings in the district court did they raise a genuine constitutional defense. Instead, the Appellees chose to argue "procedure" and even in that the Appellees let the district court argue much of their case for them.

When a fundamental right is implicated or a suspect class is targeted, the burden of proof lies with the government to justify the law infringing upon that right or class. Absent from the district court record is any attempt by the Appellees to meet its burden. Instead the Appellees let the district court take the lead and claimed that the laws at issue survive the rational basis test.

Plaintiff Nichols, from his initial Complaint to final judgment, made the case that these laws do not survive rational review, even if *Heller* and *McDonald* and this Circuit had not already taken rational basis review off the table.

A dozen years ago, in a case in which this Circuit held that the Second Amendment does not confer an individual right but instead is a limitation on the

Federal government and pertains only to militias, the court nonetheless held that a retired police officer exemption to California's Assault Weapon Control Act of 1989 failed the rational basis test. See *Silveira v. Lockyer*, 312 F. 3d 1052 - Court of Appeals, 9th Circuit (2002) abrogated on other grounds as recognized by *Barnes-Wallace*, 704 F.3d at 10 1084-85. The laws at issue here likewise exempt retired police officers and have numerous other exemptions which fail to survive the rational basis test pursuant to *Silveira* even absent the Second Amendment as defined by *Heller* and incorporated to all states and local governments via the *McDonald* decision.

Contrary to the Appellees and the district court conclusion that Plaintiff Nichols is allowed to bring only a facial challenge, which isn't to say that these laws are not facially invalid, Plaintiff Nichols has brought (and argued extensively) as-applied challenges.

After all, what can be more as-applied to Plaintiff Nichols than the fact that he, as someone who has a documented death threat against him, cannot so much as step one foot outside the door to his home carrying a loaded antique firearm or an unloaded modern *firearm for the purpose of self-defense* without being in violation of the law?

The Appellees argue that because of this death threat that Plaintiff Nichols *might* fall within an exemption. An exemption which depends upon the police,

prosecutor, judge (and possibly jury if the criminal trial court judge were to allow him to raise that defense) concluding that the exemption applies to Plaintiff Nichols.

This is a textbook definition of vagueness both facially and as-applied. Even the Appellees cannot say with definiteness whether or not the exemption applies to Plaintiff Nichols and Plaintiff Nichols does not have to wait until he is criminally prosecuted to discover whether or not the exemption applies to him.

## STANDARDS OF REVIEW

### For Judgment On The Pleadings

"We review "de novo a district court's dismissal of a complaint: for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) ... and for judgment on the pleadings pursuant to Rule 12(c)." *Arrington v. Wong*, 237 F.3d 1066, 1069 (9th Cir.2001); "A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle it to relief. All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Daniel v. County of Santa Barbara*, 288 F.3d 375, 380 (9th Cir.2002) (quotations and citation omitted)." *Berg v. Popham*, 412 F. 3d 1122 - Court of Appeals, 9th Circuit (2005) at 1125; "Challenges to the constitutionality of a statute are reviewed de novo. *United States v. Savinovich*, 845 F.2d 834, 839 (9th Cir.), cert. denied, 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988)." *US v. Harding*, 971 F. 2d 410 - Court of Appeals, 9th Circuit (1992) at 412; "The Court inquires whether the complaint at issue contains "sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face."" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks and citation omitted); *Cafasso*, 637 F.3d at 1054 n. 4 (finding *Iqbal* applies to Rule 12(c) motions because Rule 12(b)(6) and Rule 12(c) motions are functionally equivalent). The Court may find a claim plausible when a plaintiff pleads sufficient facts to allow the Court to draw a reasonable inference of misconduct, but the Court is not required "to accept as true a

legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (internal quotation marks and citation omitted)." *Harris v. County of Orange*, 682 F. 3d 1126 - Court of Appeals, 9th Circuit (2012) at 1131; "We must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir.2004)." *Fleming v. Pickard*, 581 F. 3d 922 - Court of Appeals, 9th Circuit (2009) at 925; ""For purposes of the motion, the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false. Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc*., 896 F.2d 1542, 1550 (9th Cir.1990). Additionally, "[t]his standard is applied with particular strictness when the claim is for an alleged civil rights violation." *Foster v. Edmonds*, No. C 07-05445, 2008 WL 4415316, at *1 (N.D.Cal. Sept. 26, 2008) (Judge Alsup) (quoting *Shechter v. Comptroller of City of New York*, 79 F.3d 265, 270 (2d Cir.1996)). *Keum v. Virgin America Inc*., 781 F. Supp. 2d 944 - Dist. Court, ND California (2011) at 948.

"Dismissal without leave to amend is appropriate only when the Court is satisfied that an amendment could not cure the deficiency. See *Eminence Capital*, 316 F.3d at 1052." See id., at 1135.

### On Motions For Summary Judgment

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *Fortyune v. American Multi-Cinema, Inc*., 364 F.3d 1075, 1080 (9th Cir. 2004).

A fact is "material" if it might affect the outcome of the suit under the governing law. See *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-49 (1986);

*United States v. Kapp*, 564 F.3d 1103, 1114 (9th Cir. 2009). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc* 477 U.S. 242 (1986) at 248; *Freecycle Sunnyvale v. Freecycle Network*, 626 F.3d 509, 514 (9th Cir. 2010).

Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. See *James River Ins. Co. v. Herbert Schenk, P.C.*, 523 F.3d 915, 923 (9th Cir. 2008); *Soremekun v. Thrifty Payless, Inc.,* 509 F. 3d 978 - Court of Appeals, 9th Circuit (2007) at 984.

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F. 3d 1099 - Court of Appeals, 9th Circuit (2000) at 1103.

If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. *Nissan Fire*, 210 F.3d at 1103.

Note, even the district court held that there were no genuine issue of material fact.

<u>For Documents In Dispute</u>

"Judicial notice is taken of the existence and authenticity of the public and quasi public documents listed. To the extent their contents are in dispute, such matters of controversy are not appropriate subjects for judicial notice." Del *Puerto Water Dist. v. U.S. Bureau of Reclamation*, 271 F.Supp.2d 1224, 1234 (E.D.Cal.2003). See also, *California ex rel. RoNo, LLC v. Altus Finance S.A.*, 344 F.3d 920, 931 (9th Cir.2003) ("requests for judicial notice are GRANTED to the extent that they are compatible with Fed. Rule Evid. 201 and do not require the acceptance of facts `subject to reasonable dispute.'" quoting *Lee v. City of Los Angeles*, 250 F. 3d 668 - Court of Appeals, 9th Circuit (2001) at 690); *Kent v. Daimlerchrysler Corp.*, 200 F.Supp.2d 1208, 1219 (N.D.Cal.2002); *Weizmann Institute of Science v. Neschis*, 229 F.Supp.2d 234, 246-47 (S.D.N.Y.2002); *Happy Inv. Group v. Lakeworld Properties, Inc.*, 396 F.Supp. 175, 183 (N.D.Cal.1975); and *Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.*, 109 F.Supp.2d 1236, 1242-43 (S.D.Cal.2000)."

## **ARGUMENT**

1. **There Has Been A Change In The California Courts Interpretation Of Carrying Concealed Weapons And The Carrying Of Loaded Firearms Concealed Which Renders The *Peruta* Decision Moot.  This Does Not Change The Uncontroverted Fact That Concealed Carry Substantially Burdens Plaintiff Nichols' Ability To Defend Himself.**

It is an uncontroverted fact (SUF 132) that concealed carry substantially burdens Plaintiff Nichols' ability to defend himself even if he had a concealed carry license, which he does not and cannot obtain under the current policy of the Los Angeles County Sheriff (the city Plaintiff Nichols lives in does not have a

police chief who can issue permits even if Defendant Harris required him to issue permits and/or allowed/required him to issue Open Carry permits).

Concealed carry substantially burdens every honest person's right to self-defense. It will always take precious seconds to retrieve a handgun from its place of concealment on one's person. In those places where it is too hot to wear a coat to conceal the handgun, the handgun must be carried concealed in some sort of fully enclosed container which sacrifices additional precious seconds in its retrieval.

Of course, concealed carry does not burden the predatory criminal in the commission of his crimes. This is why concealed carry was prohibited in the first place.

And so whatever decision this Circuit may make regarding the carrying of concealed handguns prior to this case being decided, including a decision which would unequivocally guarantee that Plaintiff Nichols be issued a permit to carry a concealed handgun, Plaintiff Nichols' Second Amendment right to carry a firearm *for the purpose of self-defense* is, uncontrovertibly, substantially burdened.

Prior to *People v. Pellecer*, 215 Cal. App. 4th 508 (2013) the California Courts had relied on *People v. Dunn*, 61 Cal. App. 3d 12 (1976) which in turn relied on *People v. Pugach*, 15 NY 2d 65 (1964) to construe the language "upon

the person" (PC 21510, PC 25400) and "on the person" (PC 25850) to extend to even the carrying of a handgun in a locked suitcase. *Dunn* at 13.

The *Pellecer* Court at 517 "disagree[d] with the conclusion of" *Dunn* saying that "Penal statutes may not be made to reach beyond their plain intent, covering only crimes coming clearly within the statutory language." *Pellecer* at 517.

Ultimately, the *Pellecer* Court held that "If the Legislature had wanted to criminalize possession of a dirk or dagger that is concealed inside a carried container, it could have expressly referred to dirks or daggers inside carried containers or replaced the phrase "upon his or her person" with "on or about his or her person." Id at 517.

On February 2, 2014 Assembly Bill 2305 was introduced to amend the language in PC 21510, PC 25400 and PC 25850 to say "on or about the person" "includes upon the body of a person, in the attire or clothing of a person, in a bag or container carried by the person, or in close proximity to, within the immediate reach of, or conveniently accessible to, the person."

(http://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=201320140AB 2305 last visited October 31, 2014).

The Appropriations Committee Bill Analysis (same link) stated that:

"This measure makes clear the legislature's intent regarding prohibitions on the unlawful carrying of concealed firearms and switchblade knives in purses, backpacks, fanny packs, brief cases, suitcases, or any other container by conforming statute to the recent Court of Appeal ruling." (*Pellecer*)

After final judgment was entered in this case on May 1, 2014, AB 2305 was held in the Assembly Appropriations Committee on May 23, 2014 wherein it died.

PC 25850 does not differentiate between firearms carried concealed or openly. It criminalizes the carrying of a loaded firearm "on the person or in a vehicle."

Long guns are not, by definition, concealable weapons PC 16530 and "A firearm carried openly in a belt holster" is "not concealed" PC 25400.

"Fanny packs" are worn on a belt around the waist as are "belt holsters," both are containers. And yet Plaintiff Nichols is prohibited from openly carrying a loaded firearm in a belt holster (PC 25850) and he is prohibited from openly carrying a modern unloaded handgun in a belt holster (PC 26350) and he is prohibited from openly carrying a modern unloaded long gun (PC 26400).

Plaintiff Nichols submits that *Pellecer* has rendered *Peruta v. County of San Diego*, 742 F. 3d 1144 - Court of Appeals, 9th Circuit (2014) moot. The plaintiffs in that case purportedly challenged only the "good cause" policy of the "County" in issuing concealed carry permits (CCWs). None of the Peruta plaintiffs argued that they needed a permit because they wanted to carry a handgun concealed in a state or local government building (PC 171b) or in a school (PC 626.9) which requires a CCW.

"Peruta seeks a concealed carry permit because that is the only type of permit available in the state." *Peruta* at 1172. That is no longer the case. Ed Peruta and the Peruta plaintiffs are free to carry a loaded handgun concealed in "purses, backpacks, fanny packs, brief cases, suitcases, or any other container" *without a permit*.

On the other hand, Plaintiff Nichols is still prohibited from openly carrying a loaded firearm in the curtilage of his home, in or on his motor vehicle including any attached camper or trailer regardless of whether or not it is his temporary or permanent residence *Garber v. Superior Court of Los Angeles County* , 184 Cal. App. 4th 724 (2010) and in non-sensitive public places where hunters are exempt from all three bans and a myriad of special interest groups are exempt from the bans on openly carrying modern unloaded firearms.

Plaintiff Nichols submits that the laws at issue in this appeal are subject to per se invalidation pursuant to *District of Columbia v. Heller*, 128 S. Ct. 2783 - Supreme Court (2008) and cannot survive any level of judicial scrutiny pursuant to *US v. Chovan, 735 F. 3d 1127 - Court of Appeals, 9th Circuit (2013)* and for the reasons argued elsewhere in this brief.

**2.** **Open Carry Is The Right Guaranteed By The US Constitution Under *Heller*. The Second Amendment Right Applies To One's Home And To Non-Sensitive Public Places.**

"[A] right to carry arms openly: "This is the right guaranteed by the Constitution of the United States, and which is calculated to incite men to a

manly and noble defence of themselves, if necessary, and of their country, without any tendency to secret advantages and unmanly assassinations."" *District of Columbia v. Heller*, 128 S. Ct. 2783 - Supreme Court (2008) at 2809.

"In *Nunn v. State*, 1 Ga. 243, 251 (1846), the Georgia Supreme Court construed the Second Amendment as protecting the "natural right of self-defence" and therefore struck down a ban on carrying pistols openly. Its opinion perfectly captured the way in which the operative clause of the Second Amendment furthers the purpose announced in the prefatory clause, in continuity with the English right… Likewise, in *State v. Chandler*, 5 La. Ann. 489, 490 (1850), the Louisiana Supreme Court held that citizens had a right to carry arms openly: "This is the right guaranteed by the Constitution of the United States, and which is calculated to incite men to a manly and noble defence of themselves, if necessary, and of their country, without any tendency to secret advantages and unmanly assassinations."" *Heller* at 2809.

"Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. See, e.g., Sheldon, in 5 Blume 346; Rawle 123; Pomeroy 152-153; Abbott 333. For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. See, e.g., *State v. Chandler*, 5 La. Ann., at 489-490; Nunn v. State, 1 Ga., at 251" *Heller* at 2816.

"[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms *in sensitive places such as schools and government buildings*, or laws imposing conditions and qualifications on the commercial sale of arms." Id at 2817. (italics added).

"Sensitive places" are not at issue in this case, they never have been. The Appellees have never genuinely argued that places where hunters are exempt from the bans at issue in this appeal are 'sensitive places."

Which begs the question "If Open Carry is so wrong, then why allow it for any reason?"

There is only one way in which a firearm which is not concealable (e.g. rifle and shotgun) can be carried and that is openly. Concealable handguns can be carried openly or concealed. The *Heller* Court left no doubt that Open Carry is the right guaranteed by the Constitution and that concealed carry, with certain exceptions such as in the home and for travelers while on a journey, can be prohibited.

Not a single state or Federal court which has had a concealed carry case come before it since *Heller* has concluded that there is a general right to carry a concealed weapon in public under *Heller*. Even the Seventh Circuit said in striking down a law nearly identical in wording to the bans at issue here that "a state may be able to require "open carry" — that is, require persons who carry a gun in public to carry it in plain view rather than concealed. See *District of Columbia v. Heller*, supra, 554 U.S. at 626, 128 S.Ct. 2783" *Moore v. Madigan*, 702 F. 3d 933 - Court of Appeals, 7th Circuit (2012) at 938.

The somewhat flawed decision *Peruta v. County of San Diego*, 742 F. 3d 1144 - Court of Appeals, 9th Circuit (2014) said "A flat-out ban on concealed carry in a jurisdiction permitting open carry may or may not infringe the Second

Amendment right — the passage from *Heller* clearly bears on that issue, which we need not decide."

Unlike *Peruta*, the laws "regulating" the carrying of firearms in government buildings, schools or even 1,000 feet from a K-12 public or private school via a CCW or permission are simply not at issue here despite Appellee's attempts to bootstrap them into this case.

**3. The Second Amendment Right Is Fundamental Under *Mcdonald*.**

"In sum, it is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty." *McDonald v. City of Chicago, Ill.*, 128 S. Ct. 2783 - Supreme Court (2008) at 3042.

**4. The Second Amendment Right Has Been Applied To All State And Local Governments Via *Mcdonald*.**

"We therefore hold that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in *Heller*." *McDonald* at 3050.

**5. By Default, Open Carry Is Legal Everywhere In The State Of California Except Where It Is Prohibited Or Otherwise "Regulated."**

Unlike California laws which "regulate" the carrying of firearms in most state and local government buildings (PC 171b) and in schools (PC 626.9) the laws at issue here are bans on the carrying of fully functional firearms *for the purpose of*

*self-defense* in the home, in one's motor vehicle including any attached camper or trailer (regardless of whether or not it is one's residence) and in non-sensitive public places.

California law has no corollary to PC 25400, the statewide ban on concealed carry which applies even to the home and applies even to unloaded antique firearms carried concealed.

**6.     Open Carry Has Always Been, And Still Is, The Right In California.**

The ban on openly carrying loaded firearms in California *for the purpose of self-defense* was enacted in July of 1967 which was 99 years after the 14th Amendment was adopted. It is limited to incorporated cities and unincorporated county territory where the discharge of a firearm is prohibited.

The 1924 California Supreme Court decision *In re Rameriz*, 193 Cal. 633; 226 P. 914 (1924); 1924 Cal. LEXIS 351; 34 A.L.R. 51 adopted *Nunn v. State, 1 Ga. 243, 251 (1846)* subsequently cited by *Heller* at 2809 as the applicable case law for this state and it has never been overruled by this state (See *People v. Flores*, 169 Cal. App. 4th 568 (2008) at 573; *People v. Yarbrough*, 169 Cal. App. 4th 303 (2008) at 313; *Kasler v. Lockyer*, 2 P. 3d 581 - Cal: Supreme Court (2000) at 339; *People v. King*, 582 P. 2d 1000 - Cal: Supreme Court (1978) at 21).

Other than the prohibition on persons not born in this country from even *possessing* concealable firearms which was struck down as a violation of the

Fourth Amendment and a violation of the California Constitution Article I §§ 11, 21 in *People v. Rappard*, 28 Cal. App. 3d 302 (1972) at 304-306 *Rameriz* remains binding on the California courts.

Even the racist 1924 *In re Rameriz* Court did not deny aliens the fundamental right to carry loaded and unloaded modern long guns in public. Until the California Supreme Court rules on the Constitutionality of the two recently enacted bans on openly carrying unloaded firearms, the bans according to *In re Rameriz* implicate a fundamental right. This was recognized by the California courts in a case contemporaneous with passage of the 1967 ban (PC 12031):

"[A] state legislature in the absence of similar provisions in the organic law, is free to regulate the manner of bearing arms, *although it may lack the power entirely to destroy the right*." *People v. Seale*, 274 Cal. App. 2d 107 (1969) at 114. (italics added). The "regulation" the court was referring to in *Seale* was Unloaded Open Carry. With certain limited exceptions, such as for travelers while on a journey, the California Courts have never recognized a right to carry weapons concealed. That includes the *Pellecer* Court.

**7. Unlicensed Open Carry Is The Right Under California Law.**

No permit or license is required for Plaintiff Nichols, or any other person who is permitted to possess a firearm, from openly carrying unloaded *antique* firearms *for the purpose of self-defense* in incorporated cities and in unincorporated

county territory where the discharge of a firearm is prohibited. No permit provision exists except for the Open Carry of handguns in counties with a population of fewer than 200,000 people which will be argued later in this brief.

No permit or license is required to openly carry an unloaded long gun *for the purpose of self-defense inside* of a motor vehicle.

No permit or license is required to openly carry unloaded antique or modern long guns *for the purpose of self-defense* outside of a motor vehicle in unincorporated county territory, regardless of whether or not the discharge of a firearm in prohibited.

No permit or license is required to carry an unloaded long gun, modern or antique, *for the purpose of self-defense* within the 1,000 foot area extending from the grounds of a K-12 public or private school in unincorporated county territory.

In short, no permit or license is required to openly carry an unloaded antique firearm *for the purpose of self-defense* pretty much anywhere in an incorporated city and outside of an incorporated city the limitations are on the carrying of loaded firearms and the carrying of handguns, but not long guns, in Gun Free School Zones.

This is regardless of whether or not it is inside or outside of a motor vehicle with the exception of handguns within 1,000 feet of a K-12 public or private school (PC 626.9 1,000 foot restrictions on handguns apply to all K-12 public and private

schools in this state) and once one steps into unincorporated county territory the prohibition on carrying modern long guns *for the purpose of self-defense* disappears. In the 1,000 foot areas extending from K-12 public and private schools, long guns must normally be carried unloaded except for hunters and certain other exceptions not applicable to Plaintiff Nichols.

The prohibition on the Open Carry of loaded and unloaded modern firearms disappears once one steps into unincorporated county territory where the discharge of a firearm is not prohibited.

The same cannot be said of handguns, or any weapon, carried concealed. The prohibition on carrying concealed weapons is statewide. The only exceptions are by statutes and judicial interpretations of those statutes.

The district court erred in concluding that a licensing scheme for concealed carry (to which Plaintiff Nichols is not eligible) is an alternative to openly carrying firearms in those parts of the state where no license is required to openly carry an unloaded antique firearm and no license is required for many others and for other purposes.

**8.    Open Carry Stands As A Safeguard Against Tyranny.**

The *Peruta* Court explicitly did not consider "whether the right has other ends" Id fn 4 such as "resisting government tyranny." Id.  This Court will have to.

The *Heller* Court explained at 2802 why an organized militia "[D]oes not assure the existence of a "citizens' militia" as a safeguard against tyranny." Id.

As the *Heller* Court explained, the safeguard against tyranny is left to each of us as individuals, outside the context of a militia. Just as Open Carry gives fair notice to the public that one is armed and thus provides an opportunity for members of the public coming upon a person openly carrying a weapon to "govern oneself accordingly" *People v. Mitchell*, 209 Cal. App. 4th 1364 (2012) at 1371, firearms openly carried by virtuous members of the public give fair notice to the police, and to those who act under their orders or otherwise complicit ""agents" of the state" *US v. Sparks*, 265 F. 3d 825 - Court of Appeals, 9th Circuit (2001) at 831; See generally, *Brown v. Mississippi*, 297 US 278 - Supreme Court (1936) to *govern their actions* accordingly.

The police having a "monopoly on armed force in public" *Peruta* dissent at 1192 is the hallmark of a tyrannical government. It is dangerous to public safety and an invention of the 20th Century.

One need look no further than the Los Angeles Police Department's own website. In 1911, which was one hundred years before Plaintiff Nichols filed this Action, not only were members of the Los Angeles Police Department (LAPD) few in number, most of its officers carried whistles instead of guns. Municipal law enforcement up to this time largely relied on "Posse Comitatus" PC 150.

There were other safeguards against police and other agents of the state in 1911 California not available today, the foremost of which is that private citizens were able to bring private *criminal* prosecutions against police officers.

Today, in California (but not all states), only government employed prosecutors can prosecute criminal cases. "Neither a crime victim nor any other member of the public has general standing to intervene in an ongoing criminal proceeding against another person." *Dix v. Superior Court*, 807 P. 2d 1063 - Cal: Supreme Court (1991) at 448. "[P]rosecuting attorneys exercise broad powers in this respect. It is they who decide what crime is to be charged or if any crime is to be charged." *People v. Sidener*, 375 P. 2d 641 - Cal: Supreme Court (1962) at 650.

By 1926 there had been a sea change in the relationship between police and the public, and not for the good.

> "When James E. Davis became Chief in 1926, he formed a 50-man "gun squad" announcing that "the gun-toting element and the rum smugglers are going to learn that murder and gun-toting are most inimical to their best interest." He added that he would "hold court on gunmen in the Los Angeles streets; I want them brought in dead, not alive and will reprimand any officer who shows the least mercy to a criminal."" The LAPD: 1926-1950 online at the LAPD website http://www.lapdonline.org/history_of_the_lapd/content_basic_view/1109 (last visited October 22, 2014).

The LAPD had gone from a handful of mostly unarmed police officers relying on the assistance of "Every able-bodied person above 18 years of age…" PC 150 to enforce the law to an organization whose head (Chief Davis) told the

world, through the press, that he had formed a death squad (gun squad) and had sent them out onto the streets to commit premeditated murders.

As this Court well knows, this was not some historical anomaly. How many police "qualified immunity" cases has this Circuit heard over the years? How many times have the members of this Circuit dealt with appeals wherein the police claimed that the deceased was reaching for a concealed weapon and none was found? Worse, how many of these people were running away when shot or, worst of all, handcuffed by the police when they were shot?

The *Peruta* Court said in dicta that "[O]ne needn't exactly tote a pistol on his way to the grocery store in order to keep his government in check…" The *Peruta* Court could not have been more wrong.

An agent of the state who sees virtuous citizens openly carrying firearms all about him throughout the day will be less inclined to use unwarranted force, particularly deadly force.

Under the current unconstitutional system in place today, police routinely shoot and kill unarmed men and women, are placed on paid leave and after a year or so of investigation, unsurprisingly are found guilty of "no wrong doing."

The victim's family then has to find one of the few competent attorneys who is able to find a path through the procedural mine-field the courts have constructed

to prevent victims and their families from seeking civil recourse against police and their employers.

Open Carry, even just by people doing mundane things such as heading to the grocery store, always provides a visual deterrent to the government. This is something concealed carry can never do, not even if California decided today to start handing out concealed carry permits as if they were candy.

As Plaintiff Nichols argued in the district court :

"Plaintiff Nichols is hopeful that overturning these Open Carry bans will sow the seeds of radical change in California. Plaintiff Nichols believes that should the Open Carry movement become successful it may result in the greatest dissolution of government power since the collapse of the Soviet Union. From Plaintiff Nichols perspective, that would be a good thing."

9. **Under Current California Law Plaintiff Nichols Is Relegated To The Open Carry Of: Unloaded Antique Firearms, Knives, Swords And A Bow And Arrows. This Conflicts With *Heller*.**

The Second Amendment right is not limited to unloaded antique firearms. "[T]he Second Amendment extends prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Heller* at 2792. This includes stun guns. The Second Amendment also guarantees the right to openly carry loaded firearms in public with the exception of "dangerous and unusual" firearms Id at 2817 which are not at issue in this case.

The two bans on openly carrying modern unloaded firearms *for the purpose of self-defense* exempts unloaded antique firearms See PC 16520, PC 16170 and

PC 16650 which incorporate the Federal definition of an antique firearm in Section 921(a)(16) of Title 18 of the United States Code.

### 10. Unloaded Firearms Cannot Be Instantaneously Loaded.

An unloaded firearm, as defined in PC 16840 and interpreted in *Rupf v. Yan*, 102 Cal. Rptr. 2d 157 (2000) is in and of itself a substantial burden as unloaded firearms, antique or modern, cannot be *instantaneously* loaded SUF 105 through 109. It takes several seconds to load a modern semi-automatic firearm SUF 107, many seconds to load a modern single-action revolver and muzzle-loading long gun SUF 108 & 106, and several minutes to load a muzzle-loading revolver. The time it takes to load an antique muzzle-loader or single action revolver destroys any chance Plaintiff Nichols might have to defend himself with a firearm when attacked.

The time it takes to load a modern semi-automatic pistol is not instantaneous. The magazine has to be inserted into the well of the pistol, the slide safety disengaged and then the slide must be pulled back and released to chamber the round. After all of this, the pistol must then be aimed. No firearm can be loaded *instantaneously*.

### 11. Concealed Carry Is A Privilege Except For Certain Longstanding Exceptions Not Relevant Here.

Regardless of whatever exceptions might be found elsewhere, concealed carry is, and has always been, a privilege in the State of California. "It is a

privilege to carry a concealed weapon." *CBS, inc. v. Block*, 725 P. 2d 470 - Cal:

Supreme Court (1986) at 649; *Nichols v. County of Santa Clara*, 223 Cal. App. 3d

1236 (1990) at 1243-1244. Defendant Harris' own statewide application for a

concealed carry permit, entered into the record, even says that concealed carry is a

privilege.

### 12.     There Is No General Right To Carry A Concealed Weapon In Public.

Cowards and criminals carry concealed weapons because it gives them a

"secret advantage" *Heller* at 2809 and as such they are not burdened by concealed

carry. Concealed carry gives these creatures a predatory advantage over the

virtuous man who does not seek out confrontation but exercises his "right to

openly carry firearms… guaranteed by the Constitution of the United States"

*Heller* at 2809 "in case of confrontation" Id at 2797 for "the core lawful purpose of

self-defense" Id at 2818 in public places which are not "sensitive places" Id at

2869, while traveling Id at 2812 and in his home. Id at 2822.

### 13.     Concealed Carry Can Be Prohibited Under *Heller*, *Robertson* And California Law.

"Like most rights, the right secured by the Second Amendment is not
unlimited. From Blackstone through the 19th-century cases, commentators
and courts routinely explained that the right was not a right to keep and carry
any weapon whatsoever in any manner whatsoever and for whatever
purpose. For example, the majority of the 19th-century courts to consider the
question held that prohibitions on carrying concealed weapons were lawful
under the Second Amendment or state analogues." *District of Columbia v.
Heller*, 128 S. Ct. 2783 - Supreme Court (2008) at 2816.

"[T]he right of the people to keep and bear arms (art. 2) is not infringed by laws prohibiting the carrying of concealed weapons..." *Robertson v. Baldwin*, 165 US 275 - Supreme Court (1897) at 282

Post-*Heller* California courts have consistently cited the *Heller* Court's approval of prohibitions on the carrying of concealed weapons: *People v. Brown*, 227 Cal. App. 4th 451 (2014) at 461; *People v. Mitchell*, 209 Cal. App. 4th 1364 (2012) at 1373; *People v. Ellison*, 196 Cal. App. 4th 1342 (2011) at 1347; *People v. Flores*, 169 Cal. App. 4th 568 (2008) at 573; *People v. Yarbrough*, 169 Cal. App. 4th 303 (2008) at 303.

No post-Heller Federal appellate court has found that there is a right to carry a concealed weapon under the Second Amendment. No post-Heller state appellate court has found that there is a right to carry a concealed weapon under the Second Amendment. Robertson was reaffirmed by *Peterson v. Martinez*, 707 F. 3d 1197 - Court of Appeals, 10th Circuit (2013) at 1201 and in *National Rifle Ass'n v. BATFE* 700 F. 3d 185 - Court of Appeals, 5th Circuit (2012) at 200 (cert denied). The district court erred in concluding there is no Open Carry right.

14. **Under California Law "Having" A Firearm On One's Residential Property Does Not Mean "Carrying" A Firearm. This Conflicts With *Heller*.**

The predecessor to PC 25850 (PC 12031) exempted "having" a loaded firearm in one's home, on his personal property, and place of business until the California courts concluded that "having" is not the same as "carrying" in *People*

*v. Overturf*, 64 Cal. App. 3d 1 (1976) at 6. The dissent in *Overturf* at 8 disagreed

saying that "have" means to "carry". *Heller* explicitly states that to "keep arms" is

to "have weapons" which is "[to] hold" Id at 2792 which is to "carry" Id at 2793.

Under current California law, were Plaintiff Nichols to invite members of

the public into his home for any reason, the inside of his home could just as easily

be construed as a "public place" resulting in the arrest, prosecution, fine and

imprisonment of Plaintiff Nichols.

*Overturf* is clearly inapposite to *Heller*. To Have is to Hold. Whatever this

Circuit may eventually hold on carrying loaded firearms in public, Stare Decisis

under *Heller* demands that *Overturf* be overturned and the personal residential

property exemption to the bans be restored.

### 15. Firearms (E.G., Rifles, Shotguns, Handguns And Stun Guns), Including Modern Firearms, Fall Within The Scope Of The Second Amendment Right.

"Some have made the argument, bordering on the frivolous, that only those arms in existence in the 18th century are protected by the Second Amendment. We do not interpret constitutional rights that way… the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Heller* at 2792.

"We hold that the version of MCL 750.224a at issue in these cases is unconstitutional. The Michigan and United States Constitutions protect a citizen's right to possess and carry Tasers or stun guns for self-defense, and the state may not completely prohibit their use by private citizens." *People v. Yanna*, 824 NW 2d 241 - Mich: Court of Appeals (2012) at 243. Michigan is an Open Carry state as are all but a few states.

California defines stun guns as firearms *People v. Heffner*, 70 Cal. App. 3d 643 (1977) at 652 which, under California law, is for all intents and purposes a ban once one steps outside the door of his home carrying a firearm, including a stun gun, *for the purpose of self-defense*.

California does not prohibit Plaintiff Nichols from openly carrying unloaded antiques or other inferior arms in the places he seeks to carry. However, it does prevent him from carrying any modern firearm, including stun guns, loaded or unloaded *for the purpose of self-defense* so long as he gives up his Fourth Amendment rights. California also prohibits Plaintiff Nichols from carrying any loaded firearm *for the purpose of self-defense* and for other lawful purposes in the places he seeks to carry unless he is in immediate, grave danger at which point it is too late for him to load his antique firearms as they cannot be loaded instantaneously. SUF 105 & SUF 106.

**16.    *Nunn* And *Chandler* Perfectly *Capture* The Second Amendment Right According To *Heller*.**

There are two and only two cases which the *Heller* Court said "perfectly captured" the Second Amendment Right *Heller* at 2809. These two cases are *Nunn v. State, 1 Ga. 243, 251 (1846)* cited by *Heller* at 2809, 2816-2818, and *State v. Chandler, 5 La. Ann. 489, 490 (1850)* at 2809, 2816-2817

> "We are of the opinion, then, that so far as the act of 1837 seeks to suppress the practice of carrying certain weapons secretly, that it is valid, inasmuch as it does not deprive the citizen of his natural right of self-defence, or of his

constitutional right to keep and bear arms. But that so much of it, as contains a prohibition against bearing arms openly, is in conflict with the Constitution, and void…" *Nunn* at 251.

Lest anyone conclude that *Nunn* did not stand for the proposition that Open Carry is the right guaranteed by the Constitution and that concealed carry, with certain exceptions, can be prohibited the Heller Court "Likewise" cited *Chandler*.

> "Likewise, in *State v. Chandler*, 5 La. Ann. 489, 490 (1850), the Louisiana Supreme Court held that citizens had a right to carry arms openly: "This is the right guaranteed by the Constitution of the United States, and which is calculated to incite men to a manly and noble defence of themselves, if necessary, and of their country, without any tendency to secret advantages and unmanly assassinations."" *Heller* at 2809.

"[A] right to carry arms openly…is the right guaranteed by the Constitution of the United States" *Heller* at 2809 cannot be rationally construed to mean that states can ban arms carried openly so long as they permit concealed carry.

The full citation to *Chandler* explains why it became necessary to prohibit the carrying of concealed weapons.

> "The act of the 25th of March, 1813, makes it a misdemeanor to be "found with a concealed weapon, such as a dirk, dagger, knife, pistol, or any other deadly weapon concealed in his bosom, coat, or any other place about him, that does not appear in full view." ***This law became absolutely necessary to counteract a vicious state of society, growing out of the habit of carrying concealed weapons, and to prevent bloodshed and assassinations committed upon unsuspecting persons.*** It interfered with no man's right to carry arms (to use its words) "in full open view," which places men upon an equality. This is the right guaranteed by the Constitution of the United States, and which is calculated to incite men to a manly and noble defence of themselves, if neccessary, and of their country, without any tendency to secret advantages and unmanly assassinations." *Chandler* at 489-490 (emphasis and italics added),

The Georgia Supreme Court recently reaffirmed *Nunn* in *Hertz v. Bennett*, 751 SE 2d 90 - Ga: Supreme Court (2013) at 95. The Louisiana Supreme Court reaffirmed *Chandler* early this year in STATE, IN THE INTEREST OF JM, La: Supreme Court No. 2013-CK-1717, Consolidated with No. 2013-KA-1772. (Filed January 28, 2014).

**17.    Concealed Carry Endangers The Public By Failing To Provide Fair Notice That A Person Is Armed.**

"The policy underlying the prohibition against concealed weapons is based on the protection of those persons who may come into contact with a weapon bearer. If a weapon is not concealed, one may take notice of the weapon and its owner and govern oneself accordingly, but no such opportunity for cautious behavior or self-preservation exists for one encountering the bearer of a concealed weapon. In light of this policy, the question whether a particular weapon was concealed should be considered from the point of view of one approaching the location of the weapon, and the intent of the defendant as to concealment should not be considered, since a defendant's innocent intent does not make a concealed weapon any more visible." *People v. Mitchell*, 209 Cal. App. 4th 1364 (2012) at 1371.

**18.    Justice Breyer's Dissent Read *Heller* To Mean That Open Carry Is The Second Amendment Right And That Concealed Carry Can Be Prohibited.**

Justice BREYER's dissent, joined by three other justices, in *Heller* read the decision to mean that "concealed-weapon bans are constitutional." BREYER Dissent Id at 2864. "I am similarly puzzled by the majority's list, in Part III of its opinion, of provisions that in its view would survive Second Amendment scrutiny.

These consist of (1) "prohibitions on carrying concealed weapons…"" BREYER Dissent Id at 2869.

All nine Justices of the US Supreme Court read Heller to say that concealed carry is not a right.

Significantly, two of the examples the Heller majority cites as permissible examples are general prohibitions on concealed carry comparable to PC 26400. See id. at 2816 (citing *State v. Chandler*, 5 La. Ann. 489, 489-90 (La. 1850), and *Nunn v. State*, 1 Ga. 243, 251 (Ga. 1846)). The district court concluded that Plaintiff Nichols has read too much into the majority's comment. But a further exchange between the *Heller* majority and dissenting Justice Breyer demonstrates that this was a carefully considered comment Id at 2869-70 (Breyer, J., dissenting) Accordingly, this Court must conclude that there is little doubt that the *Heller* majority, and dissenters for that matter, consider general prohibitions on the carrying of concealed weapons permissible and Open Carry to be the right guaranteed by the Constitution.

**19. Sister Circuits Have Come To The Same Conclusion That Concealed Carry Falls Outside Of The Scope Of The Second Amendment. This Circuit Has Not Held That There Is A Right To Concealed Carry Nor Has This Circuit Held That There Is Not An Open Carry Right Either Under *Heller* Or Under California Law.**

The First Circuit Court of Appeals could not find a right to carry concealed. *Hightower v. City of Boston*, 693 F. 3d 61 - Court of Appeals, 1st Circuit (2012) at 73.

Neither could the Second Circuit Court of Appeals. *Kachalsky v. County of Westchester*, 701 F. 3d 81 - Court of Appeals, 2nd Circuit (2012) at 84. New York does not prohibit the Open Carry of long guns, loaded or unloaded. The remaining states in the Second Circuit do not prohibit Open Carry.

Nor could the Third Circuit Court of Appeals. *Drake v. Filko*, 724 F. 3d 426 - Court of Appeals, 3rd Circuit (2013) at 431. Judge Hardiman in his dissent recognized the critical difference between concealed and Open Carry:

> "And critically for our purposes, the permitting requirement applied only to the concealed carry of firearms. Open carry was still allowed [until 1966] without a permit (and thus without any showing of need)." Id at 448.

Unlike California, New Jersey does not ban the Open Carry of long guns, antique or modern so long as one has a permit to possess the long gun. See N.J. Rev. Stat. § 2C:39-5(c). New Jersey is the most restrictive state in the 3rd Circuit when it comes to carrying firearms in public. Neither Delaware nor Pennsylvania requires a permit to openly carry a handgun and Pennsylvania CCW holders are exempt from Philadelphia's Open Carry ban. Pennsylvania is a "shall-issue" state.

Nor could the Fourth Circuit Court of Appeals. *Woollard v. Gallagher*, 712 F. 3d 865 - Court of Appeals, 4th Circuit (2013) at 868. Maryland does not prohibit

the Open Carry of long guns, loaded or unloaded. The same is true for South

Carolina. The remaining states in the Fourth Circuit are Open Carry states.

Nor could the Fifth Circuit Court of Appeals. *National Rifle Ass'n of America, Inc. v. McCraw*, 719 F. 3d 338 - Court of Appeals, 5th Circuit (2013) at 346. Texas does not prohibit the Open Carry of loaded or unloaded antique handguns nor does it prohibit the Open Carry of loaded or unloaded modern long guns. The prohibition on carrying modern handguns openly was not at issue in *McCraw*. The Plaintiffs sought to expand the issuance of concealed carry permits to persons 18-20 years of age. Open Carry is legal in some manner, throughout the Fifth Circuit. Newly elected Texas Governor Greg Abbott, the day after his election, reaffirmed his campaign promise to sign a bill legalizing the Open Carry of modern, loaded handguns.

Nor could the Sixth Circuit Court of Appeals. *US v. Sanford*, 707 F. 3d 594 - Court of Appeals, 6th Circuit (2012) at 597. Open Carry is legal throughout the Sixth Circuit in some manner.

Nor could the Seventh Circuit Court of Appeals. *Moore* at 938. Significantly, based on the wording of the 1967 California statute (former PC 12031), the 1962 Illinois ban on carrying loaded firearms in public, overturned in *Moore*, appears to have been copied and pasted from Illinois law into California law. Illinois had enacted a separate code section prohibiting the carrying of

unloaded firearms which California did not follow until it decided to "close the loophole" in its 1967 Black Panther Loaded Open Carry Ban when California enacted the recent unloaded Open Carry bans. Illinois is the only state in the Seventh Circuit which bans Open Carry of both handguns and long guns for self-defense purposes.

Nor could the Eighth Circuit Court of Appeals. *US v. Fincher*, 538 F. 3d 868 - Court of Appeals, 8th Circuit (2008) at 873. Open Carry is legal throughout the 8th Circuit.

Nor could the Ninth Circuit Court of Appeals:

"To be clear, we are not holding that the Second Amendment requires the states to permit concealed carry." *Peruta v. County of San Diego*, 742 F. 3d 1144 - Court of Appeals, 9th Circuit (2014) at 1172.

"*Heller* indicated that the Second Amendment does not preclude certain "longstanding prohibitions" and "presumptively lawful regulatory measures," such as "prohibitions on carrying concealed weapons,"" *Jackson v. CITY & CNTY. OF SAN FRANCISCO*, Court of Appeals, 9th Circuit No. 12-17803 Filed March 25, 2014 (2014) en banc denied - slip op at pg 8.

Open Carry is legal throughout the 9th Circuit in some manner except in California. Hawaii provides for permits to carry handguns which like Maryland and New Jersey do not differentiate between concealed and open carry. Hawaii does not appear to have a statute specifically prohibiting the carrying of long guns in public or providing for licenses to carry a long gun in public.

Nor could the Tenth Circuit Court of Appeals. *Peterson v. Martinez*, 707 F. 3d 1197 - Court of Appeals, 10th Circuit (2013) at 1201. Open Carry is legal throughout the 10th and 11th Circuits.

Nor could the Court of Appeals for the D.C., Circuit. *Parker v. District of Columbia*, 478 F. 3d 370 - Court of Appeals, Dist. of Columbia Circuit (2007) at 392 aff'd sub nom. *District of Columbia v. Heller*, 554 U.S. 570 (2008).

After the *Heller* decision the District of Columbia quickly enacted laws banning the open and concealed carry of handguns as well as banning the carrying of long guns other than for sporting purposes. The ban on the carrying of handguns was recently overturned; the plaintiffs in that case did not challenge the ban on openly carrying long guns *for the purpose of self-defense*. The district court in *Palmer v. District of Columbia* No. 09-01482 (HHK) denied the motion for reconsideration made by the D.C., defendants on October 17, 2014.

### 20. 19th Century State Courts Have Likewise Failed To Find A General Right To Concealed Carry Outside Of One's Home.

19th Century state court decisions which directly, or indirectly, held that concealed carry is not a right could fill volumes. Here are but a few: *State v. Mitchell*, 3 Blackf. 229 (Ind. 1833); *State v. Reid*, 1 Ala. 612, 35 Am. Dec. 44 (1840); *Aymette v. State*, 21 Tenn. (2 Hump.) 154 (1840); *State v. Duzan*, 6 Blackf. 31 (Ind. 1841); *State v. Buzzard*, 4 Ark. (2 Pike) 18 (1842); *Walls v. State*, 7 Blackf. 572 (Ind. 1845); *Nunn v. State*, 1 Ga. (1 Kel.) 243 (1846); *State v.*

*Chandler*, 5 La. Ann. 489, 52 Am. Dec. 599 (1850); *State v. Smith*, 11 La. Ann.

633, 66 Am. Dec. 208 (1856); *Day v. State*, 37 Tenn. (5 Sneed) 495 (1857); *State*

*v. Jumel*, 13 La. Ann. 399 (1858); *Owen v. State*, 31 Ala. 387 (1858); *Sears v.*

*State*, 33 Ala. 347 (1859); *Stockdale v. State*, 32 Ga. 225 (1860); *Sutton v. State*, 12

Fla. 135 (1867); *Hopkins v. Commonwealth*, 66 Ky. (3 Bush) 480 (1868);

*Cutsinger v. Commonwealth*, 70 Ky. (7 Bush) 392 (1870); *Commonwealth v.*

*McNulty*, 28 Leg. Intel., 389, 8 Phila. 610 (Penn. 1871); *Evins v. State*, 46 Ala. 88

(1871); *State v. Wilburn*, 66 Tenn. (7 Bax.) 57, 32 Am. Rep. 551 (1872); *Morton v.*

*State*, 46 Ga. 292 (1872); *Lockett v. State*, 47 Ala. 42 (1872); *Carroll v. State*, 28

Ark. 99, 18 Am. Rep. 538 (1872); *Maxwell v. State*, 38 Tex. 170 (1873); *Eslava v.*

*State*, 49 Ala. 355 (1873); *Baker v. State*, 49 Ala. 350 (1873); *Porter v. State*, 66

Tenn. (7 Baxt.) 106 (1874); *Jones v. State*, 51 Ala. 16 (1874); *Hill v. State*, 53 Ga.

472 (1874); *Wright v. Commonwealth*, 77 Pa. 470 (1875); *Titus v. State*, 42 Tex.

578 (1875); *Gholson v. State*, 53 Ala. 519, 25 Am. Rep. 652 (1875); *Atwood v.*

*State*, 53 Ala. 508 (1875); *Stroud v. State*, 55 Ala. 77 (1876).

As previously noted, both *Chandler* and *Nunn* were recently reaffirmed by

their State Supreme Courts and *Nunn* remains binding here in California courts

even in light of *Peruta* as that case did not challenge any state law.

**21.    Concealed Carry Has Always Been A Privilege In California And Was Banned In California When The 14ᵗʰ Amendment Was Enacted.**

The California courts have never recognized a right to carry a concealed weapon in public.  Crucial to this case is California's understanding that the right to carry firearms did not extend to the carrying of concealed weapons when the 14ᵗʰ Amendment was enacted as Plaintiff Nichols' case, unlike *Chovan*, challenges state laws, not Federal.

> "Criminal Practice Act – Concealed Weapons – An Act to prohibit the carrying of concealed weapons – Approved April 27, 1863, 748.  1585. Section 1.  Every person not being peace-officer, provost-marshal, enrolling officer, or officer acting under the laws of the United States in the Department of the provost-marshal of this state and Federal assessors, collectors of taxes and licenses while in the performance of official duties, or traveler, who shall carry or wear any dirk, pistol, sword in cane, slungshot, or other dangerous or deadly weapon concealed, upon conviction thereof before any court of competent jurisdiction be deemed guilty of a misdemeanor, and shall be imprisoned in the county jail for not less than thirty nor more than ninety days, or fined in any sum not less than twenty nor more than two hundred dollars.(*)"  Amendment approved March 1, 1864; 1863-4, 115; took effect from passage. [A second section repeals all acts and parts of acts in conflict with the provisions of the above amendment.] 1586 SEC. 2  Such persons, and no others, shall be deemed to be travelers within the Travelers meaning of this act, as may be actually engaged in making a journey at the time." * The original section was the same as the amendment, omitting the officers mentioned between the words "peace officers" and "or traveler." *The General Laws of the State of California 1850 to 1864. Vol. 1*, pg 261

**22.    Under California Law The Act Of Firearm Possession, By Itself, Is Innocent Under *Jones*.  Bans On Carrying Both Openly And Concealed Are Therefore Subject To Strict Scrutiny Under *Mitchell*.**

"The act of firearm possession, by itself, is innocent. Thus, under *Hayes*, we would have to consider the unlawful components of that act, i.e., defendant was a felon, the firearm was loaded, and the firearm was concealed." *People v. Jones*, 278 P. 3d 821 - Cal: Supreme Court (2012) at 356. Because the statute regulates but does not completely ban the carrying of a sharp instrument, we subject it to intermediate scrutiny." *People v. Mitchell*, 209 Cal. App. 4th 1364 (2012) at 1374.

The district court erred in concluding that a ban on Open Carry is Constitutional despite the California court's recognition of the Open Carry right which, if banned, is subject to strict scrutiny given that Plaintiff Nichols cannot carry loaded long guns, which are not concealable, and is prohibited from openly carrying loaded handguns.

**23.    Under *Jones* A Person Cannot Be Punished By Multiple Laws For The Same Act Thereby Rendering The Laws At Issue In This Appeal Inapplicable To Persons, Firearms, Places And Acts Which Fall Outside The Scope Of The Second Amendment.**

"Because defendant's convictions were based on a single act, section 654 prohibits multiple punishment. As previously noted, we overrule *In re Hayes*, supra, 70 Cal.2d 604, and disapprove *People v. Harrison*, supra, 1 Cal.App.3d 115." *Jones* at 360.

Pursuant to *Jones*, it does not matter how many violations of the law a person commits be they infractions, misdemeanors or felonies so long as they are part of the same or continuous act he can only be punished for the offense carrying the greatest sentence. The lesser offenses must be stayed.

Therefore, the laws at issue in this appeal can only be used to punish persons who fall within the scope of the Second Amendment, carrying firearms which fall

within the scope of the Second Amendment, in places which fall within the Scope of the Second Amendment and only when carried *for the purpose of self-defense*. Self-defense being "[T]he "central component of the [Second Amendment] right itself." *Heller* at 2801.  E.g., someone who uses a firearm to rob a liquor store cannot be punished for both the robbery and for carrying a loaded firearm in public.  Jones requires that he be punished for the robbery and the violation of PC 25850(a) be stayed.

Of course the fact that a law might have some applicability to persons, places, firearms and acts which fall outside the scope of the Second Amendment does not salvage the law from facial invalidation any more than it did in *Heller* or *McDonald*.

Plaintiff-Appellant Nichols submits that the laws at issue in this appeal have no legitimate sweep given that they criminalize merely the act of carrying loaded and unloaded firearms – period – unlike 18 U.S.C. § 924, which requires criminal conduct, "The statute [§ 924] does not punish the mere use, carriage, or possession of a firearm; to do so would run afoul of the Second Amendment. See *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008) *US v. Cureton*, 739 F. 3d 1032 - Court of Appeals, 7th Circuit (2014) at 1043.

The bans at issue here criminalize ONLY the mere carriage of a firearm and likewise run afoul of the Second Amendment.

## 24.    Open Carry State Law Summary.

There is no Federal prohibition on Open Carry.

The curious exception is Texas which has imposed a general prohibition on the carrying of modern handguns stemming from a prohibition imposed after the Civil War by a Reconstruction Era government of occupation on the carrying of *concealable* handguns while exempting "holster" handguns, the prohibitions on Open Carry (by Whites at least given that there were pre and post Civil War bans prohibiting Blacks from bearing arms), either de facto or de jure, are mostly modern prohibitions.

An example of a post-Civil war ban intending to apply only to minorities was illustrated in the Florida Supreme Court's decision in Watson v. Stone, 4 So. 2d 700 (Fla. 1941) at 702-703 "[T]he Act was passed for the purpose of disarming the negro laborer and to thereby reduce the unlawful homicides that were prevalent in turpentine and saw-mill camps and to give the white citizens in sparsely settled areas a better feeling of security." just as California's 1967 Act was passed for the purpose of disarming "Negros" openly carrying firearms which the California legislature said was "inimical" to public safety but unlike the Florida Act, reducing unlawful homicides by Blacks was never cited as a purpose for enacting PC 25850.

States which prohibit the Open Carry of handguns *for the purpose of self-defense* are (year bans enacted): California (1967, 2012), District of Columbia

(2008), Florida (1986), Illinois (1962), New York (1963), South Carolina, Texas (1871 – excluding "Holster" handguns openly carried and currently exempting handguns including currently manufactured firing reproductions) which existed prior to 1899 from the prohibition).

States which generally prohibit or restrict the Open Carry of long guns *for the purpose of self-defense* are (code sections): California (PC 26400), District of Columbia (D.C. Code § 22-4504.01), Florida (Fla. Stat. Ann. § 790.053(1)), Illinois (720 Ill. Comp. Stat. 5/24-1(a)(10)), Massachusetts (Massachusetts permits the open carrying of long guns with the proper permit(s) or license(s). Mass. Gen. Laws ch. 140, § 131.), Minnesota (Concealed weapons permit holders are exempt. Minn. Stat. § 624.7181, subd. 1(b)(3).), and New Jersey (New Jersey allows the open carrying of a long gun with a proper permit. N.J. Rev. Stat. § 2C:39-5(c).)

This leaves three states (California, Illinois and Florida) and the District of Columbia where the Open Carry of a firearm (handguns and long guns) *for the purpose of self-defense* is prohibited.

*Note*: the District of Columbia code section which prohibited the carrying of handguns, openly and concealed, was recently struck down in *Palmer v. District of Columbia* No. 09-01482 (FJS) on July 26, 2014 by Senior Federal District Judge Frederick Scullin Jr.  Temporary legislation was subsequently passed by the District which is still being litigated.  The District ban on carrying long guns in

public *for the purpose of self-defense* was not challenged. Florida's Open Carry ban is currently before the Florida Court of Appeals in the case of *Norman v. State* No. 12-3525. Oral arguments in *Norman* took place on November 6, 2014.

### 25. California Is The Only State Which Prohibits The Open Carry Of Modern, Loaded Firearms On Residential Property.

The California courts invalidated the residential property exemption in *Overturf*. Unless one's residential property is fully enclosed by a tall fence (the courts don't say how high - See *People v. Strider*, 177 Cal. App. 4th 1393 (2009)) or other significant barrier to entry by the public then the California courts consider one's residential property, including the curtilage of his home, to be a "public place" where the carrying of any firearm can be prohibited.

See also *People v. Krohn*, 58 Cal. Rptr. 3d 60 (2007) at 64 where the residential property exemption applies if the "gate is periodically propped open" but an "apartment hallway with "no locked gates or doors" did not challenge access" and therefore does not fall within the exemption. Under these bizarre interpretations of "public" prohibited places, Plaintiff Nichols is at risk of arrest, prosecution, fine and imprisonment not only in the curtilage of his home but if he leaves his door standing open or invites members of the public into his home for something as innocuous as a "meet and greet" for a candidate running for public office.

**26.    Defendant Harris Has Never Conceded That There Is A Right To Possess, Let Alone Carry, A Firearm In The Home.**

In nearly two and a half years of litigation in the district court Defendant Harris never conceded in any of her pleadings even an "in home" Second Amendment right.  This shouldn't be too surprising given that Defendant Harris joined in an Amicus Brief arguing against *Heller* being incorporated to the states.  Curiously, Defendant Brown (then California Attorney General) filed an Amicus Brief in which he argued for the High Court to grant cert in *McDonald* and then turns around as Governor and signs two laws banning the Open Carry of modern firearms *after McDonald* held that the *Heller* decision, which held that Open Carry is the right guaranteed by the Constitution, applies to the states.

**27.    The Second Amendment Applies To The Home Which Includes The Curtilage Of The Home.  Plaintiff Nichols And The Federal Government Concur That *Jardines* Includes The Curtilage Of The Home For Second Amendment Purposes.**

The fact that the curtilage of one's home is part of one's home under both California and Federal law is not disputed.  What is disputed by Appellees is that the Second Amendment right applies to one's home.  Plaintiff Nichols submits that it does.

Plaintiff Nichols's lawsuit is unique in several respects compared to the numerous lawsuits before this Circuit which seek government issued permits to carry concealed handguns in public.  Notably, his is the only lawsuit which

explicitly seeks to vindicate his Second Amendment right to carry firearms *in the curtilage* of his home *for the purpose of self-defense* and for other lawful purposes.

Plaintiff argued in the district court that the curtilage of his home is part of his home and in support of his argument he cited the recent US Supreme Court decision of *Florida v. Jardines*, 133 S. Ct. 1409 (2013) in which the court held:

> "[T]he curtilage of the house, which we have held enjoys protection as part of the home itself. Id at 1414 and "We therefore regard the area "immediately surrounding and associated with the home" — what our cases call the curtilage — as "part of the home itself for Fourth Amendment purposes." *Oliver*, supra, at 180, 104 S.Ct. 1735. That principle has ancient and durable roots. Just as the distinction between the home and the open fields is "as old as the common law," *Hester*, supra, at 59, 44 S.Ct. 445, so too is the identity of home and what Blackstone called the "curtilage or homestall," for the "house protects and privileges all its branches and appurtenants." 4 W. Blackstone, Commentaries on the Laws of England 223, 225 (1769). This area around the home is "intimately linked to the home, both physically and psychologically," and is where "privacy expectations are most heightened." *California v. Ciraolo*, 476 U.S. 207, 213, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986)." Id at 1414-1415.

Plaintiff Nichols' single family residence is located in the South Bay of Los Angeles, an urban area, on a small plot of land. So small in fact that all the land surrounding the structures on the land is all curtilage under both California's and the Federal definition of the term. It has no "open fields" or open range or barns. His property lines are "clearly marked" Id at 1415 and "The…porch is the classic exemplar of an area adjacent to the home and "to which the activity of home life extends." Id at 1415.

Because the California courts have substantially invalidated the residential property exemption in *People v. Overturf*, 64 Cal. App. 3d 1 (1976) at 7 unless one's residential property is fully enclosed by a sufficiently tall (possibly 4.5 to 5 feet tall but not explicitly defined) sturdy fence or other significant barrier to entry by the public (See *People v. Strider*, 177 Cal. App. 4th 1393 (2009) at 1405.), Plaintiff cannot so much as step outside his door, let alone sit or stand on his porch, with even a loaded flintlock rifle or a loaded or unloaded modern firearm without violating the laws at issue in this appeal.

On 01/10/2014 in an appeal from United States District Court for the District of Columbia in the case of *Stephen Dearth, et al v. Eric Holder, Jr*. Court of Appeals Docket for Case No.: 12-5305 that court ordered the parties to file supplemental briefs addressing the following issues: (1) Whether non-resident Americans are "home" while visiting the United States; and (2) Whether the Second Amendment extends beyond the home.

In defining what constitutes a "home" under the Second Amendment, Attorney General Holder's brief twice cited *Jardines* and of particular importance to Plaintiff's case in its "application to a person's own home, the Court has noted that "'our law holds the property of every man so sacred, that no man can set his foot upon his neighbour's close without his leave.'" *Jardines*, 133 S. Ct. at 1415 (quoting *Entick v. Carrington*, 2 Wils. K.B. 275, 291 (K.B. 1765))." *Dearth v.*

*Holder*, SUPPLEMENTAL BRIEF FOR THE APPELLEE [CORRECTED],

Document 1483856 at pg 6 of argument (pg 13 of document) filed 3/13/2014.

Unfortunately, the government ducked the second question as to whether or

not the Second Amendment extends beyond the home saying "This is not to say

that the Second Amendment has no application outside the home." and "What we

do not know is the scope of that right beyond the home…" Id at pg 8 of document.

This Circuit, since *Heller,* has held that the Second Amendment applies to

the individual unless the individual falls outside the scope of the Second

Amendment, or the type of arms falls outside the scope of the Second Amendment,

or the individual is engaged in activity (criminal) which falls outside the scope of

the Second Amendment.  Plaintiff Nichols has limited the scope of his lawsuit to

ONLY lawful purposes of which self-defense, being the core Second Amendment

right, is one of those purposes.

In addressing the need for self-defense in the home, the Supreme Court held

that the home is "where the need for defense of self, family, and property is most

acute." Id. at 2817.

Plaintiff Nichols is an individual who falls within the scope of the Second

Amendment.  He is not a person under either state or Federal law who is prohibited

from possessing, acquiring or transporting firearms.  He does not seek to engage in

criminal activity that falls outside the scope of the Second Amendment.  He does

not seek to carry any firearm that he does not currently possess or of a type which requires a permit to possess (e.g., machine-gun, short barreled rifle/shotgun). He does not seek to carry any firearm in any school or government building.

Indeed Plaintiff merely seeks to carry loaded and unloaded firearms, including firearms which are not concealable (e.g., rifles and shotguns) *for the purpose of self-defense* (which is the central component of the Second Amendment right) and for other lawful purposes in the curtilage of his home, in and on his motor vehicle including any attached camper or trailer and in non-sensitive public places where hunters are fully exempt from the statutes at issue.

There is of course nothing in the plain text of the statutes and nothing in the legislative record which even suggests that the California legislature intended that one's residential property must be enclosed by some tall, significant barrier to entry for the residential property exemption to apply, an exemption which applied to all of ones property, not just the curtilage when the ban was first enacted in 1967.

The California courts are the ones who took it upon themselves to substantially invalidate the exemption to PC 25850, an exemption which also exists in both bills banning unloaded Open Carry. An invalidation which Plaintiff submits violates his Second Amendment rights in his home and therefore the statutes at issue are unconstitutional both facially and applied to Plaintiff Nichols

and are unconstitutional to all those who fall within the scope of the Second Amendment. Whatever this Court may say on Plaintiff Nichols other challenges, it cannot say that the Second Amendment does not exist in the home.

### 28. The Second Amendment Applies To The Curtilage Of The Home Under *Chovan* As Well.

"The *Heller* Court suggested that the core of the Second Amendment right is to allow "law-abiding, responsible citizens to use arms in defense of hearth and home." Id. at 635, 128 S.Ct. 2783. *US v. Chovan,* 735 F. 3d 1127 - Court of Appeals, 9th Circuit (2013) at 1133.

### 29. The Second Amendment Applies Outside Of The Home Under *Chovan* As Well.

"The Court indicated that determining the scope of the Second Amendment's protections requires a textual and historical analysis of the amendment. See id. at 576-605, 128 S.Ct. 2783. Finally, the Court established that "weapons not typically possessed by law-abiding citizens for lawful purposes" are not protected by the Second Amendment, id. at 625, 128 S.Ct. 2783, and that certain "longstanding prohibitions" are "presumptively lawful regulatory measures":

[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms. Id. at 626-27, 128 S.Ct. 2783; see also id. at 627 n. 26, 128 S.Ct. 2783; *McDonald v. City of Chicago*, 561 U.S. ____, 130 S.Ct. 3020, 3047, 177 L.Ed.2d 894 (2010)." *Chovan* at 1133.

For the first time, this Circuit adopted a Second Amendment Framework in *US v. Chovan*, 735 F. 3d 1127 - Court of Appeals, 9th Circuit (2013) cert petition denied.

This Circuit has adopted the "two-step" framework which Plaintiff Nichols argued for the district court to adopt and apply strict scrutiny should the district court not adopt the *Heller* approach and overturn the laws outright (per se invalidation under Heller).

The district court rejected both the *Heller* approach and the *Chovan* framework going so far as to conclude that because the bans are not facially unconstitutional under *United States v. Salerno*, 481 US 739 - Supreme Court (1987), rational basis review applies to the bans. Or at least what the district court called rational review given that it is less than how this Circuit defines the rational basis test in *Silveira*.

The *Heller* and *McDonald* Courts facially invalidated the bans at issue in those cases. The *Heller* Court did not even condition its decision on whether or not the sole plaintiff, Richard Heller, fell within the scope of the Second Amendment. The ban was facially unconstitutional even if it could have been constitutionally applied to Mr. Heller and others "Assuming that Heller is not disqualified from the exercise of Second Amendment rights…" Id at 2822. *McDonald* likewise struck down a similar City of Chicago ban.

The district court uniquely applied *Salerno*, which this circuit precludes, and then applied its unique version of rational basis review which not even the Second or Third Circuits allowed, as they instead applied intermediate scrutiny (albeit their

own version of intermediate scrutiny).  This is reason enough to toss out these tests.  If a law is not constitutional in ALL applications then it should be overturned and handed back to the legislature.

**30.  Strict Scrutiny Applies To This Second Amendment Case Under *Chovan*.  The Bans Fail Intermediate Scrutiny And Rational Review As Well.  The Government Made No Attempt To Meet Its Burden Under Heightened Scrutiny.  Plaintiff Nichols Proved His Case That The Challenged Laws Fail Even Rational Basis Review.**

Should this court reject the *Heller* per se invalidation approach and apply a balancing test, the bans should be evaluated under strict scrutiny and overturned. The bans apply to persons who fall within the scope of the Second Amendment right, the bans are permanent, and the bans apply to the home and to non-sensitive public places. Under *Jones*, the bans have no real application to anything that falls outside the scope of the Second Amendment.

Plaintiff Nichols further submits that these bans fail any level of scrutiny including rational review, a level of scrutiny which the *Heller* Court explicitly foreclosed.  The district court erred in failing to apply the *Heller, McDonald* or *Chovan* approach, any and all of which requires overturning the bans at issue here.

"We join the Third, Fourth, Seventh, Tenth, and D.C. Circuits in holding that the two-step framework outlined above applies to Second Amendment challenges." *US v. Chovan*, 735 F. 3d 1127 - Court of Appeals, 9th Circuit (2013) at 1137.

In *Moore* the Seventh Circuit overturned an identical ban to the bans Plaintiff Nichols challenges. The district court erred in failing to apply Chovan's two-step framework which requires that California's bans be enjoined.

> "The two-step Second Amendment inquiry we adopt (1) asks whether the challenged law burdens conduct protected by the Second Amendment and (2) if so, directs courts to apply an appropriate level of scrutiny." Id at 1136.

Plaintiff Nichols submits that the laws he challenges burdens conduct protected by the Second Amendment and the appropriate level of scrutiny is at a "minimum" strict scrutiny. At a "minimum" strict scrutiny because when confronted by a law which banned the possession of modern handguns and required long guns to be kept unloaded and unavailable for ready self-defense use the *Heller* Court saw no need to identify any level of scrutiny other than to reject rational basis review for Second Amendment challenges.

*Chovan* too has rejected rational basis review even for persons who fall outside the scope of the Second Amendment protection. The *Chovan* Court applied intermediate scrutiny in a case involving a person who was prohibited from keeping and bearing arms pursuant to his conviction for violating 18 U.S.C. § 922(g)(9) a domestic violence misdemeanor.

The laws Plaintiff Nichols challenges fail intermediate scrutiny as well even if intermediate scrutiny were applicable to this case. Under heightened scrutiny, including intermediate, the burden of proof is on the government. The government

did not provide any evidence in the district court to defend the constitutionality of the laws at issue. Instead the government followed the district court lead and argued that Plaintiff's case was a purely facial case which cannot survive the *Salerno* test and therefore rational review applies. Intermediate Scrutiny under Chovan requires that the government prove:

1.    That the ban on the carrying of firearms, for those who fall within the scope of the Second Amendment, *for the purpose of self-defense* in the curtilage of one's home, in or on one's motor vehicle including an attached camper or trailer and in non-sensitive public places where hunters are exempt is long standing and "that the Second Amendment, as historically understood, [does] not apply…" *Chovan* at 1137.

The ban on carrying loaded firearms (PC 25850) was enacted in July of 1967. The ban on openly carrying unloaded modern firearms which are concealable (e.g., handguns - PC 26350) did not go into effect until January 1, 2012. The ban on openly carrying unloaded modern firearms which are not concealable (e.g., rifles and shotguns) did not go into effect until January 1, 2013. There is not a shred of evidence submitted by the government to prove that the Second Amendment was not historically understood to apply to the places (home and non-sensitive public places) and lawful purpose (self-defense) at issue here.

2.     That the government proves that "(1) the government's stated objective to be significant, substantial, or important; and (2) a reasonable fit between the challenged regulation and the asserted objective." *Chovan* at 1139.

The record shows that racism was the sole motivating factor in enacting Assembly Bill 1591 "The Mulford Act of 1967" of which the ban on carrying loaded firearms (PC 25850) in non-sensitive public places was a part. Appellees shamefully argued that the Second Amendment condones racist gun-control laws. More shame on any jurist who holds that racism is a "significant, substantial, or important" objective to which this law is a "reasonable fit" and who would affirm the decision of the district court.

The unloaded open carry bans, to which the author (Portantino) argued for passage because it "closed the loophole" in the 1967 Black Panther Loaded Open Carry ban (PC 25850) likewise fail any level of judicial scrutiny.

According to the author of the bills which banned the Open Carry of unloaded firearms *for the purpose of self-defense* (but not for hunting and certain other purposes and exempted a myriad of special interests), the "rationale" for passage, in addition to closing the loophole in the 1967 Black Panther Open Carry ban, was not because people who openly carry unloaded firearms are a danger to the public but because police officers "may feel compelled to respond in a manner that could be lethal."

Under this rationale, the government can ban anything and everything, anywhere and everywhere, anytime and every time. Such is the rationale of tyrannical governments. Plaintiff submits that this rationale fails any level of judicial scrutiny and turns the subordinate position of government to The People on its head.

In the nearly two and a half years of litigation the Appellees submitted not one iota of evidence to justify the enactment of these three bills. Indeed, it was Plaintiff who submitted more than enough proof and made the case that the laws at issue fail even rational basis review. Even rational review is supposed to have teeth when it come to laws which are arbitrary or irrational.

The *Chovan* Court, recognizing that *Heller* had taken rational basis review off the table, applied intermediate scrutiny because Mr. Chovan fell outside of the core Second Amendment right "by virtue of [Chovan]'s criminal history as a domestic violence misdemeanant." Id at 1138 and because the ban, as-applied to Chovan was temporary. "In answer to Chovan's as-applied challenge, California, where Chovan was convicted, makes expungement of misdemeanor convictions a right." Id at 1151.

However, Plaintiff Nichols' and every other person who has not been convicted of a felony or disqualifying misdemeanor is permanently prohibited

from exercising his Second Amendment right to carry loaded firearms and unloaded firearms *for the purpose of self-defense*, even in the home.

The California courts recognize that strict scrutiny is applicable even in cases involving convicted felons who are prohibited from carrying firearms but who are not prohibited from openly carrying knives.

> "The dirk or dagger concealed-carrying restriction does not entirely prohibit the carrying of a sharp instrument for self-defense; rather, it limits the manner of exercising that right by proscribing concealed carrying of a dirk or dagger unless the bearer uses a visible knife sheath or nonswitchblade folding or pocketknife. Because the statute regulates but does not completely ban the carrying of a sharp instrument, we subject it to intermediate scrutiny." *People v. Mitchell*, 209 Cal. App. 4th 1364 (2012) at 1374.

The *Mitchell* decision recognized the inherent danger in concealed weapons and reiterated the reasoning behind concealed carry prohibitions which this state and every other state has recognized for over two hundred years.

### 31. The Black Panther Loaded Open Carry Ban (PC 25850) Fails The Rational Basis Test Under *Carolene Products Co* Even If It Were An Economic Regulation.

Absent the bill of rights, and even if this court were to come to the ludicrous conclusion that these bans are subject to rational review, this court is still bound by *United States v. Carolene Products Co.*, 304 US 144 - Supreme Court (1938).

In the canonical 1938 case of *U.S. v. Carolene Products Co*, Justice Stone wrote:

> "[T]hat a statute would deny due process which precluded the disproof in judicial proceedings of all facts which would show or tend to show that a

statute depriving the suitor of life, liberty or property had a rational basis." Id at 152. He then elaborated: "Where the existence of a rational basis for legislation whose constitutionality is attacked depends upon facts beyond the sphere of judicial notice, such facts may properly be made the subject of judicial inquiry, and the constitutionality of a statute predicated upon the existence of a particular state of facts may be challenged by showing to the court that those facts have ceased to exist." Id at 153.

The race riots which occurred during the 1950s, 1960's and early 1970's are over. Not that they could ever have justified enactment of this racist ban on carrying firearms. Indeed, the ban on openly carrying loaded firearms in public which is, in part, at issue in this appeal via Plaintiff's challenge to PC 25850 (formerly PC 12031) was signed during the "Long Hot Summer of 1967."

As a result of the rioting in the summer of 1967, and the preceding two years, President Johnson established the Kerner Commission to investigate the rioting. In his remarks upon signing the order establishing the Commission, Johnson asked for answers to three basic questions about the riots: "What happened? Why did it happen? What can be done to prevent it from happening again and again? These are very silly questions to anyone born and raised on the wrong side of the tracks.

The Black Panther Party for Self-Defense disbanded over 30 years ago in 1982. It abandoned its policy of carrying firearms more than a decade before that. Its founder, Huey P. Newton, was murdered on an Oakland California street corner in 1989. Its co-founder, Bobby Seale, left the organization in 1974 and has long

since disavowed the use of firearms for social change. He is reportedly now a spokesman for Ben and Jerry's Ice Cream and the author of a cookbook "Barbeque'n with Bobby" ISBN 978-0898152425.

The civil unrest that accompanied the civil rights movement at the time has long since passed. Those "Negros" the government characterized as "not being susceptible to reason" and who, by the way, went out of their way to avoid breaking any laws (hence the passage of the legislation) are either dead, retired or have long since moved on to other things. The facts supporting PC 25850 have long since ceased to exist. For that matter, the facts supporting all of the provisions of the Mulford Act of 1967 have ceased to exist.

There is no rational basis in which to uphold the law pursuant to 304 US 144.

### 32.    The Open Carry Bans (PC 25850, PC 26350, PC 26400) Fail The Rational Basis Test.

The bans at issue here are not economic regulations. They are arbitrary and irrational responses to a non-existent problem. Between 1924 (*In re Rameriz*) and 2008 (*Heller*) the California courts used the rational basis test when evaluating this state's gun control laws. The 1924 *Rameriz* Court recognized that banning the carrying of arms, even by aliens, would implicate a fundamental right and therefore require a greater justification. The State of California has now banned

the carrying of firearms *for the purpose of self-defense* and did so without any

rational basis.

There is no jurisprudence that Plaintiff Nichols could find which supports

the notion that the government can ban anything because the police might

overreact in their response to otherwise lawful conduct creating a danger to public

safety, a danger caused solely by the presence of armed police officers. If there is

any such precedent, it was not cited by Appellees in the district court.

*Heller* and *McDonald* made it perfectly clear that rational review is off the

table as has this Circuit in *Chovan, Peruta,* etc.

"This Court has long held that "a classification neither involving

fundamental rights nor proceeding along suspect lines ... cannot run afoul of the

Equal Protection Clause if there is a rational relationship between the disparity of

treatment and some legitimate governmental purpose."" *Armour v. City of*

*Indianapolis, Ind*., 132 S. Ct. 2073 - Supreme Court (2012) at 2080.

The laws at issue in this appeal involve fundamental rights, disparate

treatment and there is no question regarding the racist intent and racially

discriminatory enforcement of the 1967 ban. Furthermore, there is no legitimate

government purpose let alone a rational relationship to be found in the district

court record in support of any of the bans at issue here.

**33.    Plaintiff Seeks To Openly Carry Firearms, Including Modern Firearms, *For The Purpose Of Self-Defense* In Public Places Where It Is Legal To Openly Carry Loaded And Unloaded Firearms Without A Permit For Purposes Other Than Self-Defense And Where It Is Legal For A Myriad Of Special Interest Groups.**

The laws at issue in this case do not ban the carrying of loaded firearms or unloaded modern firearms.  They ban the carrying of loaded and unloaded modern firearms *for the purpose of self-defense*, the central component of the Second Amendment right.

Plaintiff does not seek to carry a loaded firearm in any public place other than where it is now legal for him to carry an unloaded antique firearm or where he can now carry loaded firearms while hunting, while traveling to and from his hunting expedition and certain other exceptions such as while traveling to or from a shooting range or fishing.  In addition to unloaded antique firearms, Plaintiff is not prohibited by state law from openly carrying knives and swords without a permit.  However, there is an old adage that only a fool brings a knife to a gunfight which Plaintiff Nichols hopes requires no explanation.

The laws at issue here are bans on the carrying of firearms *for the purpose of self-defense*.  These bans are *prima facie* a substantial burden on Plaintiff Nichols which the Appellees made no attempt to rebut, arguing at best that the right to keep and bear firearms *for the purpose of self-defense* ceases to exist once one steps outside the interior of his house.  It is not even clear that Defendant Harris even

concedes an in home right from her pleadings. This is not surprising given that she has publicly condemned the *Heller* decision as being wrongly decided.

It should be obvious on its face that an unloaded antique firearm, particularly how California has defined the term "unloaded," is all but useless when it comes to self-defense. One cannot expect his attacker to wait while one loads his antique firearm (see SUF 105 & 106).

### 34. Plaintiff Nichols Has The Right To Openly Carry A Non-Lethal/Less-Lethal Firearm.

Under California law stun guns (e.g., Tasers) are considered firearms and Plaintiff submits that he has the Second Amendment right to openly carry a stun gun *for the purpose of self-defense*. Plaintiff Nichols wants to carry a non-lethal/less lethal weapon so that he will have the option of a nonlethal response to his attacker whenever possible and resorting to lethal force only when necessary.

California law precludes this option by prohibiting Plaintiff Nichols from carrying a stun gun.

This leaves, under current law, Plaintiff no choice but to openly carry a knife, dirk, dagger, sword or other deadly weapon not otherwise prohibited under California law (e.g., swords hidden in canes are illegal to carry as are a variety of mostly obscure weapons – see PC 16590 for a list of generally prohibited weapons).

The ban at issue in *District of Columbia v. Heller*, 128 S. Ct. 2783 -

Supreme Court (2008) exempted nonfunctional (e.g., unloaded) antique handguns

to which Heller said "Some have made the argument, bordering on the frivolous,

that only those arms in existence in the 18th century are protected by the Second

Amendment. We do not interpret constitutional rights that way." Id at 2791.

Plaintiff submits that not only does the Second Amendment guarantee his

right to openly carry a loaded firearm, it guarantee his right to openly carry a

loaded modern firearm.

Crossing the border into the frivolous is California preventing American

Citizens from carrying non-lethal/less-lethal stun guns which frequently

incapacitate an attacker. As California law now stands, the only weapons Plaintiff

Nichols is allowed to use to ward off an attacker are deadly weapons such as

openly carried sheath knives, swords, bows and arrows (but curiously not the most

ancient of weapons – clubs and spears).

Plaintiff Nichols submits that the Second Amendment as interpreted by the

*Heller* Court guarantees him the right to carry a stun gun *for the purpose of self-*

*defense*. "[T]he Second Amendment extends prima facie, to all instruments that

constitute bearable arms, even those that were not in existence at the time of the

founding." Id at 2791-2792.

Plaintiff Nichols submits that a law which prohibits him from carrying a non-lethal/less-lethal firearm (stun gun) is both an irrational law and a violation of the Second Amendment.

**35.** ***Heller* Precludes Interest-Balancing. *Heller's* Per Se Invalidation Of The Challenged Laws Is Required In This Case Just As It Was In *Heller* And *Mcdonald*.**

"We know of no other enumerated constitutional right whose core protection has been subjected to a freestanding "interest-balancing" approach. The very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon. A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all. Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *Heller* at 2821.

"*Heller* and *McDonald* leave little doubt that courts are to assess gun bans and regulations based on text, history, and tradition, not by a balancing test such as strict or intermediate scrutiny…("[U]nitary tests such as `strict scrutiny,' `intermediate scrutiny,' `undue burden,' and the like don't make sense here" in the Second Amendment context because the language of *Heller* seems to foreclose scrutiny analysis)." BEA, Circuit Judge, concurring *US v. Chovan, 735 F. 3d 1127 - Court of Appeals, 9th Circuit (2013)* at 1143 (internal citation omitted).

The bans at issue in this appeal are specifically excluded from the presumptively lawful prohibitions in *Heller*. These bans apply to the home and to non-sensitive public places. Given the California Supreme Court's interpretation of PC 654 in *Jones* a person cannot be punished for violating multiple laws resulting from the same act or same continuous act, no felon or other person

disqualified from possessing firearms can be punished for violating the laws at issue here.

Jones dictates that the convictions for violating these laws by these persons be stayed. Likewise no person can be punished for violating these sections in addition to being punished for carrying firearms, loaded or unloaded, modern or antique, in any state or local government building, or school, or school zone or any place or area of the state where the carrying or possession of firearms is prohibited or otherwise "regulated."

Likewise no person can be punished for violating these sections in addition to laws prohibiting the possession or carrying of restricted or prohibited weapons (e.g., machine-guns, brass knuckles).

In short, these laws ban ONLY constitutionally protected conduct. Plaintiff Nichols submits that the bans at issue in this case fail any level of judicial scrutiny and should therefore be struck down, per se, just as the bans at issue in *Heller* and *McDonald* were struck down without relying upon any level of scrutiny.

### 36. Ninth Circuit Court Of Appeals Post-*Heller* Decisions Recognize The Second Amendment Right.

*Nordyke v. King*, 681 F. 3d 1041 - Court of Appeals, 9th Circuit (2012) en banc at 1044; *US v. Henry*, 688 F. 3d 637 - Court of Appeals, 9th Circuit (2012) at 640;*Jackson v. City and County of San Francisco*, 746 F. 3d 953 - Court of Appeals, 9th Circuit (2014) at 960; *US v. Craighead*, 539 F. 3d 1073 - Court of Appeals, 9th Circuit (2008) at 1077; *Ramirez-Altamirano v. Mukasey*, 554 F. 3d 786 - Court of Appeals, 9th Circuit (2009) at 805;*Millender v. County of Los Angeles*, 564 F. 3d 1143 - Court of Appeals,

9th Circuit (2009) at 1154. (rev'd on other grounds sub nom. *Messerschmidt v. Millender*, 132 S. Ct. 1235 (2012).)

**37.     The District Court's Interpretation Of Fourth Amendment Rights Conflicts With The Supreme Court's Interpretation, Conflicts With This Circuit's Interpretation And Conflicts With The California Courts Interpretation Of That Right.**

"Consent at a traffic stop to an officer's checking out an anonymous tip that there is a body in the trunk does not permit the officer to rummage through the trunk for narcotics. Here, the background social norms that invite a visitor to the front door do not invite him there to conduct a search." *Florida v. Jardines*, 133 S. Ct. 1409 - Supreme Court (2013) at 1416.

**A.      There Can Be No Effective Consent To A Search Or Seizure If That Consent Follows A Law Enforcement Officer's Assertion Of An Independent Right To Engage In Such Conduct.**

PC 25850(b) states in full:

"In order to determine whether or not a firearm is loaded for the purpose of enforcing this section, peace officers are authorized to examine any firearm carried by anyone on the person or in a vehicle while in any public place or on any public street in an incorporated city or prohibited area of an unincorporated territory. Refusal to allow a peace officer to inspect a firearm pursuant to this section constitutes probable cause for arrest for violation of this section."

As the Supreme Court explained in *Bumper v. North Carolina*, 391 U.S.

543, 88 S. Ct. 1788, 20 L. Ed. 2d 797, (1968):

"When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority. *Orhorhaghe v. INS*, 38 F.3d 488 (1994) at 500-501 citing *Bumper*.

**B.    It Has Long Since Been Settled That Compelling One To Produce Evidence Of One's Guilt Is A Violation Of Both The Fourth And Fifth Amendment.**

"We have already noticed the intimate relation between the two amendments. They throw great light on each other. For the "unreasonable searches and seizures" condemned in the Fourth Amendment are almost always made for the purpose of compelling a man to give evidence against himself, which in criminal cases is condemned in the Fifth Amendment; and compelling a man "in a criminal case to be a witness against himself," which is condemned in the Fifth Amendment, throws light on the question as to what is an "unreasonable search and seizure" within the meaning of the Fourth Amendment. And we have been unable to perceive that the seizure of a man's private books and papers to be used in evidence against him is substantially different from compelling him to be a witness against himself." *Boyd v. United States*, 116 US 616 - Supreme Court (1886) at 633; See also *Riley v. California*, 134 S. Ct. 2473 - Supreme Court (2014) citing *Boyd* at 2494.

Here we are, nearly 130 years later, still arguing whether or not a law which

compels one to produce evidence against himself (that a firearm is loaded) is a

violation of the Fourth Amendment, let alone a violation of the Fifth Amendment.

**C.    Probable Cause Defined.**

PC 25850(b) does not state that openly carrying a firearm constitutes

probable cause for an arrest nor does it state that an officer with probable cause can

arrest a person openly carrying a firearm.  It does not even state whether or not PC

25850(b) is a separate offense or merely provides "authorization" to make an arrest

for violation of PC 25850(a) which is unconstitutionally vague in and of itself.

"[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt," ibid. (internal quotation marks and citations omitted), and that the belief of guilt must be particularized with

respect to the person to be searched or seized, *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S. Ct. 338, 62 L. Ed. 2d 238, (1979). *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003).

To determine whether an officer has probable cause to arrest an individual, the court examines the events leading up to the arrest, and then decides "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to" probable cause, *Ornelas v.United States*, 517 U.S. 690, 696, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996).

It is well established that, under the "fruits of the poisonous tree" doctrine, evidence obtained subsequent to a violation of the Fourth Amendment is tainted by the illegality and is inadmissible, despite a person's voluntary consent, unless the evidence obtained was "purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963).

> ### D.    "Probable Cause" Does Not Arise Under PC 25850(b) Until One Refuses To Consent To The Search And Seizure.

"Probable Cause" under the statute at issue here, PC 25850(b), does not arise according to the statute until one refuses to "consent" to the search and seizure. Making it a crime to refuse to consent to the search and seizure of a firearm renders the Fourth Amendment null and void should the district court judgment be affirmed. If ever there were a law which is unconstitutional in ALL of its applications under the Fourth Amendment, PC 25850(b) is it.

### E. The United States Supreme Court Has Refused To Create A "Firearm's Exception" To The Fourth Amendment.

An automatic firearm exception to the Fourth Amendment would give any police officer, or any person seeking to harass another to set in motion an intrusive, embarrassing police search of the targeted person simply by placing an anonymous call falsely reporting the target's unlawful carriage of a gun, the unbridled discretion to stop, detain, search and seize anyone carrying a firearm at the whim of the police officer. This is not allowed even for the unlawful carrying of concealed weapons (See *Terry v. Ohio*, 392 US 1 - Supreme Court (1968)).

The courts cannot securely confine such an exception to the mere carriage of firearms let alone allegations involving firearms:

> "Armed bank robbers, for example, are, by definition, likely to have weapons, and the fruits of their crime may be destroyed without too much difficulty. If a per se exception were allowed for each category of criminal investigation that included a considerable—albeit hypothetical—risk of danger to officers or destruction of evidence, the knock-and-announce element of the Fourth Amendment's reasonableness requirement would be meaningless." *Richards v. Wisconsin*, 520 U.S. 385, 393-394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997)

The US Supreme Court rejected a per se exception to the knock and announce rule for narcotics and weapons cases partly because the reasons for creating an exception in one category [of Fourth Amendment cases] can, relatively easily, be applied to others, thus allowing the exception to swallow the rule.

**F. Openly Carrying A Firearm In And Of Itself Does Not Constitute Reasonable Suspicion That A Crime Has Been Committed And Therefore Any Detention, Search And Seizure Pursuant To PC 25850(b) Which Is Not Consensual Is In Violation Of The Fourth Amendment.**

"**[T]**he key issue is not whether Deputy Bates's observation of the gun through the fence constituted a search. Clearly, it did not; Strider and the gun were in plain view through the fence, and Bates was on a public street, at a lawful vantage point. (See, e.g., *People v. Chavez*, supra, 161 Cal.App.4th at p. 1501.) ***That fact, however, does not justify the detention.*** The detention was lawful only if Bates had a reasonable, articulable suspicion Strider was involved in criminal activity. (*Illinois v. Wardlow* (2000) 528 U.S. 119, 123 [145 L.Ed.2d 570, 120 S.Ct. 673]; *In re Manuel G.*, supra, 16 Cal.4th at p. 821.) Bates could not have reasonably suspected Strider unlawfully had a gun on his person while in a public place unless the yard was a public place. Thus, jurisprudence related to the plain view doctrine and the legality of officers' entry onto the curtilage is inapposite." *People v. Strider*, 177 Cal. App. 4th 1393 (2009) at 1406 (emphasis and italics added).

Under California law, a person openly carrying a firearm, loaded or unloaded, antique or modern, in a place where it is lawful for him to openly carry that firearm does not constitute "reasonable suspicion" Id fn 4 that a crime has been committed.

Indeed, merely observing a firearm, without additional grounds for suspicion, does not provide probable cause to believe it loaded in violation of section PC 25850 and thus subject to search and seizure as evidence of the commission of a crime. (See *People v. Muniz*, 4 Cal.App.3d 562, 567(1970) [84 Cal.Rptr. 501].)

"The search without a warrant of a car trunk by a police officer who had been informed by another officer that he had seen defendant and another

man place a .30 caliber carbine in the trunk, was unlawful, where no exigent circumstances existed, where there was no probable cause to search the trunk except for the presence of the weapon, and where no request to examine the weapon to see if it was loaded was made by the officer. Therefore, the search was not authorized by Cal. Pen C § 12031, subd. (e),providing that refusal to allow a police officer to inspect a firearm to see if it is loaded constitutes probable cause for arrest. When an officer knows only that there is a weapon inside the trunk but has no other information which would lead him to believe the weapon is loaded, the officer does not have probable cause to believe the weapon is loaded." *People v. Kern*, 93 Cal App 3d 779, 155 Cal Rptr 877, 1979 Cal App LEXIS 1808 (1979).

Should this Court conclude, as it must, that the Second Amendment applies to any of the aforementioned places Plaintiff Nichols seeks to openly carry a firearm *for the purpose of self-defense* then Plaintiff Nichols prevails in his Fourth Amendment challenge regardless of California law.

*Strider*, however, is not the final word as California, including the California Courts are bound by the Fourth Amendment.

> "Being a felon in possession of a firearm is not the default status. More importantly, where a state permits individuals to openly carry firearms, the exercise of this right, without more, cannot justify an investigatory detention. Permitting such a justification would eviscerate Fourth Amendment protections for lawfully armed individuals in those states. *United States v. King*, 990 F.2d 1552, 1559 (10th Cir.1993). Here, Troupe's lawful display of his lawfully possessed firearm cannot be the justification for Troupe's detention. See *St. John v. McColley*, 653 F.Supp.2d 1155, 1161 (D.N.M.2009) (finding no reasonable suspicion where the plaintiff arrived at a movie theater openly carrying a holstered handgun, an act which is legal in the State of New Mexico.) That the officer had never seen anyone in this particular division openly carry a weapon also fails to justify reasonable suspicion. From our understanding of the laws of North Carolina, its laws apply uniformly and without exception in every single division, and every part of the state. Thus, the officer's

observation is irrational and fails to give rise to reasonable suspicion. To hold otherwise would be to give the judicial imprimatur to the dichotomy in the intrusion of constitutional protections." *US v. Black*, 707 F. 3d 531 - Court of Appeals, 4th Circuit (2013) at 540.

It is legal for Plaintiff Nichols and legal for every person not otherwise prohibited from purchasing a firearm, to openly carry (without a license) unloaded firearms in the areas of the state to which the laws at issue here apply. There are prohibitions on carrying *modern firearms* in some of these places which is not relevant to PC 25850 as that ban does not differentiate between antique and modern firearms.

Just as "Being a felon in possession of a firearm is not the default status." Id, carrying an antique muzzle-loading firearm *loaded* is not the default state. The Colt-pattern revolvers are arguably the most commonly owned type of muzzle loading revolver. These revolvers were routinely carried with an empty firing chamber because, unlike modern firearms manufactured today, they did not have firing pin blocks to prevent the accidental discharge of the firearm. The same is true of muzzle loading pistols and long guns. Firing pin safeties simply did not exist in the era of muzzle loading firearms.

Up until July of 1967 when the Black Panther ban went into effect, so long as the firing chamber of the revolver was empty, it did not matter if there were live rounds in the other chambers, the revolver was unloaded

under California law.  This applied to modern handguns which used modern ammunition as well as to muzzle-loading revolvers.

Oregon defines unloaded to mean: ORS 821.240(a) If the firearm is a revolver, that there is no live cartridge in the chamber that is aligned with the hammer of the revolver; (b) If the firearm is a muzzle-loading firearm, that the firearm is not capped or primed; or (c) If the firearm is other than a revolver or a muzzle-loading firearm, that there is no live cartridge in the chamber.

Nevada defines unloaded to mean: NRS  503.165 A rifle or shotgun is loaded, for the purposes of this section, when there is an unexpended cartridge or shell in the firing chamber, but not when the only cartridges or shells are in the magazine.

Arizona neither prohibits nor requires a permit to carry a loaded or unloaded firearm in public.  California's definition of "attached in any manner" is *ambiguous* as the California courts have noted:

> "Under the commonly understood meaning of the term "loaded," a firearm is "loaded" when a shell or cartridge has been placed into a position from which it can be fired; the shotgun is not "loaded" if the shell or cartridge is stored elsewhere and not yet placed in a firing position." *People v. Clark*, 45 Cal. App. 4th 1147 (1996) at 1153. "The Legislature in Penal Code section 12031, subdivision (g), provided some examples of how a shell would be "attached" to a firearm so that the firearm is loaded, i.e., in the firing chamber…" Id at 1154.  "Significantly, the Legislature has not amended the common definition of "loaded" as used in section 12031…" Id at 1155.

> "*Finally, we note that at most the Attorney General has raised a potential ambiguity in the use of the term "loaded.*"" Id at 1155. (italics added).

Even absent the Second Amendment, openly carrying a firearm where it is legal to openly carry a firearm an "officer's observation is irrational and fails to give rise to reasonable suspicion" *US v. Black,* 707 F. 3d 531 - Court of Appeals, 4th Circuit (2013) at 540 and is therefore a violation of the Fourth Amendment.

California's definition of loaded/unloaded unless construed as Oregon and Nevada define the term "unloaded" is also unconstitutionally vague as alleged. The Unloaded Open Carry bans do not allow for any constitutional avoidance construction as mere possession of matching ammunition, regardless of whether or not it is attached to the firearm in any manner, is an *enhancement* to the "crimes" of openly carrying unloaded firearms calling for mandatory minimum sentences.

Regardless of the definition of a loaded firearm, no reasonable person would believe that carrying matching ammunition along with an unloaded firearm would constitute a "loaded" firearm.

## 38. As A Threshold Issue, PC 25850(b) Applies To The Home Which Makes It Unconstitutional.

"[T]he curtilage of the house, which we have held enjoys protection as part of the home itself. Id at 1414 and "We therefore regard the area "immediately surrounding and associated with the home" — what our cases call the curtilage — as "part of the home itself for Fourth Amendment purposes." *Oliver*, supra, at 180, 104 S.Ct. 1735. That principle has ancient and durable roots. Just as the distinction between the home and the open fields is "as old as the common law," *Hester*, supra, at 59, 44 S.Ct. 445, so

too is the identity of home and what Blackstone called the "curtilage or homestall," for the "house protects and privileges all its branches and appurtenants." 4 W. Blackstone, Commentaries on the Laws of England 223, 225 (1769). This area around the home is "intimately linked to the home, both physically and psychologically," and is where "privacy expectations are most heightened." *California v. Ciraolo*, 476 U.S. 207, 213, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986)." *Jardines* at 1414-1415.

Despite the curtilage of one's home being a place where "privacy expectations are most heightened." The district court held that, even in one's home "the Fourth Amendment is not implicated because such a search [of his firearms] is reasonable."

Should this Court conclude, as Stare Decisis demands under *Heller* and *Jardines* that it must, that the curtilage of one's home is part of one's home where: "[U]nder the Constitution" a man's "right to bear arms for the defense of himself and family and his homestead" is "one of the three "indispensable" "safeguards of liberty" Id at 2811 and the California legislature having passed these laws "makes it impossible for citizens to use them for the core lawful purpose of self-defense and is hence unconstitutional" Id at 2818 then these laws are facially invalid as well as invalid as-applied to Plaintiff Nichols under the Second Amendment regardless of whether this Court believes that the Second Amendment extends beyond the home.

This, coupled with the California Courts own interpretation of the Fourth Amendment's applicability to firearms under *Strider, Muniz* and *Kern* likewise

makes the district court's holding that firearms fall completely outside the

protection of the Fourth Amendment inapposite to the Constitution under both

Federal and California law.

**39. The Fourth Amendment Applies To Firearms Carried Outside Of The Home, Even To Persons Who Fall Outside The Scope of The Second Amendment.**

This Circuit has already held in a case involving a warrantless search and

seizure of a prohibited person carrying a concealed handgun that:

> "Although Campos does not claim to have had probable cause to search Vongxay, he was nonetheless entitled to ask Vongxay some questions, including whether or not he would consent to a search, ***so long as the consent was not coerced***. See *Schneckloth v. Bustamonte*, 412 U.S. 218, 225, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The government bears the burden of proving consent, *United States v. Impink*, 728 F.2d 1228, 1232 (9th Cir.1984), and it must prove that the consent was freely and voluntarily given, *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). Voluntariness is a question of fact to be determined from all the surrounding circumstances. *United States v. Perez-Lopez*, 348 F.3d 839, 845-46 (9th Cir.2003)." *US v. Vongxay*, 594 F. 3d 1111 - Court of Appeals, 9th Circuit (2010) at 1119. (emphasis and italics added)

There is only one "circumstance" under PC 25850(b) for this Court to

consider and that is the mere refusal to consent to a search constitutes "probable

cause" for an arrest for violating PC 25850. Plaintiff Nichols submits that this

subsection is purely coercive and therefore there can be no set of circumstances in

which a coercive search, seizure and arrest authorized by a statute can constitute

consent "freely and voluntarily given." Id.

Indeed, should Plaintiff Nichols do what this Circuit has held Vongxay was required to do, refuse to consent to the search; Plaintiff Nichols is in violation of subsection (b) of the statute and therefore subject to arrest for violating subsection (b) regardless of whether or not the firearm is actually loaded under anyone's definition of the term "loaded."

"Probable Cause" for an arrest does not arise under PC 25850(b) unless and until one refuses to consent to the search. Absent this "probable cause," there are no grounds for an arrest pursuant to the plain text reading of the statute until the firearm is determined to be "loaded" in a "prohibited" place which are two unconstitutionally vague terms Plaintiff Nichols will argue later on in this brief.

Notably, *Schneckloth* cited above in *Vongxay* was a US Supreme Court case *arising out of California* where:

> "[T]he State concedes that "[w]hen a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given." *Bumper v. North Carolina*, 391 U. S. 543, 548. See also *Johnson v. United States*, 333 U. S. 10; *Amos v. United States*, 255 U. S. 313." *Schneckloth* at 222.

Had Vongxay refused consent to the search, or if Officer Campos had threatened him with an arrest if he did not "consent" to the search then Vongxay's conviction for being a felon in possession of a firearm would have been overturned just as "Strider's conviction for possession of a controlled substance while armed with a firearm [was] reversed." *Strider* at 1408.

*Schneckloth* was decided after *DeLong,* a drug case in which the district court here relied on as dispositive that firearms fall outside the scope of Fourth Amendment protection, even in the home, a case which supposedly "affirmed" in dicta PC 25850(b) (then PC 12031(c) and subsequently renumbered as PC 12031(e) and now PC 25850(b)) which was not even at issue in that case.

40. **Neither The Appellees, The District Court, Nor This Court Can Avoid Answering The Constitutional Questions By Doing An End-Run Around The Fourth Amendment.**

A. **Firearms Legally Possessed Are Not Contraband Falling Outside The Scope Of The Fourth Amendment.**

*DeLong* is clearly inapposite now, as it was then, as the US Supreme Court had long since before and after held that coercion is prohibited under the Fourth Amendment.

The district court also relied on *United States v. Brady*, 819 F.2d 884, 889 (9th Cir. 1987) which cited *Delong* in another drug case which turned on whether or not the police were required *to give a Miranda warning*. According to *Brady* once "Brady said he had a gun in the trunk, [Officer] Triviz had probable cause to think that Brady was violating former California Penal Code § 12025, which prohibits carrying a *concealed* firearm in a vehicle without a permit." Id at 889. (italics added)

This fails for several reasons not the least of which is:

"Carrying a loaded firearm within a vehicle is not a crime if the firearm is either locked in the vehicle's trunk, or in a locked container, other than the utility or glove compartment, in the vehicle." *People v. Ellison*, 196 Cal. App. 4th 1342 (2011) at 1350. See also *Pellecer*.

As *Strider, Muniz and Kern* clearly show absent a "reasonable, articulable suspicion" of criminal activity, the sight of someone openly carrying a firearm does not, in itself, constitute grounds for even a detention, let alone constitute "reasonable suspicion" and certainly does not constitute probable cause for a search, seizure and arrest. For "probable cause" to arise pursuant to PC 25850(b) there must first be a refusal to consent which is, in and of itself, unconstitutional.

Moreover, *Brady's* citation to *Delong* was its alternate theory of justification citing conflicting California court cases Id at 889 as to whether or not it was necessary to require of an officer to first *request* to inspect the firearm or whether it was necessary for an officer to give a *Miranda* warning prior to inspecting the firearm to see if it was loaded. None of the defendants raised the issue as to whether or not a statute which requires one to give his consent *or else be arrested* is a violation of the Fourth Amendment.

Other than its citation to *Brady* which in turn cited *Delong* the district court did not cite any other case in support of its conclusion that "A chamber check is arguably not a "search" because it does not infringe on a reasonable expectation of privacy and even if it is, the Fourth Amendment is not implicated because such a search is reasonable."

Why is it reasonable and why is it not a search? Other than the district court's citation to *Brady* which in turn cited *Delong*, the district court does not say. The only logical inference is that the district court has concluded that all firearms are contraband and are a special kind of contraband at that. Contraband which is not subject to *first* having probable cause that it is contraband which even the relaxed warrant requirement for automobiles requires. "If a car is readily mobile *and probable cause exists* to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." *Pennsylvania v. Labron*, 518 US 938 - Supreme Court (1996) at 940. (emphasis and italics added)

It is clear that the "authorization" under PC 25850(b) does not require: a warrant, probable cause, reasonable suspicion or even exigent circumstances to make an arrest and one cannot (legally) be convicted for violating PC 25850(a) unless the firearm is actually loaded.

California law differentiates between firearms and contraband, even in jails (PC 4030 – "will result in the discovery of the weapon or contraband.") as does this Circuit – "gave them reason to believe he had in his possession either a weapon or contraband — *or both*." *Gonzalez v. City of Anaheim*, 747 F. 3d 789 - Court of Appeals, 9th Circuit (2014) at 807 (italics added); "individuals transporting contraband *also* carry firearms." *US v. IEV*, 705 F. 3d 430 - Court of

Appeals, 9th Circuit (2012) at 434. "Indeed, the Supreme Court has recognized protected possessory interests even in contraband…" *Lavan v. City of Los Angeles*, 693 F. 3d 1022 - Court of Appeals, 9th Circuit (2012).

California law also requires that firearms be returned to persons who are not otherwise prohibited from possessing firearms (e.g., convicted felons, misdemeanor domestic violence convictions) including persons subjected to a Welfare And Institutions Code Section 5150 involuntary confinement for mental observation and provides for an award of attorney fees from the law enforcement agency if firearms are not returned pursuant to PC 33850 (formerly PC 12021.3). Indeed, California voters just passed Proposition 47 which reduces many theft and/or possession of firearms from a felony to a misdemeanor with nearly 60% of the vote in favor.

Even firearms, such as machine-guns, which this Circuit incorrectly held fall outside the scope of the Second Amendment (See *US v. Henry*, 688 F. 3d 637 - Court of Appeals, 9th Circuit (2012)) are not contraband under Federal law if one is the registered owner of the machine-gun (See 26 U.S.C. 5861(d)).

Firearms have always held a special place in the hearts of Americans. It is inconceivable that when the Framers enacted the Fourth Amendment, they intended to exclude firearms from Fourth Amendment protections.

Even during the Revolution, when the Continental Congress authorized the seizure of weapons held by Loyalists, it required that "the arms when taken be appraised by indifferent persons, and such as are applied to the arming the continental troops, be paid for by Congress, and the residue by the respective assemblies, conventions, or councils, or committees of safety." 4 Journals of the Continental Congress, 1774–1789, at 201-205 (Washington, D.C.: Government Printing Office 1906).

Contemporaneous state law likewise required compensation for arms taken from private persons. See, e.g., An Act for Providing Against Invasions, 1777 Va. Acts ch. VII, reprinted in 9 Hening's Statutes at Large 291 (1821) (directing that any arms taken for temporary state use and lost or damaged be paid for).

This case, of course, does not involve the carrying of loaded firearms in any place where it is not now legal to openly carry a loaded firearm for purposes other than self-defense and to which PC 25850 does not apply. PC 25850 bans the carrying of loaded firearms *for the purpose of self-defense* and for no other purpose under *Jones*.

**B. PC 25850(b) Is Designed To Produce Evidence Of A Crime. *Brady* Does Not Apply.**

*Brady* is, of course, factually distinguishable from this case on appeal.

"[Officer] Triviz's questions to Brady arose from his concern with public safety, his desire to obtain control of what could be a dangerous situation. They were not designed to obtain evidence of a crime. Therefore *Quarles*,

not *Orozco*, applies. Brady was not entitled to a *Miranda* warning, and we will not suppress his statements." *Brady* at 888.

Here, the sole purpose of PC 25850(b) is to coerce consent from a person,

absent any other circumstances indicating that there is a threat to public safety,

solely "to obtain evidence of a crime." Id.

> "We are aware of the problem of handgun violence in this country, and we take seriously the concerns raised by the many amici who believe that prohibition of handgun ownership is a solution. The Constitution leaves the District of Columbia a variety of tools for combating that problem, including some measures regulating handguns, see supra, at 2816-2817, and n. 26. But the enshrinement of constitutional rights necessarily takes certain policy choices off the table." *Heller* at 2822.

One of those "policy choices" taken off the table is California requiring

Plaintiff Nichols, and anyone who falls within the scope of the Second Amendment

protection, to give up his Fourth Amendment right while exercising his

fundamental Second Amendment right.

"Mere possession of a firearm, (i.e., exercising a fundamental right) when

otherwise lawful, cannot support a finding of probable cause to believe a crime has

been committed, such that the Fourth Amendment's warrant requirement can be

legislatively disregarded (25850(b))." Operative Complaint (SAC) at ¶ 57.

**C. When Has The US Supreme Court Or This Circuit Ever Upheld A Non-Consensual Search Absent Any Of The Federally Recognized Fourth Amendment Exceptions For The Purpose Of Discovering Whether Or Not A Crime Has Been Committed?**

As the dissent noted in one of the cases cited by *Brady*, *People v. Zonver*,

132 Cal. App. Supp. 3d 1 - Cal: Court of Appeal (1982):

> "Heretofore, these five alternatives have represented the only lawful means
> through which police officers could search for criminal evidence. The
> majority in the instant case now offers a sixth alternative upon which to base
> a "lawful" search: Section 12031, subdivision (e). I am unable to agree with
> my colleagues that this statute is of such profound constitutional import." Id
> at 14.

**41.    If This Court Affirms The District Court Judgment Then It Will
        Have Created a De Facto And De Jure General Warrant Despised
        By The Framers Of The Fourth Amendment.**

> "Opposition to such searches was in fact one of the driving forces behind the
> Revolution itself. In 1761, the patriot James Otis delivered a speech in
> Boston denouncing the use of writs of assistance. A young John Adams was
> there, and he would later write that "[e]very man of a crowded audience
> appeared to me to go away, as I did, ready to take arms against writs of
> assistance." 10 Works of John Adams 247-248 (C. Adams ed. 1856).
> According to Adams, Otis's speech was "the first scene of the first act of
> opposition to the arbitrary claims of Great Britain. Then and there the child
> Independence was born." Id., at 248 (quoted in *Boyd v. United States*, 116
> U.S. 616, 625, 6 S.Ct. 524, 29 L.Ed. 746 (1886))." *Riley v. California*, 134
> S. Ct. 2473 - Supreme Court (2014) at 2494.

> "It is familiar history that indiscriminate searches and seizures conducted
> under the authority of "general warrants" were the immediate evils that
> motivated the framing and adoption of the Fourth Amendment." *Payton v.
> New York*, 445 US 573 - Supreme Court (1980) at 583.

> "It is thus perfectly clear that the evil the [Fourth] Amendment was designed
> to prevent was broader than the abuse of a general warrant. Unreasonable
> searches or seizures conducted without any warrant at all are condemned by
> the plain language of the first clause of the [Fourth] Amendment." Id at 585.

**42. The District Court Erred In Holding That Minorities Are Prohibited From Bringing An Equal Protection Claim Against A Racially Discriminatory Law, Procedurally Or Otherwise, Unless They Have Been Criminally Charged And That Whites Cannot Bring Any Equal Protection Challenge Against A Racially Discriminatory Law.**

**A.     The United States Supreme Court Precludes Prior Or Current Prosecution For A Case To Have Article III Standing.**

"Plaintiffs seek preenforcement review of a criminal statute. Before addressing the merits, we must be sure that this is a justiciable case or controversy under Article III. We conclude that it is: Plaintiffs face "a credible threat of prosecution" and "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Babbitt v. Farm Workers*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) (internal quotation marks omitted). See also *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-129, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007)" *Holder v. Humanitarian Law Project*, 130 S. Ct. 2705 - Supreme Court (2010) at 2717

There are three, and only three, factors to assess whether a pre-enforcement challenge is ripe for review under Article III.  None of those factors requires that anyone of any race must first plead that a criminal law was first enforced against him because of his race.

"Standing doctrine is well established: "Article III . . . gives the federal courts jurisdiction over only `cases and controversies.'" *Whitmore v. Arkansas*, 495 U.S. 149, 154-55, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). The oft-cited *Lujan v. Defenders of Wildlife* ("Lujan") restates the three requirements that must be met for Article III standing: (1) an injury in fact that (2) is fairly traceable to the challenged conduct and (3) has some likelihood of redressability. 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)." *Jewel v. National Sec. Agency*, 673 F. 3d 902 - Court of Appeals, 9th Circuit (2011) at 908.

## B.    Whites Can Bring A Challenge To A Racially Discriminatory Law Under The Equal Protection Clause Of The 14th Amendment.

Neither *Furnace*, which did not involve a challenge, pre-enforcement or otherwise, to criminal statutes, nor any of the other cases cited by the district court (cases which Appellees never raised instead choosing to argue that the Second Amendment condones race based gun control laws) can possibly stand for the proposition that a minority cannot bring a race based equal protection challenge without first pleading that the criminal laws have been enforced upon him because of his race or that a White person cannot bring a race based equal protection challenge against a racially motivated and racially discriminatory law.

In *Fisher v. University of Texas at Austin*, 133 S. Ct. 2411 - Supreme Court (2013) the Plaintiff's White race did not preclude her from challenging a race based affirmative action policy of the university:

> "The University of Texas at Austin considers *race* as one of various factors in its undergraduate admissions process. *Race* is not itself assigned a numerical value for each applicant, but the University has committed itself to increasing *racial minority* enrollment on campus. It refers to this goal as a "critical mass." Petitioner, **who is Caucasian**, sued the University after her application was rejected. *She contends that the University's use of race in the admissions process violated the Equal Protection Clause of the Fourteenth Amendment.*" Id at 2415 (italics and emphasis added).

## C.    Minorities Can Bring A Pre-Enforcement Challenge To A Racially Discriminatory Criminal Law.

The district court failed to cite any case which supported its holding that for a minority to bring a challenge to a criminal statute, to which the Appellees never

argued that race was not the sole or motivating factor, that a minority must first plead that the law was enforced against him because of his race.

This requirement would, of course, force a minority to argue his case in state criminal court rather than Federal Civil Court *after* he violated the law pursuant to *Younger v. Harris*, 401 US 37 - Supreme Court (1971) and would preclude a White person, who is harmed by enforcement of the law as in *Fisher*, from challenging any racially discriminatory law in civil court.

**D. Whites And/Or Minorities Can Bring A 14th Amendment Challenge To A Racially Discriminatory Law Which Is Race-Neutral In Wording.**

Victor Underwood an appellee in *Hunter v. Underwood*, 471 US 222 - Supreme Court (1985) was, in fact, **White**. His co-Appellee, Carmen Edwards, was a minority, specifically **Black**. Id at 224. *Hunter* was extensively argued in the district court. *Hunter* has not been overturned by either the Supreme Court or overturned by this Circuit. *Hunter* was a Fourteenth Amendment equal protection case challenging a "a neutral state law that produces disproportionate effects along racial lines" Id at 227. The district court never explained how *Hunter* does not apply to Plaintiff Nichols' case nor has it explained why Plaintiff Nichols, regardless of his race, cannot bring a race based equal protection challenge pursuant to *Hunter*. The district court chose to disregard *Hunter*.

In the present case, Plaintiff Nichols has the advantage in that he is of mixed race, White being one of those races. The district court erred in withholding his declaration to that effect and erred in holding that Caucasians are prohibited from bringing a 14th Amendment challenge to a racially motivated, racially discriminatory law and erred in upholding PC 25850 regardless of Plaintiff's race.

Absent from the district court record is even a single iota of evidence presented by the Appellees that any motive other than race was a motivating factor in the enactment of PC 25850 let alone that the law would have been enacted if minorities, who by the way were not breaking any laws (hence the enactment of the legislation), had not begun openly carrying arms *for the purpose of self-defense* from others and from agents of the state (e.g., police).

PC 25850(b), formerly PC 12031(e) reeks of the racist intent of the legislature. It gave the police the unbridled discretion to pick and choose whom they will search and compounded the unconstitutionality of the subsection by making it a crime to refuse to consent to the search in complete derogation of the Fourth Amendment not to mention the Fifth Amendment which Plaintiff Nichols could have plead had it been necessary for Plaintiff Nichols to supplement the pleadings or to amend his case.

In the district court record there is a letter dated December 22, 1967 from the Chief of Police for the City of Richmond in which Chief Brown thanked

Assemblyman Mulford for the law [PC 25850] recounting an incident where his police officers "co-incidentally" observed "two alleged black panthers" carrying a rifle "in the downtown business area." They were stopped, searched for ammunition (not authorized by the law) and had their firearms inspected to see if they were loaded.

In the letter the police mistakenly concluded that people were not allowed to have ammunition in their possession. At the close, the letter stated that (the law) "enabled us to legally contact, indentify and surveille the men without fear of being accused of illegal search or harassment which is exactly what the Chief of Police described his officers doing in the letter. The law did not authorize the police to search these two "alleged black panthers" to see if they possessed ammunition (or anything else for that matter) it only authorized an unconstitutional search of their firearms. What is harassment if it is not targeting persons because of their race who are engaging in lawful conduct?

Not only is the record clear that PC 25850, and for that matter the entire Mulford Act of 1967 was racially motivated, there is no question that minorities, including the co-founder of the Black Panther Party for Self-Defense were specifically targeted by the police even prior to its enactment. See *People v. Seale*, 274 Cal. App. 2d 107 - Cal: Court of Appeal (1969).

### E.   The Facts That Race Was The Sole Motivating Factor In Enacting PC 25850 And That It Is Disproportionately Enforced Are Uncontroverted.

Despite the extensive evidence to the contrary, the district court held that Plaintiff Nichols had not proven the facts that "Section 25850 was motivated by a racist design and has had a disproportionate impact on racial minorities…"

To the contrary, these are uncontroverted facts which the Appellees never disputed, including the fact that Defendant Harris' own Department of Justice Publication stated that "When charged with PC section 12031 [the predecessor to PC 25850], blacks were proportionately most likely to be filed on at the felony level, followed by Hispanics, other race/ethnic groups, and whites," (SUF 57).

Had the numerous facts in support of Plaintiffs case been disputed, they, and any additional facts Plaintiff could have subsequently entered into the record, were up for a jury to decide, not the district court judge.  Not being in dispute, and even if the Appellees had advanced the argument that there were other motivating factors other than race (which they did not and could not given the evidence in the record) all that was required was:

> "To establish a violation of the fourteenth amendment in the face of mixed motives, [Plaintiff Nichols] must prove by a preponderance of the evidence that racial discrimination was a substantial or motivating factor in the adoption of section [25850]. [He] shall then prevail unless the [Appellees] prove by a preponderance of the evidence that the same decision would have resulted had the impermissible purpose not been considered." 730 F. 2d, at 617." *Hunter v. Underwood*, 471 US 222 - Supreme Court (1985) at 225.

Appellees did not provide such proof. Under *Hunter v. Underwood*, 471 US

222 - Supreme Court (1985) and its progeny, California Penal Code Section 25850

is unconstitutional independent of the Second and Fourth Amendments and doubly

so in light of the Bill of Rights. By extension, the two recently bans on openly

carried unloaded firearms are also unconstitutional because according to the author

of the legislation the purpose of each was to "close a loophole" in PC 25850, the

racist Black Panther Loaded Open Carry Ban of 1967.

### 43. The District Court Erred In Concluding That Peruta Ruled On The Constitutionality Of Any State Law And Erred In Concluding That Peruta Accepted The Lawfulness Of What The District Court Referred To As "California's Firearms Regime."

"The dissent curiously misinterprets our opinion as ruling on the constitutionality of California statutes. We decline to respond to its straw-man arguments." *Peruta* at fn 19.

The centerpiece of the *Peruta* appeal was "Constitutional Avoidance." The

Peruta plaintiffs disavowed any Constitutional challenge to any state statute instead

choosing to challenge the policy of San Diego Sheriff Gore ("the County") which

refused to recognize self-defense as "good cause" for the issuance of a permit to

carry a handgun concealed.

Indeed, the *Peruta* plaintiffs were procedurally barred from challenging the

constitutionality of *any* state statute having failed to properly notify Defendant

Harris pursuant to F.R.C.P 5.1(a). Neither did the district court certify to the state's

attorney general that the constitutionality of the state statute has been questioned, and consequently could not permit the state to intervene to defend them. F.R.C.P. 5.1(b), (c); 28 U.S.C. § 2403.

The US Supreme Court explains that "the canon of constitutional avoidance in statutory interpretation" *Clark v. Martinez*, 543 US 371 - Supreme Court (2005) at 381 means that "one of the canon's chief justifications is that it allows courts to avoid the decision of constitutional questions." Id.

Likewise, the district court erred in holding that the *Peruta* court "accepted the lawfulness of California's firearms regime." If the Peruta decision is binding on Plaintiff Nichols case then the district court was precluded from construing the "opinion as ruling on the constitutionality of California statutes." *Peruta* fn 19.

Crucially to Plaintiff Nichols' case is that the *Peruta* Plaintiffs argued to avoid overturning The California Gun Free School Zone Act of 1995 (PC 626.9) under the doctrine of Constitutional avoidance.

A permit to carry a concealable weapon relieves the permit holder from the prohibition on not only carrying loaded, concealed handguns in schools and within 1,000 feet of a K-12 public or private school but also on carrying loaded long guns in schools and within 1,000 feet of a K-12 public or private school pursuant to PC 626.9.

There are many other places, such as most state and local government buildings (PC 171b) where a permit holder is relieved from the general prohibition on not only carrying loaded, concealed handguns but openly carrying unloaded handguns and loaded and unloaded long guns as the two recently enacted bans on openly carrying unloaded firearms exempted permit holders in those places which fall under PC 171b and did not exclude the carrying of loaded long guns by concealed carry permit holders pursuant to PC 626.9 or PC 171b.

Plaintiff Nichols does not seek to carry a firearm in any manner in any of those places which require a permit. If California had a permit requirement to possess or to openly carry a firearm then Plaintiff Nichols would have challenged that law from the beginning.

### 44. If The *Peruta* Dicta Is Binding On Plaintiff Nichols' Case Then PC 25850 Is Unconstitutional.

PC 25850 prohibits the mere carriage of loaded firearms regardless of whether or not the firearm is carried openly or concealed. If the *Peruta* Court is correct that the Second Amendment right is to carry a loaded firearm, but not in a particular manner, then the law is unconstitutional because PC 25850 bans the carriage of loaded firearms *for the purpose of self-defense* regardless of the manner in which the firearm is carried.

**45.    The District Court Erred In Concluding That *Peruta* And *Furnace* Created Enhanced Pleading Standards And That These New Pleading Standards Preclude Plaintiff Nichols From Article III Standing.**

The dicta, Plaintiff Nichols submits orbiter dicta, from *Peruta v. County of San Diego*, 742 F. 3d 1144 - Court of Appeals, 9th Circuit (2014) the district court relied upon to hold that there is a pleading barrier to bringing ANY Open Carry case and to hold that there is NO right to openly carry a firearm *for the purpose of self-defense* anywhere in the state is wrong and can only be resolved at this stage of litigation by this court.

If an out of context citation from a UCLA Law Review Article (*Peruta* fn 18) in which its author expressed a *personal preference* to carrying concealed handguns and a disdain for Open Carry outweighs the precedential value of three US Supreme Court decisions on the right to Open Carry and nearly 200 years of state court decisions which came to the same conclusion that there is no right to carry a concealed weapon then it is up to this court to explain how this dicta in *Peruta* is not orbiter and it is up to this court to explain how the split decision of a three judge panel of the 9th Circuit Court of Appeals supersedes three decisions (*Robertson*, *Heller* and *McDonald*) of the United States Supreme Court.

Neither this court, nor any court, can substantially burden, let alone ban the fundamental right to openly carry a firearm *for the purpose of self-defense* in favor of concealed carry, and certainly not because of some law review article written by

a law school professor who is contemptuous of Open Carry and who made a *personal case* for concealed carry by alluding to a changing social convention in favor of concealed rather than open carry. *Peruta* at [fn 18].

To his credit, the author in the same article also said:

> "*I must acknowledge, though, that longstanding American tradition is contrary to this functional view that I outline. For over 150 years, the right to bear arms has generally been seen as limited in its scope to exclude concealed carry.* Constitutional provisions enacted after this consensus emerged were likely enacted in reliance on that understanding. If *Heller* is correct to read the Second Amendment in light of post-enactment tradition and not just Founding-era original meaning, this exclusion of concealed carry would be part of the Second Amendment's scope as well. *And if the Second Amendment is incorporated via the Fourteenth Amendment, its scope as against the states might well be properly defined with an eye towards how the right to bear arms was understood in 1868 when the concealed-carry exception was apparently firmly established.*" Eugene Volokh, Implementing the Right to Keep and Bear Arms for Self-Defense: An Analytical Framework and a Research Agenda, 56 UCLA L.Rev. 1443 (2009) at 1523-1524. (italics and emphasis added).

Plaintiff Nichols notes that case law upholding prohibitions on concealed carry date back to *State v. Mitchell*, 3 Blackf. 229 (Ind. 1833) and laws prohibiting the carrying of concealed weapons in this country date back to 1805. And so the professor's estimate of 150 years is somewhat understated.

Nonetheless, a law school professor's academic meander into Interest-Balancing cannot overrule Supreme Court precedents any more than can the district court, this Court, this Circuit or any court except for the US Supreme Court.

"It is inconceivable that we would rest our interpretation of the basic meaning of any guarantee of the Bill of Rights upon such a footnoted dictum in a case where the point was not at issue and was not argued." *Heller* at fn 25.

Unlike the footnote in *Peruta* which is from a law review article the district court held to be dispositive, the *Heller* court was referring to *dictum* from one of its *own* prior decisions.

The district court erred in concluding that footnoted dicta in *Peruta,* which can only be construed as being orbiter, citing a law review article supersedes US Supreme Court precedents.

Handguns can be carried openly or concealed. Given the uncontroverted fact that concealed carry substantially burdens Plaintiff Nichols right to self-defense, this leaves Open Carry as the only possible means by which Plaintiff Nichols may carry any and all firearms *for the purpose of self-defense* in a manner which does not substantially burden his right to self-defense.

Based on the orbiter dicta from *Peruta,* the district court added procedural barriers to the pleading requirements of the Federal Rules of Civil Procedure. These additional pleading barriers contravene *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) which both the district court and this Circuit are bound. *Leatherman* rejected heightened pleading requirements for 42 U.S.C. 1983 actions and directed that any "added specificity requirement…must be obtained by the process of amending the Federal

Rules and not by judicial interpretation" *Leatherman* at 167. *Leatherman* further

taught:

> "We think that it is impossible to square the "heightened pleading standard"
> applied by the Fifth Circuit in this case with the liberal system of "notice
> pleading" set up by the Federal Rules. Rule 8(a)(2) requires that a complaint
> include only "a short and plain statement of the claim showing that the
> pleader is entitled to relief." *Leatherman* at 168.

This district approved *Leatherman* in *Alvarez v. Hill*, 518 F. 3d 1152 - Court

of Appeals, 9th Circuit (2008) at 1157. In *Alvarez* this court also approved of

*Erickson v. Pardus*, 127 S. Ct. 2197 - Supreme Court (2007) which held a

complaint need only "give the defendant fair notice of what the…claim is and the

grounds upon which it rests." *Erickson* at 2200.

The district court compounded its error by claiming that Plaintiff Nichols

had been given "three opportunities to state his claims." Both *Peruta* and *Furnace*

*v. Sullivan*, 705 F. 3d 1021 - Court of Appeals, 9th Circuit (2013) were not decided

until *after* the district court had ruled on Plaintiff Nichols' first two complaints and

*after* the district court refused to identify any defects in his first two complaints.

Moreover, the Appellees never cited either case in support of its 12(c)

motion. The district court came up with them on its own in opposition to Plaintiff

Nichols' case as it had so often done before on behalf of the Appellees throughout

the litigation. The nearly two and a half years of litigation before the district court

strongly suggests that Canon 3 of the Code of Conduct for United States Judges is more myth than reality. District court judges are supposed to be impartial.

As shown above, both the district court and this Circuit are prohibited from creating their own procedural barriers. The Federal Rules of Civil Procedure are binding on the district court as are they and The Federal Rules of Appellate Procedure binding on this Circuit. There was no procedural defect in Plaintiff Nichols' pleadings nor was there any justification in the district court entering judgment for the Appellees.

### 46. The *Peruta* Court Did Not Say That There Is No Right To Openly Carry Firearms. It Could Not As Open Carry Is The Right Guaranteed By The Second Amendment.

Given that *Peruta* cannot be read to create a pleading barrier, the question turns to whether or not *Peruta* Court held that there is no Second Amendment Right for Plaintiff Nichols to openly carry any loaded firearm and any unloaded modern firearm in the curtilage of his home, in or on his motor vehicle (including any attached camper or trailer) and in non-sensitive public places *for the purpose of self-defense* and for other lawful purposes *in places where the Open Carry of Firearms is not prohibited for reasons other than self-defense*.

Neither *Heller* nor *McDonald* contains any language limiting the scope of the decisions to the home or its precedential application to any Second Amendment case. Indeed, by including the admonition that the Second Amendment guarantees

the "right to carry arms openly" but not concealed Id at 2809, 2818 one could be excused for assuming that the *Heller* decision was incorporated to the states because the Second Amendment, as it was understood by the Framers in 1791, guaranteed the right to carry arms both openly and concealed.

There were common law prohibitions on the use of concealed weapons in mutual combat but not on the carrying of concealed weapons *for the purpose of self-defense* against highwaymen, robbers and the like. In any event, *McDonald* explicitly said "We therefore hold that the Due Process Clause of the Fourteenth Amendment incorporates *the Second Amendment right recognized in Heller*." Id at 3050 (italics added). It was the Second Amendment right *in Heller* that was incorporated to the states.

*Heller* admonishes us that nothing in its opinion should be taken to cast doubt on longstanding prohibitions on the bearing (carrying) of arms in "[S]ensitive places such as schools and government buildings" *Heller* at 2817 or other presumptively lawful regulatory measures such as the carrying of concealed weapons in public Id [fn 26]. "Presumptively lawful prohibitions" are, of course, subject to challenge in those cases where the presumption can be rebutted but none of those are present in Plaintiff Nichols case.

The orbiter dicta in *Peruta* saying that the *Peruta* plaintiffs were allowed to bring a suit seeking permits to carry concealed handguns "a narrow challenge to

the San Diego County regulations on concealed carry, rather than a broad challenge to the state-wide ban on open carry, is permissible." Id at 1173 referred to an as-applied challenge factually different from the one brought by Plaintiff Nichols. Whatever it may portend for future concealed carry cases remains to be seen. For now, this court must consider *Heller, McDonald, Chovan and the many other cases cited* as applying to Plaintiff Nichols' case.

**47.  *Peruta* Is Factually Different From Plaintiff Nichols' Challenge.**

**A.     There Was No Constitutional Challenge In Peruta.**

The centerpiece of Peruta's Appellant Opening Brief was "constitutional avoidance". His opening brief argued that it was necessary to grant his requested relief in order to avoid overturning PC 12031 (now PC 25850 in part) and, significantly, The California Gun Free School Zone Act of 1995 (PC 626.9).

The Peruta Plaintiffs did not just seek to carry a loaded handgun concealed in only *some* public places and nowhere did they argue that they were prevented from carrying loaded firearms, openly or concealed, in their homes. The Peruta Plaintiffs sought to carry a loaded handgun concealed in places where a permit is required to carry a loaded, concealed handgun which includes government buildings, schools and gun free school zones.

"Peruta seeks a concealed carry permit because that is the only type of permit available in the state." Id at 1172. None of these places are at issue here, in

this appeal.  No permit is required to openly carry a firearm in the places Plaintiff

Nichols seeks to openly carry firearms.  The Open Carry of firearms is not

prohibited in these same places for hunters and a myriad of special interest groups.

Plaintiff Nichols himself is not prohibited from openly carrying unloaded antiques

in these same places, or unloaded modern long guns in his motor vehicle.

The Second Amendment question is whether or not Plaintiff Nichols has a

right to openly carry firearms loaded and to openly carry modern firearms loaded

and unloaded *for the purpose of self-defense in the heretofore mentioned places?*

The question is not whether Plaintiff Nichols has a right to carry any firearm in any

manner in any government building, in any school, or even in a public place within

1,000 feet from any K-12 public or private school as those places were never at

issue in the district court and are not raised here on appeal.

**B.      The Very Limited Scope Of Plaintiff Nichols' Lawsuit Compared
         To Peruta.**

Plaintiff Nichols does not seek to carry a loaded firearm or unloaded

modern firearm in any public place where a government issued permit (CCW) or

other permission is required (e.g., PC 626.9 – California's Gun Free School Zone

Act of 1995 & PC 171b – "Regulating" the carrying of firearms in most state and

local government buildings). However, carrying will be allowed in these places by

additional CCW holders should *Peruta v. County of San Diego*, 742 F. 3d 1144 -

Court of Appeals, 9th Circuit (2014) become a binding precedent throughout this

state. Each and every one of those persons is similarly situated to Plaintiff Nichols just as is every existing CCW permit holder.

Plaintiff Nichols does seek to openly carry *for the purpose of self-defense* loaded firearms and unloaded modern firearms in the curtilage of his home, in and on his motor vehicle including any attached camper or trailer and in non-sensitive public places where hunters are fully exempt from the laws at issue as are exempt a myriad of special interest groups from the unloaded open carry bans.

Plaintiff Nichols does NOT seek to carry any firearm in any sensitive place such as schools and government buildings.

### C.     The Very Broad Scope Of The Peruta Decision.

#### 1.     Peruta Permits Carrying Firearms Openly And Concealed In Schools Which Are Sensitive Places Under Heller.

Persons with a permit to carry a handgun concealed are exempt from the general prohibition on carrying loaded, concealed handguns in schools and within 1,000 feet of a K-12 public or private school.  Which is not to say that the areas extending 1,000 feet from a K-12 public or private schools are sensitive places under *Heller*, they are not.  However, schools are sensitive places under *Heller* and in sensitive places the presumption is that firearms can be prohibited.

Ironically, CCW holders can carry loaded long guns on school grounds and within 1,000 feet of a K-12 school but cannot generally carry unloaded firearms

without permission from the school because of the recently enacted unloaded Open Carry bans.

Plaintiff Nichols submitted three "gun free school zone maps" to the district court of three coastal cities in the South Bay of Los Angeles located near where he resides. Even in these cities with relatively few K-12 schools, the 1,000 foot school zones encompass most of the cities. Plaintiff Nichols brought the narrowest possible challenge to California's ban on carrying firearms in public be they loaded or unloaded, carried openly or concealed. In contrast, *Peruta v. County of San Diego*, 742 F. 3d 1144 - Court of Appeals, 9th Circuit (2014) argued in support of PC 626.9 in the appellate opening brief knowing full well that the ramifications of a decision in its favor would incidentally allow the Open Carry of loaded long guns in schools and within 1,000 feet of a K-12 public or private schools.

> **2.** **CCW Holders Can Carry Loaded And Unloaded Firearms, Openly And Concealed, In Most State And Local Government Buildings.**

In most state and local government buildings (PC 171b) a CCW holder is exempt from the unloaded Open Carry bans and can, of course, carry loaded handguns concealed or openly pursuant to the permit and openly carry loaded and unloaded firearms, including handguns not listed on the CCW simply by virtue of his having a CCW permit. The two recently enacted bans on openly carrying

unloaded firearms explicitly exempted CCW permit holders from the prohibitions on carrying unloaded firearms in government buildings.

California does not explicitly provide for permits to carry long guns. Instead, a person with a CCW is indirectly exempt from the prohibitions on the carrying of long by statute (PC 626.9 and PC 171b) in the aforementioned places. This is highly significant given that *Heller* identified government buildings as "sensitive" places where the carrying of firearms can, presumptively at least, be prohibited.

If *Peruta* stands, it turns the *Heller* decision on its head. If Plaintiff Nichols prevails then the Second Amendment, Fourth Amendment and Fourteenth Amendments are affirmed.

Significant to this case, Plaintiff Nichols Complaint is not limited to the carrying of a handgun. He seeks to carry long guns as well as handguns *for the purpose of self-defense* and for other lawful purposes. *Peruta*, if the district court interpretation is correct, would prohibit an entire category of firearms (long guns) from being carried *for the purpose of self-defense* in the home and in non-sensitive public places. *Heller* dictates that an entire category of firearms cannot be banned. This includes the carrying of fully functional loaded long guns which was also at issue in *Heller* Id at 2788.

**48.    The District Court Erred In Granting The F.R.C.P. 12(C) Motion**

**A.    Analysis Of Rule 12(c) Motions.**

"Analysis under Rule 12(c) is "substantially identical" to analysis under Rule 12(b)(6) because, under both rules, "a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy."" *Chavez v. US*, 683 F. 3d 1102 - Court of Appeals, 9th Circuit (2012) at 1108.

"A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle it to relief. All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Daniel v. County of Santa Barbara*, 288 F.3d 375, 380 (9th Cir.2002) (quotations and citation omitted)." *Berg v. Popham*, 412 F. 3d 1122 - Court of Appeals, 9th Circuit (2005) at 1125.

"A document filed pro se is "to be liberally construed," *Estelle*, 429 U.S., at 106, 97 S.Ct. 285, and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," ibid. (internal quotation marks omitted). Cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice")." *Erickson v. Pardus*, 127 S. Ct. 2197 - Supreme Court (2007) at 2200.

Given that it is an uncontroverted fact (SUF 132) that concealed carry

substantially burdens Plaintiff Nichols' right to self-defense, even if he lived

in a jurisdiction which issued permits and he, himself, had a permit and

given that *long guns are not concealable and thus can only be carried*

*openly*, making it impossible for the state to express a preference that they

be carried concealed, it would have been a trivial (Plaintiff Nichols submits

unnecessary) matter to amend his complaint to remove any reference to any preference for Open Carry.

**B.     Plaintiff Nichols Filed A Declaration That He Is A Minority Which The District Court Withheld From Being Entered Into The Docket.**

Similarly, it would have been a trivial (and likewise unnecessary) matter to amend his complaint stating that, as a minority, Plaintiff Nichols falls within a protected class of persons and has been personally harmed as a member of that protected class.

However, Plaintiff Nichols submits that he has the Second Amendment "right to carry arms openly" *District of Columbia v. Heller*, 128 S. Ct. 2783 - Supreme Court (2008) at 2809 and he stands on his Complaint in that respect in the hope of avoiding the prolonging of this case via a remand to the district court for further proceedings.

This court has the authority to grant the relief Plaintiff Nichols requested just as the 7th Circuit Court of Appeals did in *Moore v. Madigan*, 702 F. 3d 933 - Court of Appeals, 7th Circuit (2012) and without the six month stay. The California legislature has had more than enough time since *Heller* was published to repeal its unconstitutional gun bans. Instead, California added brand new gun bans in defiance of the US Supreme Court and in contempt of the Constitution of the United States which the California legislators are all sworn to uphold and defend.

**49. Defendant-Appellee Brown ("Defendant Brown") Was Improperly Dismissed By The District Court.**

The district court erred in holding that "Plaintiff's claims against Governor Edmund G. Brown, Jr. are DISMISSED WITH PREJUDICE for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and the Eleventh Amendment" relying on the report and recommendation of the magistrate judge.

Fed. R.Civ.P. 15(a)(2) states that "The court should freely give leave [to amend] when justice so requires." *Johnson v. City of Shelby* 574 U. S. ____ (2014)

Plaintiff was never given the opportunity to amend his Complaint against Defendant Brown. Defendant Brown, in his official capacity, claimed he does not have a role in enforcing PC 25850. Had Plaintiff Nichols been given leave to amend his complaint it would have been an easy matter to prove that there is a direct enforcement connection between Defendant Brown far greater than that in *Los Angeles County Bar Ass'n v. Eu*, 979 F. 2d 697 - Court of Appeals, 9th Circuit (1992). Indeed, Plaintiff Nichols argued that California Government Code (GOV) sections provided the direct enforcement nexus…

> "[Defendant Brown] shall supervise the official conduct of all executive and ministerial officers." California Government Code section "GOV" 12010 and [Defendant Brown] shall see that all offices are filled and their duties performed. If default occurs, he shall apply such remedy as the law allows. If the remedy is imperfect, he shall so advise the Legislature at its next session." "GOV" 12011

Compare that to the sole paragraph in the Complaint regarding the Utah Governor's enforcement of a challenged statute in *Utah Coalition of La Raza v. Herbert*, Dist. Court, D. Utah Case No. 2:11-cv-401 CW, Related Case No. 2:11-cv-1072 (Filed June 18, 2014) which read in full:

> "Defendant Gary Herbert is the Governor of Utah. According to Utah law, the Governor is responsible for "supervis[ing] the official conduct of all executive and ministerial officers" and "see[ing] that all offices are filled and the duties thereof performed." Utah Code Ann. § 67-1-1. As such, Defendant Herbert is responsible for the enforcement of HB 497 in the State of Utah. Defendant Herbert is sued in his official capacity.""

On June 18, 2014 *La Raza's* motion for a preliminary injunction was granted in part against Utah Governor Herbert. Plaintiff submits that California GOV 12010 & 12011 are identically worded to the section of Utah Code Ann. § 67-1-1 cited in La Raza's Complaint. Plaintiff Nichols further submits that this alone was sufficient to deny Defendant Brown's F.R.C.P 12(b)(1) motion. In any event, dismissal with prejudice at that early stage of the proceedings was improper for the reasons Plaintiff Nichols gave in his opposition.

### 50. The District Court Erred In Dismissing Plaintiff Nichols State Law Claims.

Also in this appeal are Plaintiff Nichols's state law challenges which were dismissed with prejudice from his initial complaint. This is the only opportunity Plaintiff has to challenge that dismissal with prejudice from the district court without alleging them again in his amended complaint(s) and risking sanctions

from the district court. See *Lacey v. Maricopa County*, 693 F. 3d 896 - Court of Appeals, 9th Circuit (2012).

The first of Plaintiff-Appellant Nichols' state law claims allege that the laws at issue in this appeal violate Article I, Section 1 of the California Constitution Declaration of Rights, California's analogue to the Second Amendment as interpreted by *Heller* which states:

> "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

And the second claim is that these laws violate Article I, Section 13 of the California Constitution Declaration of Rights, California's analogue to the Fourth Amendment, which states:

> "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated; and a warrant may not issue except on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized."

The US Supreme Court held in *Heller* that self-defense is the central component of the Second Amendment. Article I, Section 13 of the California Constitution Declaration of rights is California's state analogue to the Fourth Amendment.

The district court had supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they are so related to the federal

claims that it forms part of the same case or controversy under Article III of the U.S. Constitution.

The district court erred in dismissing, with prejudice, Plaintiff's state law claims *prior* to a final judgment on his Federal claims.

Federal Rule of Civil Procedure section 1367(c) sets forth the occasions in which a federal court may exercise its discretion not to hear a supplemental claim or add a supplemental party, despite the power of the court to do so.

A federal court may decline to assert supplemental jurisdiction over a pendent claim if any of the following four circumstances specifically enumerated in Section 1367(c)(1)-(4) apply: "the claim raises a novel or complex issue of State law," "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction," "the district court has dismissed all claims over which it has original jurisdiction," or "in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

In *Executive Software v. US Dist. Court*, 24 F. 3d 1545 - Court of Appeals, 9th Circuit (1994) at 1556 the Ninth Circuit held that the statutory structure adopted by Congress demonstrated its intent for Section 1367(c) "to provide the exclusive means by which supplemental jurisdiction can be declined by a court...." "Accordingly, the court stated, "unless a court properly invokes a [S]ection 1367(c)

category in exercising its discretion to decline to entertain pendent claims, ***supplemental jurisdiction must be asserted***." Id.  (italics and emphasis added).

The Ninth Circuit reasoned that, although subsections (c)(1)–(3) "appear to codify concrete applications of the underlying *Gibbs* values," the statute "channels" their application and alters "the nature of the *Gibbs* discretionary inquiry." Id. Once a court identifies one of the "factual predicates" corresponding to one of the Section 1367(c) categories, the exercise of discretion "is informed by whether remanding the pendent state claims comports with the underlying objective of most sensibly accommodat[ing] the values of 'economy, convenience, fairness, and comity.'" Id at 1557.

In addition, the *Executive Software* Court found that the "other compelling reasons" referred to in the Section 1367(c)(4) "catchall" subsection referred back to the circumstances identified in subsections (c)(1)–(3), thus requiring the court to balance the *Gibbs* discretionary values of economy, convenience, fairness, and comity.

Nonetheless, the Ninth Circuit also found that the "exceptional circumstances" referred to in subsection (c)(4) meant that the court's discretion should be employed only when the circumstances were "quite unusual." This would require a district court to "articulate why the circumstances of the case are exceptional in addition to inquiring whether the balance of the Gibbs values

provide compelling reasons for declining jurisdiction in such circumstances." Id at 1558.

The district court had supplemental jurisdiction.  See *Payne v. Peninsula School Dist*., 653 F. 3d 863 - Court of Appeals, 9th Circuit (2011) at 868. The claims are so related that they form part of the same case or controversy.  *Albingia Versicherungs AG v. SCHENKER INTL*., 344 F. 3d 931 - Court of Appeals, 9th Circuit (2003) at 936.  The state law claims share a common nucleus of operative fact with the Federal claims. *Trs. of the Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape Maint., Inc*., 333 F.3d 923, 925 (9th Cir.2003).

The district court failed to undertake a case-specific analysis.  *Executive Software N. Am., Inc. v. United States Dist. Court*, 24 F.3d 1545, 1557-58 (9th Cir.1994) The district court decision to decline to exercise jurisdiction over the state law claims conflicts with *Bahrampour v. Lampert*, 356 F. 3d 969 - Court of Appeals, 9th Circuit (2004) at 978.

**51.    There Is No Duty To Retreat Under California Law.**

In California, you may use reasonable force to defend yourself even if you also had the option of escaping the threat by running away.  You may even pursue an assailant until the danger has passed.  "`[A] person in the exercise of her right of self defense not only has a right to stand her ground and defend herself when

attacked, but she may pursue her adversary until she has secured herself from

danger.'" (*People v. Hatchett* (1942) 56 Cal.App.2d 20, 22; see also CALCRIM

No. 3470 ["[A defendant is not required to retreat. He or she is entitled to stand his

or her ground and defend himself or herself and, if reasonably necessary, to pursue

an assailant until the danger of (death/bodily injury/____ ) has passed.

This is so even if safety could have been achieved by retreating.]"].) The right to

use force, however, continues only as long as the danger exists or reasonably

appears to exist. (*People v. Martin* (1980) 101 Cal.App.3d 1000, 1010; CALCRIM

No. 3474.).

> **52.**      **Equal Protection Claims Under The Fourteenth Amendment Are Subject To Heightened Scrutiny, Not Rational Review. The Second Amendment Right Is Fundamental. Due To The Severity Of The Burden Imposed By These Bans They Are Subject To Strict Scrutiny.**

When a statute burdens a fundamental right or targets a suspect class, that

statute receives heightened scrutiny under the Fourteenth Amendment's Equal

Protection Clause." *Silveira v. Lockyer* , 312 F.3d 1052, 1087 (9th Cir. 2002).

(Abrogated on other grounds as recognized by *Barnes-Wallace*, 704 F.3d at 10

1084-85.) "[I]n order for a state action to trigger equal protection review at all, that

action must treat similarly situated persons disparately." *Silveira v. Lockyer*, 312

F.3d 1052, 1088 (9th Cir.2002), abrogated on other grounds by *District of*

*Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008).

*Barnes-Wallace v. City of San Diego*, 704 F. 3d 1067 - Court of Appeals, 9th Circuit (2012) at 1084-1085. "When a fundamental right is burdened, rational basis scrutiny does not apply. See *Nordlinger v. Hahn*, 505 US 1 - Supreme Court (1992) at 10; *Silveira* 312 F.3d at 1087.

The Equal Protection Clause commands that no state shall deny any person the equal protection of the laws." *Stop H-3 Ass'n v. Dole*, 870 F.2d 1419, 1429 n.18 (9th Cir. 1989). The Equal Protection Clause "keeps governmental decision makers from treating differently persons who are in all relevant aspects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). "[I]n order for a state action to trigger equal protection review at all, that action must treat similarly situated persons disparately." *Barnes-Wallace v. City of San Diego* 704 F.3d 1067, 1084 (9th Cir. 2013). "When a statute burdens a fundamental right or targets a suspect class, that statute receives heightened scrutiny under the Fourteenth Amendment's Equal Protection Clause." *Silveira v. Lockyer* , 312 F.3d 1052, 1087 (9th Cir. 2002). Statutes that infringe on fundamental rights are subject to strict scrutiny review, which means that a regulation will be upheld only if it is suitably tailored to serve a compelling state interest. Id. at 1087.

The *Heller* Court took the rational-basis test off the menu. The *Silveira* Court held that the retired police officer exception to California's Assault Weapons Control Act of 1989 "is wholly unconnected to any legitimate state interest." and

therefore failed the rational basis test.  Id at 1091.  PC 26300 entitles retired police officers to carry a concealed and loaded firearm. Likewise, the exceptions to PC 25850, PC 26350, PC 26400, for retired police officers and others as well as the code sections enumerated in SAC ¶ 64 and ¶ 65 concerning licenses to carry concealable firearms openly and concealed fail even the rational-basis test.

However, Plaintiff Nichols has no desire to enshrine a permit requirement for an individual to exercise his fundamental right to openly carry a firearm *for the purpose of self-defense*.  His challenge to the licensing scheme is in the alternative should the California legislature implement a statewide Open Carry law and the courts uphold a permit requirement.  Neither of those has occurred and therefore this Court need not rule on California's licensing scheme if Plaintiff Nichols is granted the other relief sought in his Complaint.

Appellees never argued that the bans survive strict scrutiny.  Instead Defendant Harris argued for the court to adopt the substantial burden test in *United States v. DeCastro*, 682 F.3d 160, 164 (2d Cir. 2012) which this Circuit rejected in *Chovan* six days after she filed her brief.

Alternatively, Defendant Harris claimed in the same brief that intermediate scrutiny should apply but failed to even attempt to meet her burden of proof required under *Chovan*.  Instead, she made the circular argument that intermediate scrutiny applies because the district court had previously applied what it purported

149

to be intermediate scrutiny in a pre-*Chovan* decision and, incredibly, she cited two California cases which upheld PC 25850 as-applied to *concealed carry* and to a person who was living out of his van. Plaintiff does not seek to carry firearms concealed and whether or not the Second, Fourth and Fourteenth Amendments guarantee the right of Plaintiff Nichols and/or others to keep and carry arms in a motor vehicle is at issue in this appeal.

Defendant Harris' only justification under what she purports to be intermediate scrutiny for the unloaded open carry bans is the hypothetical threat police officers pose to public safety and to the financial costs imposed in responding to calls. As argued earlier Defendant Harris put up no defense to the 1967 Black Panther Loaded Open Carry Ban (PC 25850 in part) other than the Second Amendment, according to some revisionist law review article, condones racially motivated and discriminatory criminal gun laws.

The *Chovan* Court applied intermediate scrutiny to Mr. Chovan for the reasons it gave at 1139-1142, none of which apply here. Indeed, pursuant to *Jones* a person, like Mr. Chovan, who falls outside the scope of the Second Amendment (e.g., felon, prohibiting misdemeanor), who carries an illegal weapon (e.g., machine-gun) in a prohibited place (e.g., courtroom) cannot be punished for violating the bans at issue here in addition to the laws which prohibit conduct outside the scope of the Second Amendment.

The bans at issue here apply only to persons who fall within the scope of the Second Amendment while bearing arms which fall within the scope of the Second Amendment in non-sensitive public places and in the home, which are places which also fall within the scope of the Second Amendment.

In all of the following Plaintiff Nichols is denied "the equal protection of the laws" is "in all relevant aspects alike." And he is treated "disparately" in the carrying of loaded and modern unloaded firearms *for the purpose of self-defense* and for other lawful purposes.

Note, some of the following code sections include active duty police officers and military in addition to persons not employed as police officers are enlisted in the military. No equal protection claim is made against those two categories of persons. The rest are able to bear loaded firearms and to openly carry loaded and/or unloaded modern firearms to defend themselves unconnected with their employment as police officers and unconnected with their active duty service in the military. An equal protection claim is made against those law enforcement officers and members of the military who are authorized to carry firearms pursuant to their employment by private persons, companies, corporations, etc.

Under *Silveira*, these laws do not even survive the rational basis test absent a Second Amendment. Under the Second Amendment, they fail any level heightened scrutiny as well in the aforementioned and following, enumerated,

cases which are all equal protection challenges under the 14th Amendment and are categories which Plaintiff Nichols argued in the district court fail any level of judicial scrutiny including rational review and as a result, the bans he challenged are all subject to per se invalidation pursuant to the *Heller* decision. None of the following exceptions survives the rational basis test and Appellees made no attempt to justify the challenge bans in light of these equal protection challenges:

1.     People, including Plaintiff Nichols' neighbors, who live on residential property enclosed by a tall sturdy fence or other barrier to entry by the public regardless of whether or not their gate or door is unlocked or propped open who are free to openly carry firearms for the purpose of self-defense in their homes and on their residential property whereas Plaintiff Nichols is not.

2.     People who live, or are present, in unincorporated county territory where the prohibitions on the discharge of a firearm do not apply to firearms *for the purpose of self-defense*. E.g., Los Angeles County Municipal Code 13.66.010 excludes the discharge of firearms *for the purpose of self-defense* from its prohibitions on the discharge of firearms. Plaintiff Nichols lives just a few blocks from unincorporated territory in the County of Los Angeles. One million people live in unincorporated Los Angeles County territory, most of them in densely populated urban areas. Each of these persons is similarly situated to Plaintiff Nichols.

3.    Hunters are exempt from the ban on carrying loaded firearms and the bans on openly carrying unloaded modern firearms throughout the state pursuant to PC 26366, PC 26040, PC 26060, PC 26405, and PC 26005.

4.    Retired police officers exempt from the ban on carrying firearms pursuant to PC 25900 and PC 26300.

5.    Those persons with permits to carry firearms openly and/or concealed pursuant to PC 26010.

6.    Armored Vehicle Guards pursuant to PC 26015.

7.    *Retired* federal officers or agents of any federal law enforcement agency, including, but not limited to, the Federal Bureau of Investigation, the United States Secret Service, the United States Customs Service, the federal Bureau of Alcohol, Tobacco, Firearms and Explosives, the Federal Bureau of Narcotics, the United States Drug Enforcement Administration, the United States Border Patrol, and any officer or agent of the Internal Revenue Service who was authorized to carry weapons while on duty, who was assigned to duty within the state for a period of not less than one year, or who retired from active service in the state pursuant to PC 26020.

8.    Animal control officers and zookeepers pursuant to PC 26025.

9.    Persons who are authorized to carry the weapons pursuant to Section 14502 of the Corporations Code via PC 26025.

10.     Guards or messengers of common carriers, banks, other financial institutions and other persons pursuant to PC 26030 PC 26035, PC 26040, PC 26045, PC 26050, PC 26055, PC 26060.

11.     Guards of contract carriers operating armored vehicles pursuant to PC 26030.

12.     Private investigators pursuant to PC 26030.

13.     Uniformed employees of private investigators pursuant to PC 26030.

14.     Private patrol operators pursuant to PC 26030.

15.     Uniformed employees of private patrol operators pursuant to PC 26030.

16.     Alarm company operators pursuant to PC 26030.

17.     Uniformed security guards or night watch persons employed by any public agency pursuant to PC 26030.

18.     Uniformed security guards, regularly employed and compensated in that capacity by persons engaged in any lawful business, and uniformed alarm agents employed by an alarm company operator, while actually engaged in protecting and preserving the property of their employers, or on duty or en route to or from their residences or their places of employment, and security guards and alarm agents en route to or from their residences or employer-required range training pursuant to PC 26030.

19. Those persons who can carry loaded firearms pursuant to *Pellecer*.

20. Retired peace officer pursuant to PC 26361.

21. Those exempt pursuant to PC 26362.

22. Those exempt pursuant to PC 26363.

23. Those exempt pursuant to PC 26364.

24. Those exempt pursuant to PC 26365.

25. Those exempt pursuant to PC 26366.

26. Those exempt pursuant to PC 26366.5.

27. Those exempt pursuant to PC 26367.

28. Those exempt pursuant to PC 26368.

29. Those exempt pursuant to PC 26369.

30. Those exempt pursuant to PC 26373.

31. Those exempt pursuant to PC 26374.

32. Those exempt pursuant to PC 26375.

33. Those exempt pursuant to PC 26377.

34. Those exempt pursuant to PC 26381.

35. Those exempt pursuant to PC 26382.

36. Those exempt pursuant to PC 26383.

37. Those exempt pursuant to PC 26384.

38. Those exempt pursuant to PC 26387.

39.     Those exempt pursuant to PC 26388.

40.     Those exempt pursuant to PC 26389.

41.     Those exempt pursuant to PC 26391.

42.     Those exempt pursuant to PC 26405.

43.     Those exempt pursuant to PC 16505.

44.     Those exempt pursuant to 25605.

45.     Those exempt pursuant to sections 7574.14 & 7582.2 of the Business and Professions Code which including, but not limited to: officers or employees of the United States of America, or of this state or a political subdivision thereof; persons engaged exclusively in the business of obtaining and furnishing information as to the financial rating of persons; charitable philanthropic societies or associations incorporated under the laws of this state that is organized and duly maintained for the public good and not for private profit; persons in any city, county, or city and county under the express terms of its charter who also under the express terms of the charter; attorneys at law; collection agencies and employees thereof; admitted insurers and agents and insurance brokers licensed by the state; banks; persons engaged solely in the business of securing information about persons or property from public records; peace officer while employed by a private employer; retired peace officers of the state or political subdivision thereof when the retired peace officer is employed by a private employer; licensed insurance

adjusters; savings associations; secured creditor engaged in the repossession of the creditor's collateral; lessors engaged in the repossession of leased property; peace officer in his or her official police uniform while privately employed pursuant to PC 70; uniformed security persons employed exclusively and regularly by a motion picture studio facility employer; armored contract carrier operating armored vehicles; armored vehicle guards employed by an armored contract carrier; And: persons who do not meet the requirements to be a proprietary private security officer, as defined in BPC 7574.1; An officer or employee of the United States of America, or of this state or a political subdivision thereof; persons engaged exclusively in the business of obtaining and furnishing information as to the financial rating of persons; non-profit charitable philanthropic societies and associations; attorneys at law; collection agencies and employees thereof; Admitted insurers and agents and insurance brokers; banks; persons engaged solely in the business of securing information about persons or property from public records; licensed insurance adjusters; savings associations; secured creditors engaged in the repossession of the creditor's collateral; lessors engaged in the repossession of leased property; peace officer in his or her official police uniform while privately employed pursuant to PC 70; uniformed security persons employed exclusively and regularly by a motion picture studio facility employer.

46.    Retired persons exempt pursuant to PC 25460

47. Those exempt pursuant to PC 26150 and PC 26155.

48. Taxi drivers pursuant to pursuant to *People v. Marotta*, 128 Cal. App. Supp. 3d 1 (1981).

49. Those exempt, including retired police officers pursuant to PC 25450 & PC 25455.

50. Those exempt pursuant to PC 26005

51. Those exempt (convicted felons and other prohibited persons) pursuant to *People v. King*, 582 P. 2d 1000 - Cal: Supreme Court (1978).

One of the numerous exempt special interest groups to the unloaded Open Carry bans is lawyers (See section 7574.14 & 7582.2 of the Business and Professions Code "BPC"). As of Oct 12 2014 11:00PM the California Bar reported that there are 249,701 lawyers in this state (See http://members.calbar.ca.gov/search/demographics.aspx).

Lawyers are just one of the myriad of special interest groups exempt from the unloaded Open Carry bans. Plaintiff Nichols personal favorite is the exemption for "A person engaged solely in the business of securing information about persons or property from public records." BPC sections 7574.14 & 7582.2. Why is it that lawyers can openly carry firearms to defend themselves and yet Plaintiff Nichols, who has a documented death threat against him, cannot?

Hunters are exempt from all three of the bans. The California Department of Fish and Wildlife reports that 287,842 individuals were issued hunting licenses last year. (See https://nrm.dfg.ca.gov/FileHandler.ashx?DocumentID=59821&inline=1 last visited on October 25, 2014). Hunters and lawyers alone account for over half a million persons exempt from one or all three of the bans.

The district court erred in holding that equal protection challenges to the laws at issue in this case are subject to rational basis review and it erred in holding that they survive rational basis review.

A convicted felon pursuant to *People v. King*, 582 P. 2d 1000 - Cal: Supreme Court (1978) at 26 is allowed to arm himself with modern loaded firearms, including handguns, when he is "personally afraid and believe[s] he [is] in great danger" whereas Plaintiff Nichols must wait until he is in immediate, *grave* danger before he can arm himself with a loaded firearm or unloaded modern firearm. A reasonable belief that a convicted felon is in "*great* danger" is a far lower threshold than the burden place on Plaintiff Nichols who must wait until he is in immediate "*grave* danger" and likewise fails the rational basis test.

These laws infringing on a fundamental right are subject, "at a minimum," to strict scrutiny. "At a minimum" because laws such as those at issue in this appeal are unconstitutional regardless of any level of scrutiny.

**53. Plaintiff Nichols Has A Documented Death Threat Against Him. The District Court Erred In Withholding The Police Incident Report Documenting That Threat From The Record And Erred In Failing To Consider The Death Threat.**

Plaintiff Nichols has a documented death threat against him. Under California's self defense laws "One who has received information of threats against his life or person made by another is justified in acting more quickly and taking harsher measures for his own protection [in self-defense] in the event of assault either actual or threatened, than would be a person who had not received such threats…" *People v. Torres*, 94 Cal.App.2d 146 (1949) at 151.

However, Plaintiff Nichols is still prevented under the statutes at issue in this case from openly carrying a firearm *for the purpose of self-defense* in a public place while at the same time a person walking beside him on the street who is a hunter can openly carry a loaded firearm and a persons who happens to be a lawyer or "A person engaged solely in the business of securing information about persons or property from public records" is free to openly carry an unloaded firearm, handgun or long gun, with ammunition at the ready.

Although Defendant Harris and the district court made light of the documented death threat against Plaintiff Nichols (Dkt 10), Plaintiff submits that had the same threats been made against Defendant Harris or this Court the perpetrator would have been quickly arrested, prosecuted and in all likelihood convicted of a felony and sent to prison.

**54. The Documented Death Threat Against Plaintiff Nichols Dictates That He Succeed In His As-Applied Challenge Even Under The Less Than Intermediate Scrutiny Used In The Second, Third And Fourth Circuits.**

The *Kachalsky* and *Drake* and *Woollard* plaintiffs failed in their quest to obtain permits to carry concealed handguns in public because they could not show a heightened need for doing so. Plaintiff Nichols has a heightened need and under *Torres* has the right to act "more quickly" and to take "harsher measures" but is still prevented from carrying loaded firearms and unloaded modern firearms to defend himself even in the curtilage of his home and arguably even inside of his house should he happen to leave his door standing open or invite members of the public inside.

The Second Amendment right to self-defense is meaningless if one is denied the means to defend himself as California has done.

**55. The Bans Are Unconstitutionally Vague Both Facially And As-Applied.**

Vagueness can be both facial as well as as-applied and isn't limited to statutory constructions as well as statutory language. Even if an enactment does not reach a substantial amount of constitutionally protected conduct (which these three bans certainly do), it may be impermissibly vague because it fails to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests and as Plaintiff has pointed out ad infinitum, the

three bans at issue in his motion for partial summary judgment (PC 25850, PC

26350 & PC 26400) do not themselves contain any exceptions, for anyone, not

even for police officers; the exceptions, such as they are, require one to search

through the many penal code sections and even to search completely outside of the

penal code.  See *Kolender v. Lawson* (1983) 461 U.S. 352 and *City of Chicago v.*

*Morales* (1999) 527 U.S. 41.

"In our opinion this ordinance is unconstitutionally vague because it subjects the exercise of the right of assembly to an unascertainable standard, and unconstitutionally broad because it authorizes the punishment of constitutionally protected conduct."  *Coates v. Cincinnati*, 402 US 611 Supreme Court (1971) at 614; "Legislation may run afoul of the Due Process Clause because it fails to give adequate guidance to those who would be law–abiding, to advise defendants of the nature of the offense with which they are charged, or to guide courts in trying those who are accused." *Musser v. Utah*, 333 U.S. 95, 97 (1948); *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972); *Village of Hoffman Estates v. The Flipside*, 455 U.S. 489, 498 (1982) Acts which are made criminal "must be defined with appropriate definiteness." *Cantwell v. Connecticut*, 310 U.S. 296, 308 (1940) "There must be ascertainable standards of guilt. Men of common intelligence cannot be required to guess at the meaning of the enactment. The vagueness may be from uncertainty in regard to persons within the scope of the act...or in regard to the applicable tests to ascertain guilt." *Winters v. New York*, 333 U.S. 507, 515–16 (1948) . *Colten v. Kentucky*, 407 U.S. 104, 110 (1972) Statutes which lack the requisite definiteness or specificity are commonly held "void for vagueness." Such a statute may be pronounced wholly unconstitutional (unconstitutional "on its face"),*Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972) ; *Smith v. Goguen*, 415 U.S. 566 (1974) or, if the statute could be applied to both prohibitable and to protected conduct and its valuable effects outweigh its potential general harm, it could be held unconstitutional as applied.*Palmer v. City of Euclid*, 402 U.S. 544 (1971) ; *Village of Hoffman Estates v. The Flipside*, 455 U.S. 489, 494–95 (1982).  "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids. The

applicable rule is stated in *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926): "That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." *Lanzetta v. New Jersey*, 306 US 451 - Supreme Court (1939) at 453; "The dividing line between what is lawful and unlawful cannot be left to conjecture. The citizen cannot be held to answer charges based upon penal statutes whose mandates are so uncertain that they will reasonably admit of different constructions. A criminal statute cannot rest upon an uncertain foundation. The crime, and the elements constituting it, must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him to pursue. Penal statutes prohibiting the doing of certain things, and providing a punishment for their violation, should not admit of such a double meaning that the citizen may act upon the one conception of its requirements and the courts upon another." *Connally v. General Constr. Co.*, 269 US 385 - Supreme Court (1926) at 393.

The state says we can carry a loaded firearm or modern unloaded firearm when we are in "immediate, grave danger" (but not in the challenged code sections) but makes it a crime for those of us who fall within he scope of the Second Amendment to carry them until we are in immediate, *grave* danger. Where can one purchase a firearm that magically appears when one is in immediate grave danger but magically disappears when that danger is over?

The state cannot say that it is legal to carry a loaded firearm to defend oneself while at the same time prohibiting him from carrying that firearm to defend himself. This is doubly vague facially and as-applied to Plaintiff Nichols, who has

a documented death threat against him.  What more proof of the vagueness of the law is required than Defendant Harris' own statement "For instance, the statute has an express self-defense exception that *might* apply to Nichols." (Dkt 13-1, pg 1, ln 26-27; pg 2, ln 1). (italics added).  Defendant Harris continues on ln 1-2 "Until Nichols so acts, and there is a concrete fact pattern to evaluate, it is prudent for the Court to defer considering this case."

*Connally* and its progeny condemn laws, particularly criminal laws, which requires Plaintiff Nichols to act, as Defendant Harris suggests, on one conception and then wait for the criminal courts to decide if Plaintiff Nichols' conception of the law is the same as that of the criminal courts.

Defendant Harris' defense raises the very definition of vagueness under *Connally*. See also *Lanzetta v. New Jersey*, 306 US 451 - Supreme Court (1939) at 453 "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids."

Defendant Harris says that self-defense *might apply* to Plaintiff Nichols which means it *might not apply* to Plaintiff Nichols.  The three bans at issue in this appeal require Plaintiff Nichols to "speculate" at his peril.  They are facially invalid and are invalid as-applied.  Contrary to Defendant Harris' claim, Plaintiff Nichols does not have to wait and see what the criminal courts decide.

There is a reason the Supreme Court has never applied the *Salerno* test, not even to *Salerno* itself. The *Salerno* test creates a new standard of review beneath rational basis. It takes Constitutional Avoidance and the Rule of Lenity off the table.

Had the High Court applied *Salerno* to *Heller* and *McDonald* then those bans would still be intact. Fortunately, this Circuit rejected the *Salerno* test in *Chovan* and *Peruta* although the *Jones* decision by the California Supreme Court has created that exceedingly rare case where the bans at issue in this appeal fail even the *Salerno* test. The *Salerno* test is the last refuge of the intellectually lazy jurist and jurists who find that the Constitution requires the invalidation of a law the jurist personally supports.

But a vagueness challenge to a criminal statute implicating constitutionally protected conduct is not an ordinary facial challenge (not forgetting that Plaintiff Nichols also brings an as-applied vagueness challenge). Due process is at its peak when unduly vague laws subject violators to criminal penalties or burden constitutionally protected conduct *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 US 489 - Supreme Court (1982) at 498-499.

When a plaintiff facially attacks an allegedly vague law that "reaches a substantial amount of constitutionally protected conduct," especially one that "imposes criminal penalties" the US Supreme Court has expressly rejected the

notion that a law must be vague "in all of its possible applications." *Kolender v. Lawson*, 461 US 352 - Supreme Court (1983) at 358 fn 8 (quoting *Hoffman Estates*, supra, 455 U.S. at 497); see also *Chicago v. Morales*, 527 US 41 - Supreme Court (1999) at 55.

The California Courts recognize that when a statute "broadly infringes upon fundamental constitutional rights," a facial challenge "may not be defeated simply by showing that there may be some circumstances in which the statute constitutionally could be applied." *American Academy of Pediatrics v. Lungren*, 16 Cal. 4th 307 - Cal: Supreme Court (1997) at 343; see also *Tobe v. City of Santa Ana*, 892 P. 2d 1145 - Cal: Supreme Court (1995) at 1109 "[I]f a law threatens the exercise of a constitutionally protected right a more stringent vagueness test applies."

In any event, *Chovan* and post-*Chovan* decisions take the *Salerno* test off the table in this Circuit. The district court erred in applying *Salerno*, Appellee's argument that *Salerno* applies to Second, Fourth and Fourteenth Amendment challenges is without merit.

If former California Penal Code section PC 12031 could be said to have a "virtue" it would be that most of the statutory provisions were to be found in one code section. But even PC 12031 was unconstitutionally vague and scattering most of its subsections throughout the penal code in 2012 coupled with the two

unloaded Open Carry bans whose provisions are also not only scattered throughout the penal code but are found in entirely separate code sections did not make any of the bans any less vague.  It made them even vaguer.

Even if one embarks on an Easter egg hunt throughout the various code sections, the plain text reading of the statutes and/or the conflicting judicial interpretations make the bans unsalvageable for a law rendered unconstitutionally vague by a judicial construction, not to mention conflicting judicial constructions is no less unconstitutionally vague than are unconstitutionally vague laws fresh off the legislative printing press.

Beginning with PC 25850 which contains no exceptions, not even for police, in the body of the statute; Subsection (a) of the ban states "A person is guilty of carrying a loaded firearm…"  What does loaded mean? PC 16840(b)(1) says that a firearm shall be deemed to be "loaded" when there is an unexpended cartridge or shell, consisting of a case that holds a charge of powder and a bullet or shot, in, or attached in any manner to, the firearm, including, but not limited to, in the firing chamber, magazine, or clip thereof attached to the firearm.

This subsection was added in response to the bill markup found in Exhibit 26-4 referenced in SUF 41 which sought "[A] more accurate definition of "loaded" because present law indicates one in the chamber." As do the Oregon and Nevada statutes cited earlier.

*People v. Clark*, 45 Cal. App. 4th 1147 (1996) at 1155 said "The Attorney

General argues we should adopt an expansive definition of "loaded"… we note that

at most the Attorney General has raised a potential ambiguity in the use of the term

"loaded."  (Which Defendant Harris has raised once again here.) *Clark* held that:

> "[T]o the extent an ambiguity exists between whether the Legislature intended
> the term "loaded" to be used in its ordinary sense (i.e., a shell placed in a
> position ready to be fired) or to be used in an unusual sense (i.e., including a
> shell placed in a storage compartment from which it cannot be fired), we adopt
> the construction more favorable to Clark, i.e., that the term was intended to be
> used in its ordinary sense and that the shotgun here was not loaded." Id at
> 1155.  "Our conclusion that the Legislature intended "loaded" as used in Penal
> Code section 12031 to reflect the common definition is supported by the court
> in *People v. Heffner* (1977) 70 Cal. App.3d 643, 650 [139 Cal. Rptr. 45], which
> reached the same conclusion ("the apparent purpose [of the `loaded' definition]
> is to make it clear that for purpose of section 12031 the usual meaning of
> `loaded firearm' is to apply.")." Id at 1154.

Here we are nearly 20 years later and the Attorney General is still arguing for

an expansive definition of "loaded" claiming that a firearm which does not have a

shell in the "firing chamber" Id at 1154 is "loaded."  The ambiguity remains and is

present in this appeal where it must be resolved.

Does a revolver having an empty firing chamber with shells in the cylinder

constitute an *unloaded* firearm?  It did in 1967 and *Clark* suggests that it does so

today.  Similarly, does a modern semi-automatic firearm with an empty firing

chamber but having an attached magazine constitute a "loaded firearm?"  *Clark*

strongly suggests that it does not, *Rupf* in evaluating a Welfare and Institution

Code challenge decided that it does. Which is it? A reasonable person reading the statute has no way of knowing for certain.

The only firearms which required a clip be attached to the magazine in order to be fired are all curios and relics and only one of these, the M1 Garand Rifle was ever manufactured in significant quantities. The M1 Garand was the standard infantryman rifle in World War II and the Korean Conflict. Today, they are collector's items.

PC 25850(a) goes on to say "on the person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street…" As argued above, when the ban was first enacted in 1967 there is nowhere to be found in the exhibits of the Mulford Act (SUF 41) or in the plain text of the legislation that the legislative intent was that one's residential property be required to be enclosed by a tall sturdy fence or other barrier of unspecified height for the exemption to apply.

Nor can be found any suggestion that when the legislature said one could "have" a loaded firearm on his property it didn't mean that he couldn't *carry* the loaded firearm on his property.

"[O]n the person or in a vehicle" is another unconstitutionally vague term as the *Pellecer* Court recently showed. Of course having a loaded firearm in a locked container in the cab (other than the glove box) or in the trunk were exceptions to

PC 12031 which one now needs to rummage through the Penal Code to find after the "reorganization" that went into effect on 1/1/2012.

Curiously, a taxi driver can carry a loaded firearm in his vehicle, openly or concealed, pursuant to *People v. Marotta*, 128 Cal. App. Supp. 3d 1 (1981) at 4.

If any vehicle can be considered to be "public" it is a taxi. People go in and out of taxis all day. On the other hand, Plaintiff Nichols' motor vehicle is a private conveyance. He does not even pick up hitchhikers as his maternal uncle was murdered by a hitchhiker in California as he was traveling from Washington State, where it is legal to openly carry a firearm both in one's motor vehicle and in public, to visit Plaintiff's mother in California. Outside of California he always carried his .38 caliber revolver on him where it was legal. While traveling in California he kept it unloaded and locked in the trunk of his motor vehicle. That cost him his life.

There is no rational basis for a taxi driver, who carries "less than $10 in change" to be able to carry a firearm in the cab of his vehicle, a vehicle which arguably a kind of vehicle less likely to be carjacked, while at the same time Plaintiff Nichols and every other similarly situated person in this state is prohibited the means to defend himself from a carjacker with a firearm.

PC 25850(a) finishes with "in a prohibited area of unincorporated territory." What constitutes a "prohibited area?" PC 25850 does not say. PC 17030 says

""prohibited area" means *any* place where it is unlawful to discharge a weapon." (italic added).

"Any place?" Really? What about those counties like Los Angeles County where Plaintiff Nichols resides, which have county ordinances explicitly exempting self-defense from its other ordinances prohibiting the discharge of a firearm? Is the Open Carry of a loaded firearm prohibited in those places?

Defendant Harris argument is that there is no right to carry a loaded firearm anywhere outside of the home and so it doesn't matter (while not conceding that there is any ambiguity in the laws or that there is even a right to possess a firearm inside the home let alone carry one).

PC 26350, which bans the Open Carry of handguns, suffers the same vagueness infirmities as does PC 25850. PC 26400 suffers many of the same vagueness infirmities as does PC 25850 and PC 26350 although it is slightly more limited in scope as it exempts unloaded long guns from being carried inside of a vehicle.

That is until the California courts construe PC 26405(c) to limit the carrying of long guns in a motor vehicle to "*directly* between places where a person is not prohibited from possessing that firearm…"

As shown above, since the enactment of the Black Panther Loaded Open Carry Ban in 1967, the California courts haven't hesitated to expand the scope of

criminal laws involving firearms far beyond the plain text of the statutes and far beyond the legislative intent.

After all, according to the legislative record and 1968 Attorney General opinion entered into the record, the purpose of the 1967 ban was "that the Legislature did not direct the provisions of section 12031 against all uses of firearms but only at uses of firearms which are "inimical to the peace and safety of the people of California."  Plaintiff Nichols submits that self-defense is not a use which is "inimical."

And what was one of those "uses?"  From the same document: "The urgency clause first appended to A.B. 1591 referred to organized bands of men "armed with loaded firearms" entering the Assembly Chambers.  This was a clear reference to the appearance of members of the Black Panther organization referred to above."

 It was perfectly legal for them to do so at the time and yet they were arrested for not breaking any laws.  They peacefully surrendered their firearms despite the unlawful arrests.  It was the California Legislature which was "inimical to the peace and safety of the people of California."

PC 25850(b) grants to police officers the unbridled discretion to choose whom they will stop.  The legislature cannot delegate such lawmaking ""to the moment-to-moment judgment of the policeman on his beat."" *Smith v. Goguen*, 415 US 566 - Supreme Court (1974) at 575.  PC 25850(b) subjects "California's gun owners,

[including hunters], to whimsical and capricious prosecution." *Harrott v. County of Kings*, 25 P. 3d 649 - Cal: Supreme Court (2001).

"The ordinance is unconstitutional, not because a policeman applied this discretion wisely or poorly in a particular case, but rather because the policeman enjoys too much discretion in every case. And if every application of the ordinance represents an exercise of unlimited discretion, then the ordinance is invalid in all its applications." *Morales*, supra, 527 U.S. at p. 71.

It is not even clear if PC 25850(b) is a "separate offense." in *US v. Nora*, Court of Appeals, 9th Circuit No. 12-50485 (Filed August 28, 2014) during oral arguments the court raised an interesting question regarding PC 25850(b) as to whether or not PC 25850(b) is a separate offense?

The position of the Federal government was that subsection (b) is not a separate offense, merely an authorization to search and make an arrest pursuant to PC 25850(a).  Plaintiff Nichols could find no appellate case involving a conviction for violating PC 25850(b).  On October 7, 2014 Plaintiff Nichols sent an email to Appellee's attorney of record asking him if he agreed with the Federal Government that PC 25850(b) is not a separate offense.  On October 20, 2014 Appellee's attorney replied via email that "I am not in a position to give you a comment about the separate-offense issue."

Either PC 25850(b) is clearly a separate offense or it is not. The fact that for the nearly two and a half years of litigation in the district court both sides operated under the presumption that it is a separate offense and the Federal government coming to the conclusion that it is not, a conclusion that the *Nora* Court did not seem to have a problem with, adds an additional layer of vagueness to an already unconstitutionally vague law.

Regardless, "probable cause" to make an arrest does not arise until one refuses to consent to the unlawful search and even if it were interpreted to be a separate offense and/or read to mean that someone must actively resist the search "As interpreted by the [California courts], [PC 25850(b)] would reach a broad range of innocent conduct. For this reason it is not necessarily saved by the requirement that the citizen must disobey a police order…before there is a violation." *Morales* at 69.

If one were to *incorrectly* assume that the objective in 1967 was to prohibit groups or individuals from seeking out armed confrontations with police, the legislature could have instead enacted a law prohibiting the brandishing of firearms in the presence of police officers, which it did and for which a conviction results in a lifetime prohibition (Pen. Code §§ 417, subd. (c), 23515, subd. (d), 29800, subd. (a)(1)). Or for brandishing in general for two or more convictions of Penal Code section 417, subdivision (a)(2) (Pen. Code § 29800, subd. (a)(2)).

None of the bans at issue here are bans on brandishing. They are bans on the mere carriage of firearms *for the purpose of self-defense* and for other lawful purposes. Even under a very weak intermediate scrutiny test favored by the Second and Third circuits the bans at issue in this appeal do not state a "significant, substantial, or important" objective and is in no way a "reasonable fit."

*Patel v. City of Los Angeles*, 738 F. 3d 1058 - Court of Appeals, 9th Circuit (2013) facially invalidated a law similar to PC 25850(b) under a lower burden.

### 56.    The Statute Of Northampton Is The Antithesis Of The Second Amendment.

The dissent in *Peruta* seemed to place a great deal of stock in The Statute of Northampton 2 Edw. 3, c. 3 (1328) which, like its more limited predecessor Statuto sup' Arportam'to Armor 7 Edw 2 (1313) which prohibited the wearing of armor in Parliament was an act in which a monarchy sought to assert its power over his subjects, a power which the monarchy believed to be absolute and in a realm wherein whose subjects where chattel.

The Second Amendment not only guarantees the right of the individual to openly carry arms *for the purpose of self-defense*, it stands as a safeguard against tyranny and it serves as a restraint on both the Federal and State governments.

> "No clause in the Constitution could by any rule of construction be conceived to give to congress a power to disarm the people. Such a flagitious attempt could only be made under some general pretence by a state legislature. But if in any blind pursuit of inordinate power, either should attempt it, this amendment

may be appealed to as a restraint on both." William Rawle, A View of the Constitution of the United States 125--26 1829 (2d ed.).

The State of California forbids the carrying of firearms in public *for the purpose of self-defense*, and even in the curtilage of one's home. To limit the right to the inside of one's house destroys the lawful right of self-defense in the curtilage of one's home, his private property and in public. Furthermore, it grants the government a monopoly on armed force in public. This is the exact opposite of what the Framers of the Second Amendment intended.

Neither the district court, this court, nor any court has the authority to send us back to the Dark Ages. We are not ruled by kings. That issue has long since been settled.

Nevertheless, English courts did not understand the 1328 Statute of Northampton to ban the carrying of weapons per se, only the carrying of weapons in a threatening manner. The 1328 Statute of Northampton, which, by the time of the American Revolution, had long been limited to prohibit the carrying of arms only with evil intent, "in order to preserve the common law principle of allowing 'Gentlemen to ride armed for their Security.'" David Caplan, The Right of the Individual to Bear Arms: A Recent Judicial Trend, 4 DET. C. L. REV. 789, 795 (1982) (citing *Rex v. Knight*, 90 Eng. Rep. 330 (K.B. 1686)).

"[N]o wearing of Arms is within the meaning of this Statute, unless it be accompanied with such circumstances as are apt to terrify the People; from whence it seems clearly to follow, that Persons of Quality are in no Danger

of Offending against this Statute by wearing common Weapons . . . for their Ornament or Defence, in such Places, and upon such Occasions, in which it is the common Fashion to make use of them, without causing the least Suspicion of an intention to commit any Act of Violence or Disturbance of the Peace…" William Hawkins, 1 Treatise of the Pleas of the Crown, ch. 63, § 9 (1716).

The English Dark Ages are not a place and time we should try to replicate today. In the two centuries leading up to the 1328 Statute the English increasingly discriminated against the Jews culminating with their expulsion in 1290. The Assize of Arms of 1181 which required all freemen of England to possess and bear arms prohibited Jews from even possessing arms.

Property of Jews, upon their death escheated to the King. Prior to their expulsion, restrictions were placed on where they could live and they were prohibited from owning land. They were required to wear distinguishing marks on their clothing. In 1278 the whole English Jewry was imprisoned; and no less than 293 Jews were executed at London.

In the centuries following the expulsion of the Jews the English government would enact a series of laws dictating what English men and women could wear, what they could and could not eat based on his or her social class. It would enact a law forbidding traveling at night. The English Treason Act of 1351 made it a crime punishable by death, including death by drawing and quartering or drawing and burning for being disloyal to the King or even for counterfeiting.

The *Heller* Court began its analysis of the Second Amendment with the English Bill of Rights of 1689, which was the *starting point* of its analysis and certainly not the end point. The *Heller* majority, all five of whom are Catholic, also noted that The English Bill of Rights of 1689 prohibited Catholics from keeping and bearing arms. As noted, this was the starting point and not the end point for obvious reasons.

The Second Amendment is not to be interpreted as it was understood in 1689 and certainly it is not to be interpreted based on laws which existed centuries prior to its enactment by people who believed in witchcraft and who executed people whom they believed to be witches or simply because they slept with a Jew.

The Second Amendment is to be interpreted as it was "historically understood" *Chovan* at 1137, 1145, and 1149 by the Framers of the Second Amendment "in 1791, the year the Second Amendment was ratified — the critical year for determining the amendment's historical meaning, according to *McDonald v. City of Chicago*, supra, 130 S.Ct. at 3035 and n. 14." *Moore v. Madigan*, 702 F. 3d 933 - Court of Appeals, 7th Circuit (2012) at 935.

Were it not for *Heller* singling out schools and government buildings as "sensitive places" the Second Amendment, as historically understood, applies to most schools and government buildings. But that is a case for another Court to decide.

**57.    A Few Final Words On A Permit Requirement To Exercise One's Individual, Fundamental Second Amendment Right.**

There is no precedent to support the proposition that an individual must have a government issued permission slip in order to fall within the scope of that right. Even where the courts have allowed time, manner and place restrictions, which the *Heller* Court has already painted with broad strokes, none of these precedents has required a permit for an individual to fall within the scope of that right.

A group may require a parade permit to march down a city street but an individual does not require a permit to stand on his soapbox in a city park espousing whatever views he deems important.  The government cannot even prohibit a person from standing in the middle of the street espousing a particular viewpoint via a law or ordinance which targets that viewpoint.

We do not require permits for individuals to worship or believe what they will. We do not require permits for individuals to be subject to Fourth Amendment protections.  The same is true for every enumerated right and those which are not enumerated but are nonetheless fundamental.  To require a government issued permission slip to exercise a fundamental right turns the relationship of the government, in which the government is subordinate to The People, upside down.

Americans fought a revolution against the British Crown based on the premise that the rights of the individual are sovereign.  We won.  It is not the role of the

Federal courts to undo what our forefathers fought and died to create and to preserve.

California has not enacted a permit requirement to carry long guns. Long guns are firearms which can only be carried openly. Nor has California enacted a state-wide permit requirement to openly carry a handgun. It might before this appeal is decided but this Court is limited to the case before it.

Plaintiff Nichols has challenged the existing permit requirement and he challenges any permit requirement the legislature may subsequently enact before this case is finally decided on appeal.

If such a permit requirement is enacted before this appeal is decided that permit requirement should be argued via supplemental briefings in the Circuit Court. Any remand to the district court would subject Plaintiff Nichols to the same drawn out biased treatment he experienced in the district court. It wasn't the role of the district court to argue the Appellee's case for them. Appellees have, for all intents and purposes, unlimited finances and resources to defend these laws. Plaintiff Nichols does not. Arguing this case has presented an extreme financial hardship, among many other hardships, to Plaintiff Nichols. Any remand should be with instructions to immediately reassign the case with instructions that neither the magistrate judge nor the district court judge have any further involvement with the case and that the newly assigned district court judge comply with F.R.C.P. 1 and

the local rules of the Central District of California, particularly the local rule which requires that the district court issue its ruling on motions within 120 days.

"[A] person cannot be compelled "to purchase, through a license fee or a license tax, the privilege freely granted by the constitution." *Murdock v. Pennsylvania*, 319 US 105 - Supreme Court (1943) at 114.

**58.     A Few Additional Fatal Procedural Errors Made By The District Court.**

Here are a few additional fatal procedural defects in the final judgment copied and pasted from Plaintiff Nichols' opposition to the final report and recommendation of the magistrate judge, a report and recommendation adopted by the district court in rendering final judgment:

"This court never ruled on the Redondo Beach Defendants filings following Plaintiff's FAC to which Defendant Harris filed a RJN [outside of the pleadings and after the MJP], they remain in dispute." And yet the district court allowed it to be entered into the record, accepted additional documents outside of the record, and relied upon them in making its judgment over the objections of Plaintiff Nichols and his reminding the court of the impropriety of it's doing so.

"There are several procedural bars to this court accepting the RR [Report and Recommendation], not the least of which are: Defendant Harris has filed two concurrent oppositions to Plaintiff Nichols' Motion for Partial Summary Judgment (MPSJ); the Complaint raises issues of fact which if proved (before a jury trial if

need be) would support the granting of the relief requested by Plaintiff (regardless of whether or not this court believes Plaintiff will succeed at trial); the uncontested factual allegations compel a denial of Defendant Harris' MJP and compel granting Plaintiff Nichols' MPSJ; matters outside of the pleadings were presented to the MJ [Magistrate Judge] by Defendant Harris and to which the MJ relied upon in reaching her conclusions; if not excluded by this court, Harris' MJP is converted into a Rule 56 Motion for Summary Judgment; FRCP 12(d) provides that when a court converts a MJP into a MSJ it shall provide "all parties…reasonable opportunity to present all the material that is pertinent to the motion."; failure to provide actual notice of the courts intent to convert the MJP prejudices Plaintiff Nichols; This court "must "draw all reasonable inferences in favor of the non-movant" in addressing a Rule 12(c) motion, *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.), cert. denied, ___ U.S. ___, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994), and "[t]his standard is `applied with particular strictness when the plaintiff complains of a civil rights violation,'" id." *Shechter v. Comptroller of City of New York*, 79 F. 3d 265 - Court of Appeals, 2nd Circuit (1996) at 270.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to `state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). A claim is facially plausible

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678, 129 S.Ct. 1937." *Somers v. Apple, Inc*., 729 F. 3d 953 - Court of Appeals, 9th Circuit (2013) at 959-960.

## **<u>CONCLUSION</u>**

The "elephant in the room" is that there are some people who have an irrational fear of people openly carrying firearms, especially minorities openly carrying firearms. The government may not ban a fundamental right because there are people, including jurists, who do not like the right. Neither can hunting, which is a lesser right or concealed carry which is not a right, be substituted as an alternative to the Second Amendment right.

The California courts since *Rappard* have recognized that Article I, Section 1 of the California Constitution recognizes the right to possess firearms, including handguns, for the purpose of self-defense. The California Courts also recognize that the mere sight of a firearm does not constitute probable cause that a crime has been committed. Likewise, the California Courts and the US Supreme Court have never recognized a right to carry a weapon concealed. This leaves Open Carry as the only constitutionally protected manner of carry recognized under both the California and Federal Constitutions.

Plaintiff-Appellant Nichols submits that the district court incorrectly granted the motion for judgment on the pleadings and incorrectly denied Plaintiff-Appellant Nichols' motion for partial summary judgment.

The burden of proof lay with the government to justify the bans under heightened scrutiny. The Defendant-Appellees made no such attempt. Instead, they let the district court take the lead in arguing their case for them. In doing so the district court painted Appellees into a Constitutional corner requiring this court to invalidate numerous binding precedents both old and recent made both by this Circuit and by the United States Supreme Court in order for this Court to affirm the judgment of the district court.

Accordingly, this court should reverse the district court's rulings, invalidate facially and as-applied PC 25850, PC 26350, and PC 26400, enjoin Appellees, their subordinates and all who fall under their command from enforcing the bans and grant all of the relief Plaintiff Nichols sought in his Complaints against Appellees.

Regardless, this Court should reverse the district court judgment and, if a remand is ordered requiring an amended complaint or supplemental briefing, Plaintiff-Appellant Nichols respectfully requests that his case be reassigned to some other district court judge, preferably one who does not possess a concealed carry permit, and Plaintiff Nichols further requests that neither the magistrate

judge, nor any magistrate judge, be allowed to play any role in subsequent proceedings.

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Plaintiff-Appellant identifies the following cases as related:

1. *Peruta v. County of San Diego*, 742 F. 3d 1144 - Court of Appeals, 9th Circuit (2014).

2. *James Rothery, et al. v. County of Sacramento, et al*., No. 09-16852.

3. *Patel v. City of Los Angeles*, 738 F. 3d 1058 - Court of Appeals, 9th Circuit (2013) en banc. Cert Petition to US Supreme Court granted sub nom City of Los Angeles, California, Petitioner v. Naranjibhai Patel, et al. No. 13-1175.

4. *Jackson v. City and County of San Francisco*, 746 F. 3d 953 - Court of Appeals, 9th Circuit (2014).

5. *McKay v. Sheriff Hutchens* No. 12-57049.

6. *Richards v. Prieto* No. 11-16255.

7. *Baker v. KEALOHA* No. 12-16258.

8. *George Young, Jr. v. State of Hawaii, et al* No. 13-17132.

9. *Thomson v. Torrance* No. 12-56236.

10. *Birdt v. Baca* No. 12-55115.

11. *Sigitas Raulinaitis*, et al v. LASD No. 12-56508.

12. *Sigitas Raulinaitis v. Ventura County Sheriffs Department* No. 14-56615.

*Peruta* is related because the district court held, based on Peruta which clearly stated that it was not ruling on the constitutionality of any state law that the laws challenged by Plaintiff-Appellant Nichols are constitutional and therefore there is no Second Amendment right to openly carry a loaded firearm, or modern unloaded firearm in the home and in non-sensitive public places where hunters are exempt from the bans on carrying firearms in the home and in public.

*Rothery* is only tangentially related as it, and every other concealed carry appeal, seek permits to carry loaded concealed handguns and loaded long guns in most state and local government buildings as well as in schools and within 1,000 feet of a K-12 public or private school. Concealed carry permit holders are also permitted to openly carry unloaded firearms, handguns and long guns, in most state and local government buildings. Plaintiff Nichols operative Complaint does not seek to carry firearms in any of these places.

*Patel* is related because the district court held in Plaintiff Nichols's case that he is prohibited from bringing both as-applied and facial challenges under the Second, Fourth and Fourteenth Amendment and further held that this Circuit prohibits facial Fourth Amendment challenges. This Circuit in Patel facially

invalidated a Fourth Amendment facial challenge to a Los Angeles City ordinance which likewise makes it a crime to refuse to consent to a search and seizure.

*Jackson* is related because the district court judge in Plaintiff Nichols' case held that he is prohibited from bringing both facial and as-applied challenges. The *Jackson* Court held that the Jackson plaintiffs were allowed to bring both facial and as-applied Second Amendment challenges.

A joint motion was filed in *Rothery* to stay proceedings until 90 days after the issuance of the mandate in *Peruta*. Instead, the Clerk issued a stay which expires on December 30, 2014.

The remaining cases are all California concealed carry appeals with the exception of *Baker* which involves a challenge to a number of Hawaii gun laws and *Young*, which is also out of Hawaii.

Dated: December 1, 2014          Respectfully submitted,

Charles Nichols
PO Box 1302
Redondo Beach, CA  90278
Tel. No. (424) 634-7381
e-mail: CharlesNichols@Pykrete.info
In Pro Per


By:    /s/ Charles Nichols_____
       Plaintiff-Appellant
       In Pro Per